IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* THOMAS SCHROEDER, <br><br> Relator, <br><br> v. <br><br> MEDTRONIC, INC.; COVIDIEN, L.P.; HUTCHINSON REGIONAL MEDICAL CENTER, and WICHITA RADIOLOGICAL GROUP, P.A., <br><br> Defendants. | Case No. 2:17-02060-DCC-KGG |

**DEFENDANT WICHITA RADIOLOGICAL GROUP, P.A.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

COMES NOW, Defendant Wichita Radiological Group, P.A. ("WRG"), by and through its attorney of record, Eric W. Barth of Hinkle Law Firm LLC, and, pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1, hereby submits the following Memorandum in Support of its Motion to Dismiss Relator Thomas Schroeder's ("Relator") Fifth Amended Complaint (Doc. 233) filed against WRG for failing to state a claim sufficient to satisfy the Federal Rules' pleading requirements and upon which relief can be granted.

**I.      INTRODUCTION**

In what appears to be a last-ditch effort to revive Relator's allegations of medically unnecessary procedures and off-label use involving Medtronic, Inc.'s and/or Covidien, L.P.'s (collectively, "Medtronic") atherectomy devices, IN.PACT ADMIRAL drug coated-balloons ("DCB"), and vascular and biliary stents (collectively, "Medtronic Devices"), Relator has hauled

-1-

WRG into court in hopes of supplying enough particulars to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  As a late addition to Relator's smear campaign—a cause that is just shy of six years old and presently on its sixth complaint—WRG recognizes that the Court is well-versed in the details of Relator's story and does not need another recitation of Relator's allegations.  WRG adopts the background information set forth in the Court's prior Memorandum and Order, granting in part Medtronic's motion to dismiss Relator's Second Amended Complaint, *United States v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2021 WL 4168140 (D. Kan. Sept. 14, 2021), and hereby incorporates such background information herein.

Recently, the Parties agreed that Relator could file a Fifth Amended Complaint.  Relator, however, promised that the Fifth Amended Complaint would be his last and final complaint. Relator attempts to bolster his claims against WRG by misconstruing heavily redacted information obtained from an internal OIG investigation of employees at the Robert J. Dole Veterans Affairs Medical Center ("Dole VA").  Yet, Relator's allegations against WRG, both old and new, fall short of what is legally required under federal pleading standards.  Absent from Relator's Fifth Amended Complaint are sufficiently pleaded *who*, *what*, *where*, *when*, and/or *how* components necessary to bring allegations of false claims under the False Claims Act ("FCA"). While Relator narrates an interesting tale of nefarious schemes by a cast of characters who try to defraud the government, a federal court is not the proper audience for such a tale without the necessary particulars required under Rule 9(b).

Although the Fifth Amended Complaint itself might look different from Relator's Second Amended Complaint previously dismissed by this Court, substantively, there is little to no change. *See Medtronic, Inc.*, 2021 WL 4168140 at *26.  Relator's claims of fraud due to

medically unnecessary procedures or excessive or off-label use of Medtronic Devices continue to be devoid of sufficient facts to satisfy Rule 9(b)'s heightened pleading standards. Therefore, Relator's claims alleging WRG's physicians performed medically unnecessary procedures and used the Medtronic Devices excessively and/or for off-label purposes must be dismissed, and this time, with prejudice.

## II.    STATEMENT OF FACTS[1]

Given the standard on a motion to dismiss under Rule 12(b)(6), Relator's Fifth Amended Complaint supplies the pertinent factual allegations relevant to the Court's determination at this juncture. Instead of simply repeating those allegations, WRG will refer the Court to the factual paragraphs and allegations set forth in Relator's Fifth Amended Complaint. These factual allegations will be discussed, as needed, in Section IV below.

## III.   LEGAL STANDARDS

To adequately state a viable cause of action, Relator's Fifth Amended Complaint must contain "a short and plain statement of the claim showing that [Relator] is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating whether this standard is met in connection with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Relator's Fifth Amended Complaint must contain "enough facts to state a claim to relief that is plausible on its face," and Relator must "nudg[e] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). The Fifth Amended Complaint must also contain "more than labels and conclusions, and

---

[1] WRG adamantly denies many of the allegations contained in Relator's Fifth Amended Complaint. Except for statements of confidential witnesses or undisclosed sources, or conclusory or distorted allegations, Relator's factual allegations, however, are accepted as true for the purposes of this Motion only under the standard set forth for motions filed under Rule 12(b)(6).

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Equally insufficient is the "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim has "facial plausibility" only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Generalized speculation is insufficient and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), this Court is to "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to [Relator]." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014).  But this general rule is inapplicable where Relator's allegations are simply legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  As the Supreme Court observed, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted).

Moreover, because Relator's Fifth Amended Complaint alleges WRG engaged in conduct that resulted in false claims being submitted to the government in violation of the FCA, Relator must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *See U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010) ("Rule 9(b) joins with 8(a) to form the general pleading requirements for claims under the FCA.").  Rule 9(b)'s particularity standard is

demanding for a reason in FCA actions.  "[A] public accusation of fraud can do great damage to a [defendant] before the [defendant] is (if the accusation [is] prove[d] baseless) exonerated in litigation . . . ."[2]  *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014)).  Because of this stigma, courts should carefully consider a relator's pleadings when making allegations of fraud.  *Id.*  Although the knowledge requirement under the FCA may be pleaded generally, Relator "must state with particularity the circumstances constituting fraud . . . ."  *Id.*; Fed. R. Civ. P. 9(b).  "Practically speaking, FCA claims comply with Rule 9(b) when they 'provid[e] factual allegations regarding the who, what, when, where and how of the alleged claims.'"  *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (quoting *Lemmon*, 614 F.3d at 1172).  Without sufficient detail to give WRG proper notice of Relator's claims and the factual ground on which they are based, Relator's claims must fail.

Notwithstanding the foregoing, "[u]nlike other factual allegations in a complaint, courts are not required to wholly accept as true statements from a confidential witness."  *Shoemaker v. Cardiovascular Sys., Inc.*, No. CV 16-568 (DWF/KMM), 2017 WL 1180444, at *8 (D. Minn. Mar. 29, 2017) (dismissing FCA claims involving allegations of medically unnecessary PAD procedures and off-label use of medical devices).  Indeed, federal courts acknowledge that confidential witnesses are motivated by a variety of reasons, frequently unknown by the reviewing court, and "courts routinely evaluate and disregard [such] statements on a motion to dismiss."  *Id.* (citing cases).  When determining whether a confidential witness's statements should be accepted as true for purposes of a motion to dismiss, courts may consider (i) whether

---

[2] Not only is Relator alleging WRG's physicians engaged in fraudulent activity, Relator now asserts WRG's physicians provided substandard care.  Such baseless claims are beyond detrimental to WRG and the reputation of

the witness is described in the complaint with sufficient particularity to support the probability

that a person in the position occupied by the source would possess the information alleged; (ii)

the level of the detail provided by the confidential witness; (iii) the corroborative nature of the

other facts alleged (including from other sources); (iv) the coherence and plausibility of the

allegations; (v) the number of sources; or (vi) the reliability of the sources or similar indicia.  *Id.*

Furthermore, courts consider whether a relator pleads with particularity the confidential

witness's job title, job description, and applicable time period.  *Id.*  To the extent a confidential

witness's statements are vague and/or based on second-hand knowledge, or the court is unable to

determine the witness's role or involvement, a federal court may disregard any statements made

by such witness in the complaint.  *Id.* at *9 ("The complaint must contain enough detail to

determine whether the confidential witness has personal knowledge or whether the witness is

"merely regurgitating gossip and innuendo.").

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Relator's Claims Against WRG Arising Prior to April 11, 2016, Are Barred by the FCA's Six-Year Statute of Limitations.

"The False Claims Act contains two limitations periods that apply to a 'civil action under

section 3730'—that is, an action asserting that a person presented false claims to the United

States Government. 31 U.S.C. § 3731(b)."  *Cochise Consultancy, Inc. v. United States ex rel.*

*Hunt*, 139 S. Ct. 1507, 1510, 203 L. Ed. 2d 791 (2019).   Both time limitation periods are

available to a private relator.  *Id.* at 1512–13.  "The first period requires that the action be

brought within 6 years after the statutory violation occurred.  The second period requires that the

action be brought within 3 years after the United States official charged with the responsibility to

its physicians and should be rejected immediately by this Court.

act knew or should have known the relevant facts, but not more than 10 years after the violation. Whichever period provides the later date serves as the limitations period." *Id.* at 1510. However, the Supreme Court clarified in *Cochise Consultancy* that, for purposes of the second time limitation in 31 U.S.C. § 3731(b)(2), an official of the United States does not include a private relator. *Id.* at 1514. Thus, the three-year period commences when the United States official knew or should have known about the false claim. *Id.*

Here, Relator first filed his initial complaint under seal on January 31, 2017. (Doc. 1). At that point, the government was aware, or should have been aware, of Relator's allegations of false claims. At the very least, the government should have been aware of Relator's allegations by April 4, 2017, when the government filed its motion for extension of time to intervene. (Doc. 3). Therefore, the applicable three-year period under 31 U.S.C. § 3731(b)(2) expired by April 4, 2020. Importantly, Relator does not get the benefit of the ten-year period contemplated in § 3731(b)(2) because neither the government nor Relator filed an action against WRG by April 4, 2020. *See e.g.*, *U.S. ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 848–49 n.3 (E.D. Va. 2010) ("This extended ten-year statute of limitations is not available to the government in this case because the government did not file its Complaint in Intervention within three years of the date on which it concedes that it should have known of any potential claims against Oracle (May 29, 2007, when relator Paul Frascella filed his Complaint)."). This leaves only the six-year period set forth in 31 U.S.C. § 3731(b)(1) available to Relator.[3]

Generally speaking, "[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was

---

[3] Specifically, on page 11 of his Fifth Amended Complaint, Relator proposes the permissible period of time for Relator's FCA claims is six years under 31 U.S.C. § 3731(b)(1). (Doc. 233, at 11 n.4).

commenced for statute of limitations purposes." *Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000). Relator sought leave to file the Fourth Amended Complaint to add WRG as a party on April 11, 2022. (Doc. 113). "In an FCA suit, the limitations period is computed from 'the date on which the violation of [the FCA] is committed.' § 3731(b)(1) . . . . The 'violation' is the filing of a false claim." *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 816 (E.D. Tex. 2008) (internal citations omitted). Thus, any alleged false claims submitted prior to April 11, 2016 (six years prior to the date Relator requested leave to file the Fourth Amended Complaint), are time-barred.

Moreover, the Court should not allow Relator to satisfy his heightened pleading requirements by bootstrapping any alleged false claims and related factual assertions occurring prior to April 11, 2016. Relator's Fifth Amended Complaint includes several instances where he alleges WRG participated in medically unnecessary procedures or excessively used Medtronic Devices at various times prior to April 11, 2016. (*See e.g.*, Doc. 233, ¶¶ 114, 115, 116, 119, 125, 126, 127, 150, 151, 155, and 156 just to name a few). Relator is attempting to satisfy Rule 9(b)'s heightened pleading standards by alleging these examples; yet, these so-called violations are time-barred under the FCA's statute of limitations. Therefore, any factual allegations involving WRG prior to April 11, 2016, serve no basis for alleging a claim with particularity against WRG. Regardless, as discussed in more detail below, even if the Court were to look at Relator's purported examples of wrongdoing by WRG's physicians with respect to claims submitted before April 11, 2016, the end result remains the same—Relator has not (and cannot) plead a sufficient claim in violation of the FCA and certainly not one with particularity.

**B.    Relator's Fifth Amended Complaint Does Not Sufficiently Allege that WRG Had the Requisite Scienter to Establish an FCA Claim.**

The FCA is an intent-based statute.  31 U.S.C. § 3729.  "The Act's scienter requirement defines 'knowing' and 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'"  *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 182 (2016) (quoting § 3729(b)(1)(A)).  While a physician does not have to specifically intend to defraud the government—except in connection with a conspiracy allegation, as discussed in greater detail below—a physician cannot accidently or inadvertently violate the FCA simply because such physician participates in a procedure or uses a medical device in a certain manner.  In other words, the physician accused of defrauding the government must realize or deliberately or recklessly disregard the falsity involved in the applicable procedure or use.  31 U.S.C. § 3729(b)(1)(A).

Here, Relator frequently claims that Medtronic's sales team knowingly promoted, marketed, instructed, or demonstrated use of Medtronic Devices in a certain manner and WRG's physicians participated in such use during a medical procedure.  (*See, e.g.*, Doc. 233, ¶¶ 149 and 150).  Relator alleges that the more Medtronic Devices used by WRG's physicians while performing PAD procedures at Dole VA, the longer these PAD procedures took and consequently, WRG received more money for working more hours at Dole VA.  Notably absent, however, is any detailed claim (beyond bald assertions) that WRG's physicians knowingly used Medtronic Devices for illegal off-label purposes or knowingly participated in medically unnecessary procedures that resulted in fraudulent claims being submitted to the government or

deliberately or recklessly turned a blind eye to such alleged illegal activity. Indeed, as discussed in more detail in Section IV.D below, use of a medical device in other legitimate ways that are not approved by the FDA does not make such use illegal or fraudulent under the FCA. Moreover, Relator does not allege that WRG billed separately for its physicians' services in performing procedures at the Dole VA using Medtronic Devices; thus, at no time did a WRG physician certify that the care provided was medically indicated and necessary. Consequently, Relator has not shown that WRG even had the general intent to act in a fraudulent manner.

With respect to Relator's conspiracy claim, a different intent standard applies. Unlike Relator's claims that WRG's physicians performed medically unnecessary procedures or submitted claims for off-label use of Medtronic Devices, a conspiracy claim under the FCA requires a specific intent to defraud or to violate the law. *See United States v. Marlin Med. Sols. LLC*, No. SA-21-CV-00160-OLG, 2022 WL 190308, at *9 (W.D. Tex. Jan. 12, 2022) (dismissing conspiracy claim against physician because relator failed to allege such physician entered into an agreement for the purpose of defrauding the government).

In its earlier Memorandum and Order, the Court noted that the parties each relied on the Fifth Circuit's view of the legal standard for alleging a viable civil conspiracy claim under the FCA. *Medtronic, Inc.*, 2021 WL 4168140 at *19. Notably, courts in the Fifth Circuit recognize that in addition to showing the existence of an unlawful agreement to get a false or fraudulent claim paid by the government and one overt act in furtherance of the agreement, "[a] relator must also demonstrate 'that defendants shared a specific intent to defraud the Government.'" *United States v. Cath. Health Initiatives*, No. 4:18-CV-123, 2022 WL 2657131, at *11 (S.D. Tex. Mar. 31, 2022), *report and recommendation adopted sub nom. Chihi v. Cath. Health Initiatives*, No.

-10-

4:18-CV-00123, 2022 WL 2652135 (S.D. Tex. July 8, 2022) (quoting *United States ex rel.*
*Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)).  Courts in the Fourth Circuit also
require such a showing of an intent to defraud at the pleading stage.  *See United States v.*
*Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 733 (D.S.C. 2017).  "To state a claim for
conspiracy under 31 U.S.C. § 3729(a)(1)(C), the [complaint] must allege formation of an
unlawful agreement between conspirators to get the Government to reimburse a false or
fraudulent claim; (2) ***specific intent to defraud the Government and use the false record to***
***achieve the conspiracy***; and (3) at least one overt act in furtherance of the conspiracy."  *Id.*
(Emphasis added).

Similar to the government in *Marlin Med. Sols.*, Relator does not assert that WRG or its
physicians entered into or participated in an agreement with Medtronic or Dole VA employees
for the specific purpose of defrauding the government.  Relator does not claim WRG shared an
intent with Medtronic or Hutchinson Regional Medical Center to perform PAD procedures in a
certain manner in order to commit fraud against the United States.  As such, Relator's conspiracy
claim against WRG must fail because the necessary scienter element to establish a conspiracy
claim under the FCA is non-existent.

**C.**    **Relator's Conclusory Allegations of Medically Unnecessary Procedures Fail**
          **to Establish a Plausible FCA Claim.**

After five years, Relator has filed suit against WRG—conceivably, to plead the *who*
requirement.  However, Relator's attempt to plead with particularity the *when*, *what*, and *how*
components is faulty.

As opposed to referencing specific dates or procedures, Relator broadly claims that PAD

procedures performed by WRG's physicians using Medtronic Devices during time spans encompassing two, four, five, and even eight years (much of which is time-barred and should not even be considered given the six-year statute of limitations applicable to Relator's claims) were medically unnecessary or excessive.  Similar to the approach rejected in *United States ex rel. D'Agostino v. EV3, Inc.*, 153 F. Supp. 3d 519, 537 (D. Mass. 2015), *aff'd sub nom. D'Agostino v. ev3, Inc.*, 845 F.3d 1 (1st Cir. 2016), broadly pleading a date range encompassing multiple years does not mean that all claims submitted during that date range were false.  "This court has previously ruled that it is impermissible to assume that any claim in a date range is, ipso facto, false simply because some intermittent device failures were identified."  *Id.* (citing *United States ex rel. Provuncher v. Angioscore, Inc.*, 2012 WL 3144885, at *1–2 (D. Mass. Aug. 3, 2012)). Relator's failure to identify certain dates, or even week- or month-long time spans, when WRG's physicians allegedly performed unnecessary PAD procedures or excessively used Medtronic Devices significantly impairs WRG's ability to defend against Relator's claims.  Such failure is impermissible under Rule 9(b).

Equally fatal is Relator's inability to assert more than threadbare allegations that WRG's physicians performed medically unnecessary PAD procedures or used excessive Medtronic Devices simply because they used a certain number of Medtronic Devices or worked on multiple areas of a patient's leg in a single procedure.  Relator cannot establish the *what* or *how* requirements for establishing a false claim under the FCA.

As noted by Judge Briscoe in *Polukoff*, 895 F.3d at 742, prior to 2021, CMS identified factors to help guide contractors as to what types of devices or services are medically necessary:

> The Medicare Program Integrity Manual. The manual instructs contractors to "consider a service to be reasonable and necessary" if the procedure is:

• Safe and effective;

• Not experimental or investigational . . . ; and

• Appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is:

  ○ Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition or to improve the function of a malformed body member;

  ○ Furnished in a setting appropriate to the patient's medical needs and condition;

  ○ Ordered and furnished by qualified personnel;

  ○ One that meets, but does not exceed, the patient's medical need; and

  ○ At least as beneficial as an existing and available medically appropriate alternative.

*Polukoff*, 895 F.3d at 742–43 (citing CMS, Medicare Program Integrity Manual § 100-08, ch. 13, § 13.5.1. (now § 13.5.4 after 2019)).

While Relator throws mud at WRG's physicians for allegedly using stents in a particular area of the leg or being quick to perform PAD procedures when alternative, less-evasive measures may have been explored, at no time does Relator link an alleged medically unnecessary procedure to a particular case. Absent from Relator's Fifth Amended Complaint are any specific details about why a medical procedure performed by WRG's physicians was unsafe, experimental, or unnecessary in light of the patient's medical needs or treatment plan. Relator references some articles about PAD procedures and Medtronic's prior settlements in hopes of casting enough doubt as to the legitimacy of WRG's physicians' procedures or professional competency; yet, Relator fails to supply the contextual link necessary to show why WRG's

-13-

physicians' PAD procedures were not beneficial to, or medically appropriate for, the applicable patients. Such generality does not suffice under Rule 9(b).

Moreover, Relator—a medical device salesperson and not an interventional radiologist—was not in a position to see the entire picture with respect to WRG's physicians' medical procedures and appears to simply have a subjective disagreement with WRG's physicians on the most prudent course of action. *See Presser*, 836 F.3d at 780 ("Relator cannot simply claim that 'in my experience, this is not the way things are done.'"). But Relator's personal opinion about the medical necessity of a particular procedure and the methods used by WRG's physicians is not enough to allege a plausible claim under Rule 12(b)(6).

What is evident from Relator's pleadings, however, is Relator's bias and resentment towards Medtronic's and Dole VA's long-term professional relationship. But trust in a product and/or loyalty to manufacturer does not equate to fraudulent claims or schemes prohibited by the FCA. Indeed, other circuits have issued warnings against being quick to find fraud when faced with a biased relator. *See Presser*, 836 F.3d at 780–81. "We have observed, moreover, that 'fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it.'" *Id.* at 776 (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)).

Relator attempts to bolster his personal attacks on WRG's physicians by pleading allegations about PAD procedures supposedly witnessed by "Healthcare Professionals". (*See e.g.*, Doc. 233, at 39–40 ¶¶ 113–115). But similar to the plaintiffs in *Shoemaker*, Relator fails to allege in detail the so-called Healthcare Professionals' roles with Dole VA, job title or job

description, or how their experience lends any credence to Relator's allegations.[4]   2017 WL 1180444 at *9 (after disregarding the vague allegations or second-hand information, the plaintiffs were left with more generalized allegations from the qui tam complaint of CSI's off-label promotions, discounts, and referrals).   Therefore, the Court should disregard any information from these "Healthcare Professionals".   Without such information (and even with such information), Relator's Fifth Amended Complaint only includes generalized allegations about medically unnecessary PAD procedures or excessive use of Medtronic Devices.

As recognized by the *EV3, Inc.* court, "[p]erfecting the science of threading tiny tubes inside the human skull to treat vascular defects requires an acute level of medical judgment that is well beyond that possessed by most courts, lawyers, and medical device salespersons." 153 F. Supp. 3d at 539.   The same is true, here—neither Relator nor this Court possess the expertise to second guess WRG's physicians when it comes to deciding what Medtronic Devices are necessary to thread through a veteran's arteries to clear life-threatening plaque and save limbs from amputation.   Moreover, there is no information in Relator's Fifth Amended Complaint to suggest that his sources of information possess the requisite knowledge or expertise to second guess WRG's physicians' PAD procedures performed at the Dole VA.   Therefore, Relator's allegations must be dismissed for failure to state a plausible claim in accordance with Rules 8(a), 9(b), and 12(b)(6).

---

[4] The "Healthcare Professionals" identified by Relator in his Fifth Amended Complaint are actually medical device salespersons.

**D.   Relator's Newest Allegations that WRG's Physicians Provided Substandard Care or Engaged in Self-Dealing are Distorted and Further Fail to Establish A Claim Worthy of Survival Under the Federal Rules**

Equally misguided and conclusory are Relator's allegations that WRG's physicians' PAD procedures, treatment, or care fell below the applicable standard of care.  WRG strongly disputes such baseless allegations taken out of context from preliminary reports in an internal OIG investigation of Dole VA employees.  This Court can quickly discard Relator's newest claims because it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  Even if the Court presumes such allegations are true at this motion to dismiss stage, potential medical negligence or malpractice claims do not rise to the level of false claims prohibited by the FCA.  *See, e.g.*, *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468 (6th Cir. 2011).  Other federal courts have recognized that "the False Claims Act should not be used to call into question a health care provider's judgment regarding a specific course of treatment[,]" and such "courts have limited the False Claims Act from becoming a federal malpractice statute." *U.S. ex rel. Phillips v. Permian Residential Care Ctr.*, 386 F. Supp. 2d 879, 884 (W.D. Tex. 2005).

Relator's reference to the OIG's investigation fails to include any information about the qualifications or expertise of the person reviewing WRG's physicians' treatment plans and PAD procedures.  Relator is quick to lay blame on WRG based on his interpretation of the OIG's preliminary investigation; yet, there are no details about the reviewer's knowledge or expertise on PAD procedures.  As such, this Court may rightly question the veracity of Relator's claims based on highly redacted and limited information received from the OIG investigation.

Furthermore, Relator fails to plead with any requisite particularity *who*, *what*, *when*, and *how* the individual procedures performed by WRG's physicians were medically unnecessary or

involved a situation where WRG's physician used excessive Medtronic Devices in a manner that was medically unsound given the patient's needs.  First, it is unclear who participated in these so-called unnecessary procedures (which physician, patient, Dole VA employee, or Medtronic representative).  Relator fails to provide any particulars about who the patients were or how such patients' respective conditions did not warrant the procedures or Medtronic Devices rendered by WRG's physicians.

Likewise, Relator gives no indication as to when WRG's physicians allegedly failed to provide noninvasive treatment when the applicable circumstances called for such a diagnosis or treatment plan.  Importantly, any alleged false claims arising from purported medically unnecessary services or excessive use of Medtronic Devices occurring prior to April 11, 2016, are time-barred.  It is unknown whether Relator's newest claims are even viable.

Additionally, Relator's newest allegations leave WRG not only bewildered, but defenseless, because there are no details as to *what*, *when*, and *how* WRG's physicians allegedly failed to practice evidence-based medicine, disregarded purported guidelines, or failed to provide treatment and care in accordance with the applicable standard of care in any given case.  For example, *when* and *how* did WRG's physicians supposedly fail to properly review cases and decide the best possible approach to treat PAD veteran patients?  In *what* ways did WRG's physicians allegedly fail to practice evidence based medicine?  Relator's newest allegations leave WRG scratching its head, as there are absolutely no particulars provided by Relator in his recent attack on WRG.  WRG lacks sufficient notice to be able to defend against Relator's prejudicial claims.

Similarly fatal is the absence of the necessary *who*, *what*, *where*, *when*, and *how* components

-17-

to Relator's other allegation of self-dealing.  In a single sentence, Relator asserts that WRG engaged in self-dealing when its physicians referred VA patients seen at Dole VA to its outside practice. (Doc. 233, at 49 ¶ 137).  Relator, however, utterly fails to plead with specificity the dates when such an alleged referral was made or which physician or patient was involved.  It is also unclear as to what "outside practice" Relator is referring to or how this supposed referral was made.  WRG has no ability to properly respond to, or defend against, such a damaging allegation because of Relator's lack of specificity.

Relator's wholesale assertions that WRG's physicians behaved a certain way in all procedures at the Dole VA or provided substandard care in most cases are insufficient under Rule 9(b) and should not be tolerated by this Court.  Not only is Relator using discovery to fuel his fire against Defendants, he is blatantly damaging WRG's reputation without any legitimacy or justification.  "When a plaintiff does not specifically plead the minimum elements of [his] allegation, it enables [him] to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and at worst, . . . baseless allegations used to extract settlements.  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (quoting *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002)).  Relator's barebones allegations of self-dealing or subpar medical care made against WRG's physicians are inexcusable at this point in the proceeding and must be dismissed, with prejudice.

**E.    Relator's Allegations that WRG's Physicians' Off-label Use of the Medtronic Devices Do Not Establish a False Claim Under the FCA.**

Relator takes issue with the fact that WRG's physicians may have used Medtronic

Devices in a manner that differs from the use formally approved by the FDA.  But such "off-label" use, without more, fails to establish a violation of the FCA.

"As the Supreme Court has observed, there is nothing improper per se about off-label uses of drugs and medical devices: '[O]ff-label' usage of medical devices (use of a device for some other purpose than that for which it has been approved by the FDA) is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine." *D'Agostino*, 153 F. Supp. 3d at 535 (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001)).  A physician's off-label use of medical devices is not per se unlawful.  *See Buckman Co.*, 531 U.S. at 350.  Indeed, other courts acknowledge that "off-label use of a drug or medical device is not the same as a medically unnecessary use of that drug or device."  *United States ex rel. Bennett v. Medtronic, Inc. ("Bennett I")*, 747 F. Supp. 2d 745, 751 (S.D. Tex. 2010) (collecting cases).

Here, Relator's claims about off-label usage of Medtronic Devices by WRG physicians are all bark and no bite.  The decision on medical necessity is made by individual physicians exercising independent professional judgment based on the knowledge of their particular patients, not whether the medical device has FDA approval.  As noted above, FCA cases recognize that off-label use of a drug or medical device is distinct from a medically unnecessary use of that drug or device.  *Bennett I*, 747 F. Supp. 2d at 777; *see also U.S., ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1022 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("The explicit terms of certain of the NCDs and LCDs also support the court's conclusion that the Medicare Manual's use of the term devices approved by the FDA does not mean the particular use of a device approved by the

-19-

FDA.").

Relator tries to clear his pleading hurdle by referencing certain events occurring anywhere between 2011 and 2015 or the first part of 2016. (Doc. 233, at 55-56 ¶¶ 150–151). But as addressed above in Section IV.A, the applicable statute of limitations bar alleged false claims occurring prior to April 11, 2016. Relator should not be permitted to bolster his claims of illegal off-label usage by asserting examples of allegedly fraudulent activities time-barred by the FCA's statute of limitations. Thus, any examples of off-label use occurring prior to April 11, 2016, should not be considered against WRG.

Even if the Court were to consider Relator's allegations of events occurring prior to April 11, 2016, Relator has failed to plead improper or illegal off-label use by WRG's physicians. Noticeably absent from Relator's Fifth Amended Complaint are any particularized facts about how WRG's use of certain stents below the knee or multiple Medtronic Devices in a procedure were not an acceptable and necessary use given that patient's medical needs. The FDA explicitly protects WRG's physicians' ability to administer Medtronic Devices for off-label use. *See* 21 U.S.C. § 396 ("Nothing in this chapter shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."). In other words, context matters and without it, Relator cannot meet his burden at the pleading stage. Therefore, Relator's claims of off-label use in violation of the FCA must be dismissed.

### F. Relator's Claims Are Barred Under the Public Disclosure Bar.

In its Motion to Dismiss Relator's Fifth Amended Complaint, Medtronic moves to dismiss Relator's claims pursuant to the public disclosure bar set forth in 31 U.S.C. § 3730(e)(4).

Congress enacted "the public disclosure bar in an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits . . . ." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294-95 (2010). WRG hereby joins in Medtronic's request and further hereby incorporates Medtronic's arguments and authority in support of WRG's Motion to Dismiss. WRG moves to dismiss Relator's parasitic claims made against WRG for the same reasons articulated in Medtronic's Motion to Dismiss.

It is evident that Relator is regurgitating information taken directly from the OIG investigation shared with Relator pursuant to a *Touhy* request. Relator is using the OIG investigation to bolster his claims against Medtronic and WRG when Relator was not the original source of such information. Indeed, Relator has admitted in discovery that he does not have personal knowledge of many of the events referenced in his Fifth Amended Complaint. Therefore, Relator's claims are precluded by the public disclosure bar.

## V.     CONCLUSION

WRG invites the Court to step back and ask itself: Why now? Why did Relator add WRG as a defendant to this qui tam action after five years? WRG submits that the answer centers around one key point: desperation. Relator is desperate to overcome the Court's prior dismissal of Relator's claims involving alleged medically unnecessary procedures or off-label use. By adding WRG as a party, Relator is hoping to supply enough facts to meet the *who*, *what*, *when*, *where*, and *how* pleading requirements of Rule 9(b). But Relator's identification of three WRG physicians who performed medical procedures at Dole VA using Medtronic Devices over a period of eight years does not establish *what*, *when*, and *how* any procedures or use of Medtronic Devices were in violation of the FCA. Relator, a sales manager for a competitor, attempts to fill in these gaps

with personal opinion, general speculation from skewed sales data, and anonymous sources without sufficient detail to establish their reliability. But absent from Relator's pleadings are credible sources explaining *what*, *when*, and *how* WRG's physicians' PAD procedures were unsafe, unnecessary, or inappropriate given the patient's needs. Thus, the outcome of this case is evident. Relator fails to satisfy federal pleading requirements under the Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6), and the Court must dismiss Relator's claims against WRG, with prejudice.

WHEREFORE, WRG respectfully requests that the Court grant its Motion to Dismiss Relator's Fifth Amended Complaint based on the failure to adequately plead with particularity and state a claim upon which relief can be granted.

Respectfully submitted,

HINKLE LAW FIRM LLC

By /s/ Eric W. Barth
    Eric W. Barth, KS # 21193
    1617 North Waterfront Parkway, Suite 400
    Wichita, Kansas 67206
    Telephone: (316) 267-2000
    Facsimile: (316) 630-8466
    E-mail: ebarth@hinklaw.com
    ***Attorney for Defendant Wichita Radiological***
    ***Group, P.A.***

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2022, I electronically filed the foregoing **DEFENDANT WICHITA RADIOLOGICAL GROUP, P.A.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record.

    /s/ Eric W. Barth
    Eric W. Barth