IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *ex rel.* THOMAS SCHROEDER <br><br> Relator, <br><br> v. <br><br> MEDTRONIC, INC.; COVIDIEN, L.P.; <br> HUTCHINSON REGIONAL MEDICAL <br> CENTER, and WICHITA <br> RADIOLOGICAL GROUP, P.A. <br><br> Defendants. | Case No. 2:17-02060-DCC-KGG |

### RELATOR'S SECOND MOTION TO COMPEL DISCOVERY
### AND MEMORANDUM IN SUPPORT

COMES NOW the United States of America ("US"), *ex rel.* Thomas Schroeder, Relator, and pursuant to Fed.R.Civ.P. 37(a)(3)(B)(iv) and L.R. 37.1, hereby moves this Court to compel Defendant Medtronic, Inc. to produce documents sought under Relator's Request for Production Nos. 109-120 (text messages with hospital employees and doctors). In support of this Motion, Relator provides the following memorandum.

**Background**

**I.    Relevant Nature of Relator's Case**

This is a *qui tam* action brought on behalf of the United States government by Relator Schroeder. Relator alleges violations of the False Claim Act, 31 U.S.C. § 3729, *et seq.* against Defendants. Relevant to this motion, Relator alleges that employees of Defendant Medtronic, Inc., and Defendant Covidien, L.P. (hereinafter, "Defendant Medtronic") paid illegal remuneration to induce purchases of medical devices. [Doc. 233, 5AC, ¶¶ 56-60, 88-98]  Relator

also alleges that Medtronic employees marketed, instructed, or encouraged the overuse and "off label" use of Peripheral Arterial Disease devices at the Dole VA Medical Center and Hutchinson Regional Medical Center – and were rewarded by Medtronic for doing so. [Doc. 233, 5AC, ¶¶ 106-107, 118, 143-144]

**II.     Relator's Requests for Production Regarding Text Messages**

Requests for Production Nos. 109-120 are attached as Exhibit A.  The RFPs sought <u>all</u> two-way and group text messages, 2011 to the present, of three specific Medtronic salespeople with individuals who worked at the Dole VA or HRMC, where the Relator alleges the fraudulent schemes took place.  The texts sought are described as follows:

| **Medtronic salespeople** | | **Individuals who worked at Dole VA or HRMC** |
|---|---|---|
| Winger | with | Employees of Dole VA |
| Davisson | | Employees of Hutchinson Regional Medical Center |
| Kirk | | Wichita Radiological Group physicians (practiced at Dole VA) |
| | | Dr. Michael Hagley (employee of Hutchinson Clinic who practiced at HRMC) |

Relator's Requests Nos. 109-120 were issued on 1/30/23 because of specific, identified deficiencies with the previous text message production.  Relator suspected that Medtronic withheld some of the texts.  On 12/6/22, Relator requested, and Medtronic promised to send, the ESI search terms applied to the texts.  Medtronic then told Relator on 12/12/22 that ESI search terms were not used to review texts described above.

On 12/12/22 and 12/19/22, Relator asked Medtronic if all of the texts with the Dole VA or HRMC employees had been produced.  Medtronic confirmed that it had not produced all of those text messages.  (Exhibit B, email of 12/13/22: "I believe we gave you everything you asked

for, but Leah would have to confirm." Email of 12/20/22: "I can confirm what Joe said, namely that we aren't aware of any additional responsive text messages that are unproduced.") Relator understands the key word here is "responsive" – as in, some texts were allegedly not responsive to the existing Requests for Production.

Relator believes that the previous RFPs were broad enough to capture all texts between the three Medtronic salespeople and those who worked at the Dole VA or HRMC. Relator believes their relationships concerned work (Medtronic devices, sales, logistics about medical procedures) and remuneration (catered lunches, nights out on the town, gifts).

The parties' ESI Protocol permits discovery and investigations into what the producing party has done to identify and produce responsive ESI. [Doc. 114, § 3.5] Similarly, the Sedona Principles suggest that ESI search terms and review processes can be discovered and prescribed if there is an agreement between the parties, or if there is "specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation') of a material failure by the responding party to meet its obligations." *See* The Sedona Principles-Third Edition: Best Practices Recommendations and Principles for Addressing Electronic Document Production (3d ed. 2018), comment 6.b, http://www.thesedonaconference.org (last visited March 29, 2023).

RFP No. 122 (within Exhibit A) formally sought the search terms and other parameters used by Medtronic in responding to discovery requests for text messages. In response to RFP 122, Medtronic stated:

> Counsel for Medtronic has communicated previously that it is willing to share the search terms and parameters used by Defendants to identify responsive messages during its prior search. To the extent that information has inadvertently not been previously provided, it will be promptly sent through routine discovery communications.
>
> Simultaneously with RFP 122, Relator sent RFPs 109-120 to seek all text messages with

individuals who worked at the Dole VA or HRMC. These specific requests were made in contemplation that Medtronic would not be willing to describe its search terms or parameters.

Relator's RFPs 109-120 included a footnote listing 23 previous RFPs that covered text messages. The footnote read:

> [1]Previous requests for text communications about narrow topics (RFPs 29, 38) and requests for documents on certain narrow topics (RFPs 19, 21, 23, 24, 28, 30, 32, 33, 34, 36, 40, 42, 57, 58, 62, 63, 64, 65, 76, 105, 106) have been a basis for Defendant Medtronic not producing text messages. In addition, at least one text message chain produced has an obvious gap where Medtronic withheld a text. (SCH-MDT00129393: "That would be awesome!! And Doug would buy it!" with no preceding text about what Doug Winger would buy). Relator therefore requests the complete communications.

On 3/1/23, Medtronic objected to RFP Nos. 109-120 and referred to its previous text message production. Medtronic doubled down on the position that was the basis for the footnote. Medtronic said it searched text messages for all of Relator's prior 108 requests. (Exhibit A, objections to RFPs 109-120: "… Medtronic has already incurred the burden and expense of reviewing and producing text messages in the possession of Doug Winger that were responsive to Relator's prior 108 requests for documents. …") This would have included RFP No. 37: "Any documents from Winger, Kirk, or Davisson sent to, or received from, any employee of Defendant or any other person, addressing any of the allegations set forth in the Third Amended Complaint." **"Documents" was defined earlier to include text messages.** To this, and many other RFPs, Medtronic stated it would conduct a "reasonable search."

On a discovery meet-and-confer teleconference on 3/6/23, Medtronic explained that burdensomeness was the predominant objection and the reason it would not provide records in response to the latest set of RFPs.

On 3/8/23, Medtronic stated that it produced responsive texts for the individuals at HRMC and Dole VA. (Exhibit B):

> **External Text Messages:** We identified phone numbers associated with known contacts for HRMC and Dole VA between 1/30/2011 and 4/16/2020, pulled all text messages with those numbers, and then reviewed and produced all that were responsive to your discovery requests.

Following these communications, Medtronic argued in a joint email to the Court that that its legal team spent more than 60 hours, and more than $25,000, reviewing text messages for production.

The parties exchanged discovery letters on many topics after the 3/14/23 Court teleconference. On the topic of text messages, Relator asked Medtronic to (1) identify the phone numbers searched for from the Kirk, Davisson, and Winger texts and (2) suggested that it would be less burdensome to producing complete communications. Medtronic stated it did not believe there were deficiencies. (Exhibit B)

Relator understands that dickering over the content of specific text strings will drive up Medtronic's expenses and burden. Also, it is wasteful for Relator to bring to light every text message where it *looks like something could be missing*, only for the chance of getting incremental, incomplete supplemental production, if it even exists. Discovery-on-discovery is allowed because of the deficiencies described below **(especially the incomplete conversations)**. Relator seeks the complete text communications.

**III.    Unexplained Gaps in Medtronic's ESI Text Message Production of 11/9/22**

The following describes specific deficiencies noted in the text message production.

**A.    One-sided conversations.** On 11/9/22, Medtronic produced about 215 text message strings between the three Medtronic salespeople and the individuals who worked at the Dole VA or HRMC. Relator is calling these text message "strings" in the sense that they show texting between/among the same people on the same day. Many are just one to three texts from Doug Winger without any response. Of the approximately 215 text message strings, about 130 text

message strings are from Doug Winger to VA employees Travis January and Jimmie Lee, but the responses from Travis January or Jimmie Lee are absent from production.

B.      **Missing texts in group texts.**  Some of the produced texts are group texts with VA employees that appear to be missing some texts. For example (as noted *supra*), the group text involving Doug Winger and several VA employees on SCH-MDT00129392- 129400 has a message from Teri Brinkley on SCH-MDT00129393 that said "That would be awesome!! And Doug would buy it!" There is no preceding text about what Doug Winger would buy.  Another example is a group text to VA employees at SCH-MDT00129414 where Doug Winger said "Yes."  There is no other text among the same people on this day, the day before, or the day after.  A third example is the group text to Travis January, Jimmie Lee, and Dr. Kermit Rust at SCH-MDT000129388-90 in which Doug Winger said "that's got to be a joke. Hell froze over," and then said two weeks later: "Haha! So hot."  There are no other texts among the same people.

C.      **Few text participants with Kari Kirk.** Medtronic clinical specialist Kari Kirk appears only on text messages with Doug Winger (her boss) and with Teri Brinkley (Dole VA lab manager), even though Ms. Kirk worked with both the Dole VA and HRMC for years.

D.      **Single-word or thumbs-up texts marked as responsive, while others were not responsive.**  Many of the text messages Medtronic deemed "responsive" are single-word texts out of context.  Several are just a thumbs up emoji or a "K."  Examples: SCH-MDT00128697, SCH-MDT-00129386, SCH-MDT-00128664.  It makes no sense that these were flagged as responsive.  Relator wonders what texts were considered non-responsive.

E.      **Dr. Rust texts.** There are no two-way texts with Dr. Kermit Rust.  However, he does chime in on group text messages.

F.      **Mark Wilson texts.**  There are no texts whatsoever with Mark Wilson, who was the

Director of Supply Chain at HRMC.

**G.     No client texts from Greg Davisson.**  There are no texts between Greg Davisson and anyone who worked at the Dole VA or HRMC.

It would be understandable if Medtronic stated that some people did not text much, or if the texts no longer existed.  However, Medtronic did not state this. Medtronic stated that that it would conduct a "reasonable search" and then Medtronic stated that all "responsive" texts with Dole VA/HRMC workers had been produced.  Medtronic decided to produce text messages with gaps and deficiencies in them.

**IV.     Authorities and Argument in Support of Overruling Objections to RFPs 109-120**

Medtronic objected to RFPs 109-120 on the basis of excessive document requests and because it had already reviewed text messages for 108 prior requests.  Medtronic further objected that RFPs 109-120 were overbroad, unduly burdensome, and seeking documents that were irrelevant, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence because of their broad scope.

Medtronic as the party objecting to discovery "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *No Spill, LLC v. Scepter Can. Inc.*, 18-cv-2681-HLT-KGG, at *5 (D. Kan. Oct. 19, 2021)

**A. Text messages with the employees at the Dole VA and HRMC are highly relevant.**

RFPs 109-120 are not a fishing expedition into anyone's private life.  The relationships between Medtronic salespeople and those at the Dole VA and HRMC were professional, business relationships.  Any texting over non-business topics would provide context to the relationships influenced by illegal remuneration.  RFPs 109-120 are relevant on their face. *See*

*Hongsermeier v. U.S. Truck, Inc.*, No. 16-cv-2321-JWL-TJJ, at *3 (D. Kan. Jan. 26, 2017). In *Hongsermeier*, a truck driver's cell phone records were relevant because they could show patterns of using the phone while driving. These would reflect the driver's professional practices, much like the complete communications of the Medtronic salespeople with the individuals at the Dole VA or HRMC.

FRCP 26(b) governs the relevancy of a discovery request. *Santana v. MKA2 Enters., Inc.*, No. 18-2094-DDC-TJJ, at *2 (D. Kan. Jan. 8, 2019) "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ..." *Id.* In *Santana*, defendant sought the complete text communications between plaintiff and the defendant's employees. Plaintiff initially produced at least one incomplete text conversation. *Id.* at 5-6. The plaintiff supplemented his discovery in the Motion to Compel briefing. Still, the Court ordered plaintiff to produce the complete text communications. The relevancy objection was overruled because it was a conditional objection, which are "invalid and unsustainable." *Id.* at 6.

Medtronic will likely oppose a "taint" theory of liability and insist that Relator have evidence of wrongdoing directly linked to the fraudulent claims. Text messages are relevant because they are likely to generate such evidence.

The objection that the requests are not "reasonably calculated" should be overruled because this standard is no longer a part of FRCP 26(b). *Lonquist Field Serv. v. Sorby*, No. 21-1035-KHV-KGG, at *17 (D. Kan. Oct. 26, 2021)

**B. Medtronic would have less burden in producing all texts requested in RFP 109-120.**

Medtronic has not supported its burdensomeness objections. "The party objecting to the discovery request must 'provide sufficient detail and explanation about the nature of the burden

in terms of time, money and procedure.' … 'A party asserting undue burden may not rest on its assertion but must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'" *No Spill, LLC v. Scepter Can. Inc.*, 18-cv-2681-HLT-KGG, at *18-19 (D. Kan. Oct. 19, 2021) (internal citations omitted).  The Relator and the Court have not been told – in the discovery objections, at the meet-and-confer, or at the discovery teleconference – how much it would cost to produce the complete text communications.  The text messages have already been collected in 2018 and 2020 from the phones of the three Medtronic salespeople, and more recent ones could be collected.  The text messages have probably already been reviewed for privilege.

The ESI deficiencies exist.  In particular, there are **incomplete text conversations.** Regardless of the outcome of this motion, Medtronic must re-review the text messages to fulfill its discovery obligations. FRCP 26(e)(1)(A).  The cost of producing the complete communications as requested by RFPs 109-120 may be less or the same as hand-selecting the documents that would resolve the deficiencies.

**C.  Requests for complete communications are proportional to the case and not overbroad.**

Medtronic's text messages produced on 11/9/22 have been supportive of Relator's claims.  The texts show, for example, salesperson Doug Winger texting his credit card to a VA employee so that he could order lunch.

RFPs 109-120 are limited in scope based on timeframe and text participant.  This is data that Medtronic may filter.  The requests are not overly broad and will not result in more records than Relator is allowed to seek in discovery.

"In cases that involve a significant amount of ESI, proportionality considerations are especially important." *No Spill, LLC v. Scepter Can. Inc.*, 18-cv-2681-HLT-KGG, at *20 (D.

Kan. Oct. 19, 2021) (citing the Sedona Principles). In *No Spill*, the court found that an estimated cost of $416,635 for producing documents was proportionate because it represented around 0.5% of the estimated amount in dispute (over $70 million). The cost in *No Spill* was for retrieving documents with search terms. In contrast, Medtronic collected text messages in 2018 and 2020, and would not have to use search terms to collect more recent ones.

**D. Medtronic cannot refuse to answer RFPs because there are too many.**

Medtronic has made a circular argument. Medtronic said that 108 requests is too many requests, and then it said that there are text messages with individuals at the Dole VA and HRMC that are not responsive to 108 requests. Medtronic frequently objected to the earlier RFPs and said it would conduct a "reasonable search." Medtronic was thereafter unclear on what it decided to withhold. Under the Sedona Principles, if a responding party has objections to a request for production, it should "state whether any ESI is being withheld as to any part withheld as to any part or the whole of each request." Sedona Principles, comment 4.6.

## Certification of Good Faith Efforts

As demonstrated in the description of the discovery meet-and-confer on December 6, 2022, and correspondence attached as Exhibit B, and the informal hearing held before this Court on March 14, 2023, under Fed.R.Civ.P. 37(a)(1), the undersigned movant hereby certifies that he has made a good faith effort by conferring with opposing counsel to obtain the discovery at issue without the Court's involvement.

## Conclusion

The text message production on 11/9/22 appears to have gaps and deficiencies. Medtronic acknowledges that there are unproduced text messages between its three salespeople (Winger, Kirk, Davisson) and the individuals who worked at the Dole VA or HRMC. Relator

seeks the complete communications and has issued RFPs 109-120 to achieve this goal with minimal burden on the parties, who would otherwise have had to engage in expensive discovery-on-discovery.

 WHEREFORE, Relator respectfully requests that this Court issue an order compelling Defendant Medtronic, Inc. and Defendant Covidien, L.P., to fully respond to RFPs 109-120.

Respectfully submitted,



Brendan J. Donelon, KS #17420
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel: (816) 221-7100
Fax: (816) 709-1044
brendan@donelonpc.com

Daniel W. Craig
6642 Clayton Rd., #320
St. Louis, Missouri 63117
Tel: (314) 297-8385
Fax: (816) 709-1044
dan@donelonpc.com
**Attorneys for Relator**

/s/ Cristina Olson             .
Carrie Mulholland Brous KS #18157
Cristina Olson D. Kan. # 79005
**BROUS LAW LLC**
3965 West 83rd Street, Ste. #115
Prairie Village, KS  66208
(913) 209-8596
cbrous@brouslaw.com
colson@brouslaw.com
www.brouslaw.com

**Attorneys for Relator**

Certificate of Service

 I hereby certify that on March 31, 2023 the above and foregoing was sent pursuant to this Court's CM/ECF procedures to the attorneys of record in this matter.

/s/ Cristina Olson
Cristina Olson
Attorney for Relator