IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>ex rel. THOMAS SCHROEDER )<br> )<br>     Relator, )<br> )<br>v. )<br> )<br>MEDTRONIC, INC., COVIDIEN, L.P. )<br>HUTCHINSON REGIONAL )<br>MEDICAL CENTER, and WICHITA )<br>RADIOLOGICAL GROUP, P.A., )<br> )<br>     Defendants. )<br>                 ) | Case No. 2:17-cv-02060-DCC-KGG |

## MOTION TO COMPEL DISCOVERY AND MEMORANDUM IN SUPPORT BY DEFENDANTS' MEDTRONIC, INC. AND COVIDIEN, L.P.

Defendants Medtronic, Inc. and Covidien, L.P. (collectively "Medtronic") move to compel Relator to produce (i) certain responsive communication he has refused to produce, and (ii) redacted portions of and attachments to responsive communications he has produced. Relator claims the documents are either not relevant or privileged.

Relator's refusal to produce the responsive documents, all of which relate to the subject matter of this case—which may include party-opponent admissions regarding the litigation or ratified statements regarding his claims—on relevancy grounds is without merit. Further, Relator's assertion of privilege is facially incorrect. Because the requested documents are responsive to Defendants' discovery requests, are relevant and proportional to the needs of the case, and are not subject to any privilege, Defendants' respectfully request the Court compel their production.

## PROCEDURAL POSTURE

In discovery, Medtronic sought communications made between Relator, his agents, and third parties about Defendants and the allegations in the case. (Declaration of Leah Huyser ("Huyser Decl.") ¶ 2, Ex. A (Def.'s RFP) at No. 8, 10.) Relator initially claimed the correspondence, including his own communications, were not subject to discovery. Following an informal discovery call with this Court, Relator produced the responsive communications in April 2022. The responsive documents were relevant to the allegations in the case and used as exhibits in witness depositions.

In March 2023, following the publication of a news article that included confidential documents produced in this case as well as false information, Medtronic counsel became aware of additional unproduced communications between the Relator and/or his counsel and third parties regarding the subject matter of the litigation. Medtronic requested Relator to update his production of any responsive documents. During a call on March 8, 2023, Relator's counsel agreed to produce the communications his client had with media, an agreement which was then confirmed in writing. (Huyser Decl. ¶ 3, Ex. B (Mar. 24, 2023 Correspondence); Huyser Decl. ¶ 4, Ex. C (Email from B. Donelon to A. Huyser Mar. 31, 2023).)

On April 3, 2023, Relator produced some, but not all, of the additional responsive documents. In doing so, Relator redacted portions of the produced documents and withheld select attachments. Relator has since indicated that he objects to producing these unproduced, responsive documents on the basis of relevance and privilege.

The responsive documents withheld by Relator have been identified by him as follows:

- Email, text message, and any additional communication from January 12, 2023 to February 22, 2023 between Thomas Schroeder, Brendan Donelon, and Annie Waldman (Reporter, ProPublica).

- Email, text message, and any additional communication from January 10, 2023 to February 17, 2023 between Thomas Schroeder, Brendan Donelon, Paige Tororelli (Investigative Producer, NBC Universal), and Scott Zamost (Senior Investigative Reporter, NBC Universal).

- Email, text message, and any additional communication between Thomas Schroeder, Brendan Donelon, Mark Crowley (General Counsel, United States Senate Committee on Veteran's Affairs), and United States Senator Jerry Moran's staff.

(Huyser Decl. ¶ 5, Ex. D (Relator's Discovery Log).)

The produced documents that were redacted are:

- An attachment labelled "Redacted DOJ Report – Medtronic Athx Fraud" to a communication between Relator and Ike Swetlitz (Bloomberg News) on or around December 15, 2022.

- Redacted communications between Thomas Schroeder, Brendan Donelon, and various media outlets.

(Huyser Decl. ¶ 6, Ex. E (Schroeder 03435).)

## ANALYSIS

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The rule contemplates a liberal scope of discovery, though this Court "possess[es] considerable discretion in determining the need for, and form of, discovery." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015).

Relator should be compelled to produce the non-privileged, relevant discovery Defendants seek. Indeed, over the course of discovery, Medtronic has expended hundreds of thousands of dollars to collect, review, and produce well over 130,000 pages of documents in response to Relator's discovery requests. Relator should be held to the same rules and obligations.

3

A.     **Relator's Communication with Various Media Outlets Has Provided Relevant Evidence.**

The responsive documents Relator produced thus far, including communications with ProPublica, NBC Universal (also referred to as "CNBC"), and Bloomberg News, are highly material to this litigation. In those communications, Relator disclosed to the media various documents relating to the case, ranging from deposition transcripts, confidential Medtronic data that was used in violation of the protective order,[1] marketing brochures, and Robert Dole VA Medical Center records. (Huyser Decl. ¶ 6, Ex. E at 16, 27, 38, 74.) Relator also shared his own analysis of the data and information in the case, revealing and detailing the purported claims he is making in the case against Medtronic. (*Id.* at 2–5, 22, 34–35). Many of these statements were also grossly unfounded, false, or misleading. For example:

- Relator told the reporter his case was about "unimaginable suffering and death inflicted on hundreds of our nation's veterans (via DAART & extreme overuse of DA)." (*Id.* at 2.) When under oath, however, Relator admitted he couldn't identify a single procedure or patient outcome at the Dole VA. (Huyser Decl. ¶ 7, Ex. F (Thomas Schroeder Depo.) at 27:19–30:1.). (Indeed, Relator failed to advise the reporter that *not a single witness* in the case supports this assertion.)

---

[1] Relator's conduct violated this Court's Protective Order. In this litigation, Medtronic produced materials that were designated as confidential under the protective order. In violation of the protective order, Relator filed those documents in the separate APA case without a case need and *without prior notice to Medtronic*, as required. Thomas Schroeder v. VA, Case No. 2:22-cv-02209-DDC-KGG, at ECF 33. Indeed, Relator explicitly admitted to a journalist the filing was done as a strategy designed to make the documents public. (Huyser Decl. ¶ 6, Ex. E at 11 (noting that by filing it he can get it automatically unsealed by the Court, and hoping Medtronic wouldn't notice because its attorneys are "in twined [sic] in a Consuming trial on another case at the moment").) Relator also provided the media a VA email that he claimed proved an increase in amputations (an assertion that has been disavowed by the VA employee who drafted the email). The materials were predictably used in an article that contained highly misleading and out-of-context emails that have unfairly and improperly damaged Medtronic. The violation of the Protective Order will be the subject of a separate motion.

Similarly, the deposition transcript of VA employee Rick Ament was taken on December 21, 2022. It was supposed to remain confidential for thirty days. (Huyser Decl. ¶ 6, Ex. E at 25.) However, Relator sent a condensed written transcript and a video of the deposition to NBC Universal on January 18, 2023. (*Id.* at 9.)

- Relator claimed that the FDA approved atherectomy IFUs only for the "rare, calcified, eccentric" plaque. (Huyser Decl. ¶ 6, Ex. E at 4.) This claim is specifically tied to Relator's argument on Medtronic's purported off-label promotion. The communication is a further admission regarding his so-called theory and the documents he claims support it. (Notably, his contention is facially contradicted by the FDA approval of use of atherectomy devices.) This party-opponent admission can be used at summary judgment.

- Relator claimed to the media that any and all 4 mm DCB balloons must have been used off-label below the knee. (*Id.* at 15-16.) In fact, 4 mm balloons are approved by the FDA because they have on-label uses. Again, this extra-judicial assertion both false and another party-opponent admission is also usable at summary judgment.

While these are just a handful of examples, they make it clear why the communication by Relator and his attorney with third party sources provide meaningful and relevant non-privileged information, including party-opponent statements.

    **B.**    **Relator's Asserted Grounds For Withholding.**

        1.    <u>Documents or Redacted Portions of Documents Withheld on Relevancy Grounds.</u>

            a.    *Agent Emails and Communications with Third Parties.*

First, as to the responsive communications withheld by Relator, Relator provided a discovery chart ("Chart") of these withheld communications that lumps together numerous communications occurring over two months.

5

| Author / Recipient | Date(s) | Topic(s) |
|---|---|---|
| Emails from Donelon to Annie Waldman with ProPublica.<br><br>*Relator objects to production on the grounds of relevancy.* | Emails from Jan. 13, 2023 through Feb. 22, 2022. | No messages, attachment of court filing.<br>Requests and responses to Donelon re: providing statement for article. |
| Emails from Donelon to Sam Woodward and Paige Tortorelli with CNBC.<br><br>*Relator objects to production on the grounds of relevancy.* | Emails from Jan. 10, 2023 through Feb. 17, 2023. | No messages, accepting Zoom invites.<br>Donelon providing copies of witness depo transcripts for Ament, Brown, and Validiva.<br>Donelon answering questions regarding what is alleged in lawsuit.<br>Donelon providing copies of, and comment on, public documents obtained via Relator's *Touhy* requests. |
| Email communications between Donelon and Mark Crowley, General Counsel—Minority Staff, U.S. Senate Committee on Veteran's Affairs. Mr. Crowley initiated communications. Mr. Donelon informed DOJ attorney Jon Fleenor.<br><br>*Objection on the grounds of privilege communication between counsel and on relevancy.* | Emails from Jan. 4, 2023 through Feb. 21, 2023. | Communications regarding allegations in case, including *Touhy* documents, documents from discovery, and deposition testimony.<br>Providing copy of court's Amended Protective Order. |

(Huyser Decl. ¶ 5, Ex. D (Relator's Discovery Log).) As such, the Relator has failed to produce an adequate description of withheld documents, as required.

Nonetheless, the Chart still identifies unproduced, plainly responsive documents, including those in which Mr. Donelon, Relator's brother-in-law and agent, was "answering questions regarding what is alleged in the lawsuit," and providing "comment" on evidence. (Huyser Decl. ¶ 5, Ex. D.) Relator himself has described the communication he and Mr. Donelon were providing to the media as essential to "put[ting] the pieces of this complex puzzle together . . . ." (Huyser

Decl. ¶ 6, Ex. E at 3.) The overall context suggests, therefore, that Relator and his attorney are sharing their position on this case with non-privileged third parties, including identifying the evidence and facts they believe support their allegations and claims. In short, Relator clearly believed the information they were providing to the media was relevant to a story based on his allegations for purposes of a public media campaign; it is likewise relevant for Defendants now.

Furthermore, the type of information shared in these communications is well within the bounds of traditional discovery. For example, Defendants have served contention interrogatories that specifically ask for the facts and evidence Relator contends support his claims. (*E.g.*, Huyser Decl. ¶ 8, Ex. G (Defs.' Second Interrog.) at No. 21, 22 (requesting Relator identify each procedure he alleges is medically unnecessary and identify "any and all facts You contend support your assertion").) Defendants are entitled to discovery of such information. *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"). Likewise, statements by a party-opponent or his agent regarding his claims are discoverable and admissible. Fed. R. Evid. 801(d)(2).

Moreover, Medtronic is entitled to know what extra-judicial statements Relator is making regarding his allegations and his claims regarding the evidence in this case. As noted above, Relator has already demonstrated a willingness to violate the Protective Order, and Medtronic is entitled to know if there are additional violations that have occurred. Relator's communication with various media outlets is also relevant to Defendants' potential claims/counterclaims for defamation and tortious interference.[2] The communications produced to date demonstrate that Relator is making false statements about Defendants, and the statements are made with the specific intent to harm the legitimate and lawful business of Defendants. Medtronic is entitled to discovery

---

[2] Due to a still pending motion to dismiss, Defendants have not yet answered in this action.

to explore what other representations of fact by Relator or his agent have been made because Medtronic likely has a colorable claim again Relator.

b.  *Attachments Withheld From the Prior Production.*

Although Relator admitted the discoverability of most attachments he sent to media outlets, Relator withheld one specific attachment: a report he apparently provided at one time to DOJ titled "Athx Fraud" but subsequently provided to the media. Although Relator claims this is not relevant, it appears to overlap very specifically with Relator's allegations in this case. Indeed, in his emails to media outlets, Relator himself calls this a "playbook" that "should connect the larger dots together" about his allegations. (Huyser Decl. ¶ 6, Ex. E at 2.)

In refusing to produce the material, Relator claimed, however, that the document was not relevant because it contains information on "inquiries into the larger role directional atherectomy plays in the nationwide market, CMS reimbursement, its history of development, and Medtronic's role in promoting and marketing this device in relation to its 510(k) clearances and IFUs." (Huyser Decl. ¶ 5, Ex. D at 2.) It is a baffling assertion, as these precise topics have been the subject of allegations and significant discovery in this case. Relator's Fifth Amended Complaint mentions all of these topics, making this evidence necessarily "of consequence" in the action. Fed. R. Evid. 401; Fifth Amend. Compl., ECF 233, at ¶¶ 12, 26–28, 41, 82, 113, 123, 142. These topics have also been repeatedly the subject of discovery, including document requests of Medtronic by Relator, demanding materials related to atherectomy such as promotion materials, information on reimbursement, FDA submissions, FDA-approved IFUs, etc. Relator has also repeatedly asked witnesses about these topics during depositions, including the Medtronic Medical Officer, Dr. John Laird; a Medtronic Rule 30(b)(6) witness; Medtronic sales representatives; and the at-issue physicians. Given the degree of focus Relator has given these topics during discovery, Relator's position that this material in his possession is now unrelated to the case is, frankly, frivolous.

Therefore, Defendants request full and complete discovery of communication between Relator, his agents, and various media outlets.

2. Documents or Redacted Portions of Documents Withheld on Privilege Grounds**.**

Relator is also withholding communications with employees of the United States Senate on the grounds of "privilege." This assertion is also frivolous, and Relator has not identified a basis for asserting it. Specifically, Relator and/or his counsel has had communication with the U.S. Senate Committee on Veteran's Affairs, including with Mark Crowley, the General Counsel to the that Committee ("the General Counsel") about his allegations in this case. Relator asserts this communication should not be produced, however, because it is a "privilege[d] communication between counsel." (Huyser Decl. ¶ 5, Ex. D.) Although Relator does not specifically name the common interest doctrine, it appears to be the only possible basis for Relator's assertion that communications with counsel for a third party remain privileged.

Yet, the common-interest doctrine does not apply. The doctrine is an exception to the waiver rules which hold that disclosure of privileged material to a third party waives its privilege protection. An exception exists, however, if privileged material—either attorney-client communications or work product—is communicated between parties whose interests are appropriately aligned in litigation or anticipated litigation. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997); Restatement (Third) of the Law Governing Lawyers § 76 (2000). The party asserting the privilege has the burden of establishing that there has been no waiver. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 427 (S.D.N.Y. 2013).

Relator has not provided a basis for his assertion. Furthermore, there is no caselaw supporting Relator's asserted privilege with employees of the United States Senate. The Senate Committee on Veteran's Affairs is not a party or participant in the case, and Relator has not

9

identified any common legal purpose that he and the Senate counsel agreed on prior to their communication. *United States ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475, 479 n. 3 (D. Utah 2001) ("A community of interest exists where different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice . . . .") (internal quotation omitted). Furthermore, it is well-established that voluntary disclosures to a government office are not cloaked in privilege. *In re Qwest Communication Intern. Inc.,* 450 F.3d 1179, 1185 (10th Cir. 2006) (explaining that a "voluntary disclosure" is inconsistent with the attorney-client relationship and waives the privilege and refusing to adopt a "government investigation" type of privilege to protect voluntary disclosures to the federal government); *In re Sealed Case*, 676 F.2d 793, 824 (D.C.Cir.1982) (voluntary disclosures to SEC not protected by privilege).

Relator cannot selectively waive a purported privilege and disclose a document, and then expect that purported privilege to remain as a shield against production in litigation. *Lugosch v. Congel*, 218 F.R.D. 41, 51 (N.D.N.Y. 2003). Defendants request full and complete discovery of communications between Relator or his agent and third parties, including the General Counsel of the U.S. Senate Committee on Veteran's Affairs.

## **CONCLUSION**

For the reasons advanced above, Medtronic respectfully request that its Motion to Compel Discovery be granted. At a minimum, Medtronic request that the Court conduct an *in camera* review of the requested documents to determine whether they should be disclosed. U.*S. ex rel. Yannacopoulos v. Gen. Dynamics*, 235 F.R.D. 661, 662 (N.D. Ill. 2006).

| | |
|---|---|
| April 28, 2023 | Respectfully submitted,<br><br>*Alethea M. Huyser*<br>Joseph T. Dixon, III (*admitted pro hac vice*)<br>Alethea M. Huyser (*admitted pro hac vice*)<br>**FREDRIKSON & BYRON, P.A.**<br>200 South Sixth Street, Suite 4000<br>Minneapolis, MN 55402<br>Phone: (612) 492-7000<br>Fax: (612) 492-7077<br>jdixon@fredlaw.com<br>ahuyser@fredlaw.com<br><br>*/s/ Robert J. McCully*<br>Robert J. McCully (KS #12433)<br>Rebecca M. Gosch (*admitted pro hac vice*)<br>**SHOOK, HARDY & BACON L.L.P.**<br>2555 Grand Blvd.<br>Kansas City, MO 64108<br>Phone: (816) 474-6550<br>Fax: (816) 421-5547<br>Email: rmccully@shb.com<br>Email : rgosch@shb.com<br><br>*Attorneys for Defendants Medtronic, Inc. and Covidien, L.P* |

**CERTIFICATION REGARDING DUTY TO CONFER**

Pursuant to Kansas Local Rule 37.1 and 37.2, Defendants Medtronic, Inc. and Covidien, L.P certifies that it undertook reasonable efforts to confer with Relator Thomas Schroeder regarding the subject of this motion, including (1) multiple written and oral communication, (2) an informal conversation before the Hon. Mag. Judge Gale on April 4, 2023, and (c) further substantive communications between the parties on the dispute.   No resolution was reached.

*Alethea M. Huyser*
Joseph T. Dixon, III (*admitted pro hac vice*)
Alethea M. Huyser (*admitted pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000
Fax: (612) 492-7077
jdixon@fredlaw.com
ahuyser@fredlaw.com

Robert J. McCully (KS #12433)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 474-6550
Fax: (816) 421-5547
Email: rmccully@shb.com

*Attorneys for Defendants*
*Medtronic, Inc. and Covidien, L.P*

13

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF parties of interest.

                                  SHOOK, HARDY & BACON L.L.P.

                                  */s/* Robert J. McCully