IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* THOMAS SCHROEDER,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC., COVIDIEN, L.P.<br>HUTCHINSON REGIONAL<br>MEDICAL CENTER, and WICHITA<br>RADIOLOGICAL GROUP, P.A.,<br><br>Defendants. | Case No. 2:17-cv-02060-DCC-KGG |

**DEFENDANTS MEDTRONIC, INC. AND COVIDIEN, L.P.,'S OPPOSITION TO MOTION TO AMEND THE REVISED SCHEDULING ORDER FOR EXTENSION OF EXPERT DEADLINES**

Under the Court's Amended Scheduling Order, Relator Thomas Schroeder was required to produce all expert reports on or before April 17, 2023. He did not. While Relator complied in part, producing three reports from one expert, Relator moves this Court for extension of time to disclose three other expert disclosures, as follows:

*First*, as it relates to the "Allegiant Experts," Relator indicates an expert will opine on the value of claims submitted by Hutchinson Regional Medical Center ("HRMC"). Relator asserts that he is still waiting for outstanding data from HRMC. HRMC has indicated to the Court that it will supply the data and does not oppose the limited extension of 21 days from the date of their production. (*See, e.g.,* Corr. from Anna Schuler (Apr. 25, 2023).) Provided Medtronic, Inc. and Covidien, P.A. (collectively "Defendants" or "Medtronic") are afforded a corresponding extension of time to produce expert reports in rebuttal to these "Allegiant Experts," Medtronic does not oppose this portion of Relator's request.

*Second and third*, Relator requests **unlimited** extensions of time for two other experts—Dr. Kim Hodgson and Dr. Caitlin Hicks--whom Relator indicates will opine on sampling and whether procedures performed at the Robert J. Dole VA ("Dole VA") by Wichita Radiological Group ("WRG") were medically necessary. Medtronic opposes this request for an unlimited extension. At the close of fact discovery, Relator has failed to identify *any* admissible evidence to support his medical necessity claim. Relator therefore proposes an open-ended extension to see if he can have unlimited time to adduce such evidence despite the absence of any fact witness to support Relator's medical necessity claims.

Medtronic respectfully requests the Court decline this extraordinary demand. By his own admission, Relator has never had any actual knowledge about the medical care provided to patients at the Dole VA, and the VA—the real party in interest in this case—has publicly stated that it is currently unaware of any patient harm associated with Relator's allegations.

At the same time, Relator's request unfairly prejudices Defendants, both by extending an already lengthy case and by allowing Relator to continue to use his unfounded allegations to cause extrajudicial harm to Defendants. Defendants are entitled to move forward towards a final resolution of this matter.

**I.      BACKGROUND**

As set forth below, Relator has not developed a factual record that either justifies the requested unlimited extension of time, or justifies the unfair burden to Defendants.

**A.     Relator Has Never Identified Any Factual Basis for His Medical Necessity Claim.**

1.      Relator's Medical Necessity Claim Has Not Yet Even Survived the Pleading Stage.

In his original January 2017 Complaint, Relator alleged a violation of the False Claims Act ("FCA") predicated solely on allegations that Defendants paid kickbacks to induce purchases of

2

peripheral vascular products from the Dole VA. In September 2019, based on what he heard second-hand, Relator amended his complaint to claim Medtronic caused physicians from WRG to perform medically unnecessary and off-label procedures at the Dole VA in violation of the FCA. (ECF No. 14.)

This Court ruled that Relator's medical necessity and off-label claims failed to plead facts sufficient to survive the pleading stage. (ECF No. 67.) Although Relator was allowed to replead, Defendants continue to maintain that insufficient evidence exists to support the claim. (ECF Nos. 46 at 16–18, 76 at 22, 150 at 8–21, 248 at 24–33.) Relator has repeatedly amended, and amended and then amended again, avoiding any further decision by this Court as to whether he has stated a plausible medical necessity claim. Medtronic's Motions to Dismiss have pointed out that the Complaint fails to identify even a single, specific actual medical procedure or patient at the Dole VA, nor any evidence connecting Medtronic to patient care decisions. (*Id.*) Defendant's latest Motion to Dismiss is still pending, and, to date, Relator's medical necessity claim still has not survived the pleadings stage.

### 2. Relator Admits He Has No Personal Knowledge of Any Medical Care Rendered at Dole VA.

As Medtronic's Motion to Dismiss suspected, Thomas Schroeder was forced to admit in his deposition that he had no personal knowledge of any of his allegations and he had *never* witnessed a single peripheral vascular procedure performed by any WRG physician at the Dole VA. (Declaration of Alethea Huyser ("Huyser Decl."), Ex. A, at 27:01–30:01), Ex. B (Rel. Resp. to Interrog. No. 21). Indeed, Schroeder had no personal knowledge of any fact that would prove that even a single procedure at the Dole VA was medically unnecessary. (Huyser Decl., Ex A at 27:01–30:01, Ex. B.)

3

### 3. Alleged "HCPs" In Relator's Complaint Were Sales Representatives Who Are Unaware of Any Medically Unnecessary Procedures at the Dole VA.

Lacking personal knowledge, Relator represented in his Amended Complaint that the claims were based on "communication with other firsthand witnesses." (ECF No. 223 ¶ 35.) The complaint identified five supposed Health Care Providers ("HCPs") who had witnessed medically unnecessary procedures at the Dole VA. (*Id.* ¶¶ 113–15, 125–27, 130, 139–40, 149 150, 155–56.). Three of the so-called HCPs who had witnessed procedures at the Dole VA turned out to be sales representatives named Larry Valdivia, Monique Lloyd, and Todd Brown.[1] (Huyser Decl., Ex. B.) When deposed, however, the three witnesses did not express any belief that medically unnecessary care had occurred. In fact, they had no information on specific patients at all—such as patient condition and treatment needs. (*E.g.,* Huyser Decl., Ex. C (Brown Dep. 88:9-20; 89-91:14; 167:16-168:10).) Moreover, the witnesses believed the WRG doctors were good physicians who dealt with very difficult cases at the VA and had the skills to do so (Huyser Decl., Ex. E (Valdivia Dep. 02:1-9, 131:6-132:24); Ex. C (Brown Dep. 168:11-17 (deferring to Valdivia's assessment).)

### 4. Relator's Expert Admits To Lacking Evidence Sufficient to Determine Medical Necessity.

Medtronic's Motions to Dismiss pointed out that Relator's allegations were based solely on alleged numbers of medical devices purchased or used at the Dole VA. Medtronic pointed out that, even if these numbers were assumed true (and they are not), device purchase and use data

---

[1] The other two so-called HCPs, sales representatives Dan Clinkscales and Mary Blasi, testified they did not actually have any first-hand knowledge of peripheral vascular procedures at the Dole VA. Nonetheless, what little knowledge they had did not support Relator's claims. (*See, e.g.*, Huyser Decl, Ex. D (Clinkscales Dep. 172:7-173:23) (explaining that he had no personal knowledge, but a very experienced lab tech from Dole VA who he trusted was upset by Relator's allegations because the care at Dole VA was always supported by clinical justifications).)

does not, and cannot, provide sufficient facts from which any person could assess the medical necessity of a patient's medical care.  (ECF No. 248 at 28–29, 32–33).

Relator's own experts now admit this to be true, stating that in order to "render an opinion on whether treatment performed was medically necessary . . . . it is necessary for me to review the[] medical records" of the veterans treated at the Dole VA. (Schroeder 2d Decl. of Dr. Kim Hodgson, *Schroeder v. U.S. Dept. of Veterans Affairs*, Case No. 2:22-cv-2209-DDC-KGG (D. Kan. Apr. 17, 2023) ("APA Action"), ECF No. 45-1.)  Although Relator has conducted *significant* discovery (including 24 depositions and the collection of approximately 180,000 pages of documents), Relator's motion admits, at the close of discovery, that medical necessity allegations require *actual medical information* about patients.  (*See* ECF No. 325 at 1.)   Four years after first bringing his baseless claims of medically unnecessary procedures, and impugning the reputation of three physicians,[2]  Relator has never had any actual medical information about a single patient treated at the Dole VA, and acknowledges that one would need such information to sustain a claim for medically unnecessary treatment.

### B.   The Real Party In Interest—the United States Veteran's Administration— Has Declined to Produce Patient Files and Publicly Stated It Has Not Identified Any Patient Harm.

Relator seeks an extension of his expert deadlines because he is still trying to compel the Dole VA—the real party in interest in this litigation— to produce patient medical data and records.  Relator first requested this information in February 2022.  To date, the VA has declined to do so.  (*See generally,* the APA Action.)

---

[2] The Amended Complaint also falsely alleged the three physicians had a financial incentive to do more procedures and use more devices.  (*See generally* ECF No. 233 ¶¶ 102–05.)  This too has been proven false.

The VA has also publicly disclaimed any identified quality of care issues at the Dole VA. The same month that the VA filed the above objections, VA Press Secretary Terrence Hayes issued a written statement in response to media reporting instigated by Relator, explaining:

> VA is conducting an extensive review of patient care at [the Dole VA] – including the number of devices used on patients – to make sure that Veterans were not harmed by any procedures. *To date, VA has found no quality of care issues*. The investigation will continue until every Veteran's case has been reviewed.

(Huyser Decl. Ex. F (emphasis added).)  The VA further provided the following:

**Were there any medically avoidable Procedures?**

Thus far, no safety issues or substandard care have been identified.

[. . .]

**Is there concern for patient safety?**

Any allegation of medically avoidable procedures raises potential concern for patient safety. However, to date we have not identified any substandard care, although medical review is ongoing.

(Huyser Decl. Ex. F.)[3]  The VA has since provided additional details about its ongoing review, indicating that the VA has fully screened and ruled out for patient concerns approximately three-quarters of its reviewed patient files, with the remaining files still under review.  (APA Action, ECF No. 51.)

### C. Other Witnesses Have Also Testified That Care Was Appropriate.

Discovery has nonetheless provided the parties with first-hand factual information about peripheral vascular patient care at the Dole VA.  Contrary to the allegations, witnesses have testified that patients received peripheral vascular disease assessments, diagnosis, and conversative

---

[3] *See also* Annie Waldman, *Steak Dinners, Sales Reps and Risky Procedures: Inside the Big Business of Clogged Arteries*, ProPublica and The Wichita Eagle, February 16, 2023, *available at* https://www.propublica.org/article/medtronic-medical-device-kickbacks-lawsuit-kansas (also attached as Huyser Decl. Ex. G).

6

treatment with physicians prior to any referral to the WRG interventional radiologists. (Huyser Decl. Ex. H (Rusanwosky Dep. 9:14-23:24); Ex. I (Decl. of Dr. Collins). Upon referral, patients underwent angiograms and, if appropriate, angioplasty. (*See* Huyser Decl., Ex. J (Brinkley Dep. Tr. 20:04–09), Ex. K (Hett Dep. Tr. 98:10–102:21), Ex. L (Gonda Dep. Tr. 161:24–178:11), Ex. M Winblad Dep. Tr. 25:24–28:17, 114:13–119:24), Ex. N (Rust Dep. 250:04–252:09.) Witnesses could not recall a single patient treated by the WRG physicians for whom the procedure was not medically indicated. (*See* Huyser Decl., Ex. E (Valdivia Dep. Tr. 97:16–101:16), Ex. O (Kirk Dep. at 386:6-22, 392:9-394:11), Ex. P (Winger Dep. Tr. 319:01–320:22), Ex. K (Hett Dep. Tr. 110:04–111:09), Ex. J (Brinkley Dep Tr. 224:04–07).) Indeed, the WRG physicians, one of whom currently serves in the military, had a reputation at the Dole VA for being willing to work hard to clear the vasculature of veterans where other physicians may have given up. (Huyser Decl., Ex. O (Kirk Dep. Tr. 392:9-394:11), Ex. Q (Wilson Decl.).) After the patients were treated, they received follow-up care with the referring providers. (Huyser Decl., Ex. H (Rusanowsky Dep. 23:00 -23:24, 34:2-35:17), Ex. I (Collins Decl.).) On follow-up, the providers do not recall any concerns that the care rendered by WRG was medically inappropriate or harmful to patients. *(Id.)* To the contrary, the referring physicians recall patients returning in an improved condition. (*Id.*) Discovery has not revealed a single person with contemporaneous, first-hand knowledge of patient treatment at the Dole VA who has expressed concerns—then or now—about the medical care provided by WRG.

While Relator is likely in his reply to point to some unclear documents from an internal VA investigation, he presumably will avoid the main limitation on that effort: it was a cost

reduction investigation, not a medical necessity determination.[4] (Huyser Decl., Ex. R (Ament Dep. Tr. 30:04–07, 97:13–98:19, 215:07–11, 223:08–24, 226:08–13); Ex. S (Hastings Dep. 84:1-99:4).)

**D.    Delay Unfairly Harms Medtronic and the Other Defendants.**

Allowing Relator to prolong the pendency of his unsubstantiated claims and allegations also causes unfair harm to Medtronic.

1.    Relator Seeks An Unlimited Extension of Time, Denying Medtronic a Timely Resolution of These Unfounded Claims.

It is axiomatic that justice delayed is justice denied. While litigation is often long and laborious, it nonetheless remains the goal in Rule 1 of the Federal Rules of Civil Procedure that the rules be "employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

In this case, Relator has had more than ample opportunity to develop his case. The Complaint was originally filed in 2017, and has been followed by five subsequent amendments. The scheduling order has already been extended twice, and Relator has had a full 16 months to

---

[4] Relator has made numerous public representations about the contents of the emails the VA produced from that cost reduction effort. Relator consistently misconstrues the emails to fit his narrative, only to have the email authors explain that he is wrong. Even so, Relator has repeatedly advanced these false accusations. For example, Relator has represented that one email was proof the VA had found an increase in amputations associated with WRG's care. When Relator finally deposed the author of that email, the VA employee was very clear that the VA knew that data was entirely inaccurate and unreliable and had discarded it. (Huyser Decl., Ex. S). A physician who served on the Dole VA's amputation committee then testified that, to the contrary, amputation rates at the Dole VA have decreased every year throughout that time period WRG provided services there. (*Id.* Ex. H (Rusanowsky Dep. 37:9-38:22).)

In similar fashion, Relator provided reporters his interpretation of some sparse handwritten notes by Dr. Maqbol, a physician from Oklahoma who it appears reviewed some unknown files. The scope of what was reviewed, what wasn't, and the intent and finality of Dr. Maqbol's work remains unclear and undisclosed; many of his notes even appear solely in the form of questions. Relator chose not to depose Dr. Maqbol and, as a result, the meaning, context, and foundation for his various notes remains unknown and unclear.

conduct and complete discovery. During that time, he served 128 Requests for Production of Documents on Medtronic, 52 requests on Wichita Radiological Group, and another 52 requests on Hutchinson Regional Medical Center. (Huyser Decl. ¶¶ 23–25.) Relator has served numerous subpoenas on third parties, and has made numerous *Touhy* requests to the Dole VA for documents and depositions. In response, Relator has obtained a total of 130,871 pages of documents from Medtronic, 43,605 pages from other Defendants, and 2,466 from the VA. (Huyser Decl. ¶¶ 26–28.) Relator has also taken 24 fact depositions, including a Rule 30(b)(6) deposition of Medtronic which identified over 20 different topics, each with numerous additional subparts. (Huyser Decl. ¶¶ 29–30.)

As a result, Medtronic has incurred hundreds of thousands of dollars in expenses defending itself from unfounded claims that have yet to even survive the pleadings stage. Medtronic has a due process right to prove the lack of support for Relator's allegations in a timely manner consistent with this Court's Scheduling Order.

### 2. Relator Has Used His Unsupported Allegations to Pursue a False and Misleading Media Campaign.

The prejudice to Medtronic is compounded by Relator's intentional tactic of using his unfounded claims to try to leverage the government and media to increase pressure on the VA and the Defendants.

Relator has been explicit that harming Medtronic through extrajudicial efforts is his plan. Schroeder expressly told reporters, for example, that his media campaign is "impactful to MDT's stock, rev line, and reputation." (Huyser Decl., Ex. T (Relator Corr. with Media at 25–26).) Relator further claimed he was trying to convince the Department of Justice of his theories and, "[o]nce the DOJ finally gets their heads wrapped around what I laid out for them, the financial/reputation harm to MDT will be devasting (not hyperbole)." (*Id.* at 36.)

9

The representations Relator is making, and which the articles have published, include allegations and claims from Relator's pleadings that he has *long* known were entirely without a basis. These include claims, for example, that Defendant's employees gave hospital employees sports tickets, trips, cars, etc. (Huyser Decl, Ex. G).) Relator has never identified *any* evidence to support those allegations.

In addition, Relator has pressed the media with claims behind the scenes that are both untrue and which Relator has, in Court filings, admitted he lacks evidence to support, such as:

- "[T]he *unimaginable suffering and death inflicted on hundreds of our nation's veterans (via DAART & extreme overuse of DA) for financial gain* at the Wichita Robert J Dole VA is a heartbreaking story I also feel needs to be told." (Huyser Ex. T at 2-3).)

- "My attorney can also share with you some tragic documents detailing the *abuse and extensive fraud* uncovered there." (*Id.*)

- "My brief to the DOJ explains this process as to how/why the US taxpayer and patient are *getting fleeced for BILLIONS of dollars and incalculable harm to human life*." (*Id.*)

- Regarding complications/data on atherectomy: "[I]t *has intentionally never even been attempted to solve because it would cost billions of dollars to industry and physicians*." (*Id.*)

"But, that story was more immediately focused on the mess at the Wichita VA w Medtronic specifically, not necessarily the *larger atherectomy fraud nationwide* you and I discussed . . . ." (*Id.*)

### 3. Relator Improperly Used the Article to Scare Deponents.

Relator was able to get an article published that parroted his untrue and unsupported allegations, and it was picked up and reported on the front page of the Wichita Eagle. Following that event, Relator's counsel began questioning deponents about the article and pressing for their opinions of what they read. (*See, e.g.,* Huyser Decl. Ex. U (Dana Stelter Dep. Tr. 119:04-23).) In doing so, Relator appeared to be attempting to influence fact witness testimony. Medtronic has a right to a fair and impartial process, and Relator's use of prior case delay to undertake an active

extrajudicial campaign to try to sway the outcome of the case raises concerns that further unlimited delay will only compound the unfair harm.

## II. LEGAL STANDARD

"A Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Bethel v. U.S. ex rel. Veterans Admin. Med. Ctr.*, CIV.A. 05-CV-01336PS, 2008 WL 45382, at *1 (D. Colo. Jan. 2, 2008) (citations omitted)). A scheduling order may be modified only upon a showing of "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"Good cause is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). Moreover, modifications to the scheduling order must be limited where, at the very least, "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *See* Fed. R. Civ. P. 26(b)(2)(C). Two critical factors courts in this circuit consider when determining whether good cause exists are the moving party's "diligence in obtaining discovery within the guidelines established by the Court" and "the likelihood that the discovery will lead to relevant evidence." *Salek v. Reload, Inc.*, No. 11-2585-SAC, 2014 WL 11497890, at *2–3 (D. Kan. Jan. 9, 2014) (quoting *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987)); *Sloan v. Overton*, No. CIV.A. 08-2571-JAR, 2010 WL 5476726, at *2–4 (D. Kan. Dec. 30, 2010) (same). Courts also consider the prejudice to the nonmoving party opposing the modification or extension. *Tesone*, 942 F.3d at 987.

The decision to modify a scheduling order "is committed to the sound discretion of the trial court." *Id.* "[M]any more motions seeking modification of scheduling orders are denied than are granted." 6A Wright & Miller, *Federal Practice & Procedure* § 1522.2 (3d ed.).

## III. ARGUMENT

Relator's conduct in this case precludes a finding of good cause and his Motion to Amend should be denied.

### A. Relator Failed to Timely Develop Facts To Support His Request.

Relator has not—and cannot—show good cause to amend the Scheduling Order. To demonstrate good cause, Relator must, among other things, show that the deadlines and limits in the Scheduling Order could not be met with diligence. *Denmon v. Runyon*, 151 F.R.D. 404, 407 (D. Kan. 1993) (affirming denial of motion to amend scheduling order). As laid out above, Relator has had more than ample opportunity to develop facts to support his claim, and has collected extensive documents and testimony. Yet, Relator is unable, at the close of discovery, to marshal any evidence of actual patient harm that substantiates or supports his medical necessity claims. This fact is telling.

At its base, Relator's Motion is nothing more than "an attempt to save [his] case . . . at the 11th hour." *Tesone*, 942 F.3d at 987 (affirming denial of motion to amend the scheduling order); *see also Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020–21 (10th Cir. 2018) (affirming finding that the movant's failure "to act with reasonable diligence in unearthing" evidence "through the customary tools of discovery" resulted in a lack of good cause). Indeed, not a single witness has identified facts to support Relator's contention that patients at the Dole VA were harmed or treated in a manner unsupported by medical necessity. While medical records may be ideal, it is telling that the record developed during fact discovery is devoid of *any* factual basis from which an expert can offer an opinion.

Furthermore, while Relator and his paid expert hope VA patient records may "save" his case, the facts do not support that belief. The facts developed in discovery point solidly to the opposite conclusion. The VA itself has publicly refuted Relator's baseless accusations that

substandard patient care occurred based on its own internal review of the medical records. Likewise, the sales representatives cited by Relator as having knowledge to support his allegations do not and will not testify to medically unnecessary care. The doctors and staff actually involved with patient care at the Dole VA universally testified that they are unaware of patient harm or issues. As a result, and without any personal information of his own, Relator has advanced no record evidence to support his theory.

While Relator predicates his Motion on his self-serving and unsupported belief that procedures were medically unnecessary and resulted in poor patient outcomes, discovery has revealed Relator's position to be nothing but convenient speculation and conjecture. Speculation and conjecture are not sufficient to justify the indefinite extension of time he requests.

Other courts in this district have rejected similar attempts by plaintiffs unsuccessful in discovery to "save" their case "at the 11th hour." In *Salek v. Reload, Inc.*, the district court found that no good cause existed to extend the discovery deadline because the plaintiff was not diligent in obtaining evidence supporting his case, and that the additional discovery he sought was not likely to lead to relevant evidence supporting his claims. 2014 WL 11497890, at *3–4. In fact, it "became apparent that [the plaintiff] had already explored these topics during previous depositions" and the unlikelihood that additional discovery would lead to relevant evidence "weigh[ed] in favor of denying" the plaintiff's motion. *Id.*; *see also Sloan*, 2010 WL 5476726, at *4 (holding that "the likelihood that discovery w[ould] lead to relevant evidence[] weigh[ed] heavily in favor of denying" the plaintiffs' motion to amend the scheduling order).

Courts are especially concerned when the requested amendment to the schedule involves allowing discovery to be reopened or extended to a significant degree. *See, e.g.*, *Watson v. Norton*, 10 F. App'x 669, 675 (10th Cir. 2001) (affirming denial of motion to amend where additional

13

discovery sought arguably may not advance claim); *House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., Inc.*, 775 F. Supp. 2d 296, 300 (D. Mass. 2011) (denying motion to amend where there was "little evidence" in the record to support the plaintiff's allegation). While Relator has not made a specific request to re-open discovery, his motion is inherently premised on introducing entirely undeveloped and untested factual evidence into the case after fact discovery has already ended. This Court should reject Relator's "attempt to save [his] case . . . at the 11th hour," *Tesone*, 942 F.3d at 987; *Husky Ventures*, 911 F.3d at 1020–21.

### B. An Extension Would Unfairly Prejudice the Interests of Defendants.

"Another relevant consideration is possible prejudice to the party opposing the modification." *Tesone*, 942 F.3d at 988; *cf. In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir.1999) (affirming denial of leave to amend when the dismissal of earlier complaint months earlier informed the plaintiffs of the deficiencies they sought to cure out-of-time). Here, Defendants are prejudiced by Relator's request for an unlimited extension of time.

The Scheduling Order in this case has already been extended twice, and Relator's request to extend his expert disclosure deadline would wreak havoc on the timeline of this case and require the extension of numerous other deadlines. This alone is a sufficient reason to deny the request. For example, in *Brumback v. Wurth Baer Supply Co.*, the district court denied a motion to modify the scheduling order to allow the plaintiff to complete expert discovery because granting the modification was "very likely" to require the modification of other deadlines, and "the requested extensions are likely to delay resolution of the entire action," to the prejudice of the defendants. No. 5:19-CV-010-JMH-MAS, 2019 WL 2814649, *4 (E.D. Ky. July 2, 2019); *see, also, e.g., Kernen v. Casillas Operating, LLC,* No. CIV-18-00107-JD, 2020 WL 12787581, at *7–8 (W.D. Okla. May 4, 2020) (denying motion in the three-year-old case where scheduling order had "already been extended multiple times", the court held that granting the motion would force the

court to also reopen numerous aspects of discovery, and that this would unfairly prejudice the defendants).

Here, permitting Relator to extend expert disclosure deadlines based on facts obtained after the close of discovery would greatly prejudice—if not outright preclude—Defendants' ability to respond and cross-examine any marginally relevant facts Relator would be able to obtain precisely because fact discovery has already concluded. Defendants are forced, in turn, to incur even more substantial fees each time Relator seeks to extend this case. The irony in Relator's motion is that he purports to represent the interests of the United States and the Dole VA, but his discovery is also opposed by those same entities. Indeed, Relator has forced the VA to expend significant resources to protect veteran privacy, on the claim that he will prove harm that ***the VA expressly states did not occur***.

Finally, Relator has used prior scheduling delays to pursue an inflammatory and untruthful extrajudicial media campaign. Relator has made clear that this is a tactic intended to harm Medtronic. While Relator's counsel and expert are telling the Court that he lacks evidence to reach any opinion on medical care, Relator has been telling reporters that he has evidence that Defendants' actions resulted in deaths among the VA patients treated.. These are not only false and defamatory statements, they are statements that Relator is making with the purpose of trying to impact the outcome of this case. Like all defendants, Medtronic has due process rights to a fair, impartial, and reasonably speedy litigation process. Medtronic has borne the expense of discovery, and it is entitled to move forward and demonstrate the lack of merit for the allegations in this case.

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request Relator's motion be denied.

May 4, 2023                                    Respectfully submitted,

*Alethea Huyser*
Joseph T. Dixon, III (*admitted pro hac vice*)
Alethea M. Huyser (*admitted pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone: (612) 492-7000
Fax: (612) 492-7077
jdixon@fredlaw.com
ahuyser@fredlaw.com

*/s/ Robert J. McCully*
Robert J. McCully (KS #12433)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 474-6550
Fax: (816) 421-5547
Email: rmccully@shb.com

*Attorneys for Defendants*
*Medtronic, Inc. and Covidien, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF parties of interest.

SHOOK, HARDY & BACON, L.L.P.

*/s/  Robert J. McCully*

17