## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* THOMAS SCHROEDER<br><br>　　　Relator,<br><br><br>v.<br><br>MEDTRONIC, INC.; COVIDIEN, L.P.;<br>HUTCHINSON REGIONAL MEDICAL<br>CENTER, and WICHITA<br>RADIOLOGICAL GROUP, P.A.<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 2:17-02060-DCC-KGG

### RESPONSE TO
### DEFENDANT MEDTRONIC, INC.'s MOTION TO COMPEL

COMES NOW the United States of America ("USA"), *ex rel.* Thomas Schroeder Relator, and hereby provides the following response to Defendant Medtronic, Inc.'s Motion to Compel Discovery (Doc. 342).

### I.　　　Discovery at Issue:

This dispute relates to emails that Relator and his counsel Donelon sent to members of the media and general counsel for the U.S. Senate Committee on Veterans Affairs regarding the allegations set forth in this case. Defendant Medtronic claims that these communications are covered under the following requests for documents and should be produced:

**REQUEST NO. 8:** All Documents that You possess relating to the Dole VA Hospital concerning the sale of devices, the sale of PAD devices (Medtronic or otherwise), or the subject matter of this litigation, including but not limited to any contemporaneous notes, reports, emails, and text messages.

**REQUEST NO. 10:** All Documents that You possess relating to Medtronic, Doug Winger, or Karianne Kirk.

On March 31, 2023, the Relator produced emails messages that he sent to and from some media outlets (Schroeder 03434-3535).  As this production reflects, some emails in these chains were redacted because they were exclusively between Relator and his counsel (*see e.g.,* 03436, 03461).  Some of these emails had documents attached to them.  To be clear, absolutely none of the documents that Relator attached to the emails were designated as confidential under the Court's Amended Protective Order (Doc. 181).  Indeed, the documents either contain "Schroeder" bates stamps that he provided in discovery—not marked as "confidential"—or they were documents provided by the VA under Schroeder's *Touhy* request (*i.e.,* public documents).

At the discovery conference on April 4, 2023, one of the topics addressed pertained to emails from just Relator's counsel to media.[1]  In response to Medtronic requesting this production, Relator argued a lack of relevancy relating to counsel's thoughts shared with the media regarding this case.[2]  Absent the Relator's counsel sharing the identity of any new documents or witnesses that have not be disclosed in discovery—which he has not—the Court seemed to agree with this objection.  Regardless, the Court further commented that it would most likely not enforce these requests as being overly broad.  To address any notion of new witnesses or documents being provided in counsel's email, counsel stated he would send Medtronic a "privilege log" of these emails.  On April 8, 2023, Relator's counsel provided the following via email:

| Author / Recipient | Date(s) | Topic(s) |
| --- | --- | --- |
| Emails from Donelon to Annie Waldman with ProPublica. *Relator objects to production on the grounds of relevancy.* | Emails from Jan. 13, 2023 through Feb. 22, 2022. | No messages, attachment of court filing. Requests and responses to Donelon re: providing statement for article. |

---

[1] The parties sent email to chambers on that same date setting forth their respective discovery issues.
[2] Indeed, the only relevance as to these communications would be whether Relator's counsel violated the Amended Protective Order or KS Rules of Professional Conduct 3.6(a) and (b) (see email to court addressing this).

| | | |
|---|---|---|
| Emails from Donelon to Sam Woodward and Paige Tortorelli with CNBC. *Relator objects to production on the grounds of relevancy.* | Emails from Jan. 10, 2023 through Feb. 17, 2023. | No messages, accepting Zoom invites. Donelon providing copies of witness depo transcripts for Ament, Brown, and Validiva. Donelon answering questions regarding what is alleged in lawsuit. Donelon providing copies of, and comment on, public documents obtained via Relator's *Touhy* requests. |
| Email communications between Donelon and Mark Crowley, General Counsel—Minority Staff, U.S. Senate Committee on Veteran's Affairs. Mr. Crowley initiated communications. Mr. Donelon informed DOJ attorney Jon Fleenor. *Objection on the grounds of privilege communication between counsel and on relevancy.* | Emails from Jan. 4, 2023 through Feb. 21, 2023. | Communications regarding allegations in case, including *Touhy* documents, documents from discovery, and deposition testimony. Providing copy of court's Amended Protective Order. |

On April 10, 2023, counsel for Medtronic responded via email:

Thanks.  We will review.  I've also noticed that in the production from Mr. Schroeder there are both (1) attachments missing, and (2) redactions.  Is it your position you will not be provided those as well?

On April 21, 2023, Medtronic's counsel stated in an email its plan to move forward with

a motion to compel as follows:

We will plan to move forward to compel production of the materials discussed below.  As it relates to the attachments I was inquiring about, Mr. Schroeder's emails refer to a:
- "Redacted DOJ Report - Medtronic Athx Fraud,"
- Materials shared on a "Dropbox or Share File"
- A "Worst in worst" file
- Slides with patient notes

Please let me know today if there are additional materials that have not been produced, and if so whether a production will be provided.

3

On April 21, 2023, Relator's counsel responded to Medtronic's request for particular email attachments follows:

> Leah,
>
> Re: the following list, several of these have been produced in discovery so far.  See below:
>
> - "Redacted DOJ Report - Medtronic Athx Fraud," I believe this was only provided to Senate Counsel, but if you believe otherwise, let me know.
> - Materials shared on a "Dropbox or Share File" The files shared on Dropbox are the video taped deposition of Rick Ament.  You should have that from the deposition.  If not let me know and we can provide it.
> - A "Worst in worst" file This is the table that has been used in numerous depositions.  See e.g., Ex. Rust Depo. Ex. 28.
> - Slides with patient notes  These are the docs produced under Touhy with Dr. Maqbool notes and produced as Schroeder 01898-1928.  What was attached is the version of this document in Rust Deposition where we typed out what was written handwritten.

In this email, Relator's counsel stated that three of the documents identified as attachments are already in Medtronic's possession.  Regarding the "Redacted DOJ Report - Medtronic Athx Fraud" document, Relator's counsel stated an objection on its production.

In response, Medtronic's counsel emailed back on the same date stating:

> Brendan,
>
> Can you provide more information on what the first item is so that I can assess your claims that it should not be disclosed.  For example, what is the date of the document, what is its subject matter, and who all has it been provided to? As you know, the United States provided us the original qui tam filing by Mr. Schroeder.  Is this something different?

In response, on that same date, Relator's counsel replied:

> Leah,
>
> Reviewing emails you described as "Redacted DOJ Report - Medtronic Athx Fraud," I thought that was the name of the attachment file on the email.  After looking at it again, the email subject line had "Redacted DOJ Report - Medtronic Athx Fraud."  This is an email that Mr. Schroeder provided the reporter at Bloomberg. The document is a redacted copy of a document our office (along with Relator) prepared at the request of the DOJ.  This document addressed inquiries into the larger role directional atherectomy plays in the nationwide market, CMS reimbursement, its history of development, and Medtronic's role in promoting and marketing this device in relation to its 510(k) clearances and IFUs.  The subject line is titled "redacted," because unlike the DOJ (whom we can share documents marked as "confidential" under the current Amended

4

Protective Order), this "redacted" version had snap-shots of .pdf documents designated as "confidential" removed.  Only documents produced by Relator or publicly available remained in the redacted version.

Original document prepared on Nov. 16, 2022; communication from B.Donelon to J.Fleenor DOJ.  Redacted document prepared on December 14, 2022; communication from B.Donelon to client Schroeder.

Producing the Nov. 16 document (and related communications with the DOJ re: the same) were for purposes outside any claims in the existing matter.  We consider those communications to be confidential and privileged, and not relevant to any claims in this case.

Regarding production of the "redacted" Dec. 14 version of this document provided to Bloomberg, we consider this not relevant as well since it does not address claims directly related to this case.  However, we are open to producing this version to Judge Gale for an *in camera* review.   If he decides it meets the Rule 26 standards for production in discovery, we will happily comply.

To summarize, Relator provided a privilege log describing email communications between counsel only and the media as well as General Counsel for the U.S. Senate Veterans Affairs Committee.  Since none of these emails discuss any new witnesses or documents that should have been provided under existing discovery requests, Relator has objected to their production on the grounds of relevancy.  Alternatively—and as suggested by this Court at the April 14 conference—while not necessary, the Relator has offered these emails to the Court for an *in camera* review.  Regarding counsel's communication with general counsel for the U.S. Senate Veterans Affairs Committee, Relator has asserted a privilege objection.  Regarding  the "Redacted DOJ Report - Medtronic Athx Fraud" document, Relator objects on its production under relevancy, but again, offers it up for *an in* camera review.

## II.      Summary of Response:

To convince this Court to order production, the Defendant weaves a tail of improper conduct by Relator which simply does not exist.  Instead, the Defendant's Motion is mostly grievances, arguments, and proposed conspiracies regarding this case as opposed to arguments addressing the merits of their document requests.  Defendant repeatedly accuses Relator of

sharing documents marked "confidential" with the media and of defamation.  Let's be absolutely clear.  Neither the Relator nor his counsel have done so.  If Medtronic believes otherwise, they can seek a Protective Order or even sanctions.  Absent evidence of such conduct, this matter should be put to rest now.  Regarding allegations of defamation, such arguments are usually reserved for the most desperate of movants.

### III.    Response:

**A.    Relator's Communications with the Media Have Been Provided:**

As stated above, Relator's emails with the media have been produced.  This initial production included documents attached to those emails.  The only exception is the attachment titled "Redacted DOJ Report - Medtronic Athx Fraud."  Defendant later identified some additional documents listed as attachments to those emails that were not produced.  As describe above, Relator specifically identified those documents and confirmed that they were already in Medtronic's possession.

**B.    The "Redacted DOJ Report - Medtronic Athx Fraud" Document:**

As discussed and described in the emails set forth above, the "Redacted DOJ Report - Medtronic Athx Fraud" document was prepared by Relator's counsel at the request of the Department of Justice.  It contained copied and pasted .pdf documents produced in this case and marked "confidential."  Relator's counsel can share these "confidential" documents with the DOJ under the Amended Protective Order (Doc. 181, ¶ 6(b)(3)).  Relator Schroeder later provided the same document—*removing the confidential documents*—to the media as an attachment to an email.  Hence, the document title contains "Redacted."

This document addresses the larger topic of atherectomies, their history, the role it plays in defrauding federal reimbursement, and Medtronic's role in the larger marketing/promotion of

these devices.  The case before this Court does not deal with any of these broader nationwide topics.  It deals with Medtronic bribes at the Dole VA and with how Medtronic's three sales reps marketed/promoted them at the Dole VA.  It also deals with bribes paid at Hutchinson Regional Medical Center (HRMC) for devices, and how these bribe tainted devices were later billed to federal healthcare programs.

Defendant counters that "these precise topics have been the subject of allegations and significant discovery in this case …. Given the degree of focus Relator has given these topics during discovery [depos, RFP, etc.], Relator's position … is frankly, frivolous."  Defendant has forgotten that it has *only produced* discovery in this case as it *relates to conduct at the Dole VA or HRMC*.  Indeed, throughout discovery, it has rejected any notion of nationwide discovery regarding its devices.  As an example, when requesting all marketing, promotional and training materials regarding the devices at issue, Medtronic's production was exclusive to only those materials provided to three sales reps who called on Dole VA and HRMC.  It claimed that otherwise it is not relevant.  That has been Medtronic's position on all discovery topics.  Regardless, if the Court deems it necessary, Relator will take the Court up on its offer to produce this document for an *in camera* review to let the Court decide.

**C.      Contents of Relator's Emails to the Media:**

Now to address some of the accusations that have little to do with the matter before the Court.  Medtronic spends an inordinate amount of time accursing Relator of all kinds of inappropriate behavior untied to the discovery issue before this Court.  This begins with Defendant commenting that Relator inappropriately disclosed deposition transcripts to the media.  The only deposition transcript provided in Schroeder's emails is Rick Ament—the former Director of Dole VA.  Mr. Ament was produced for deposition by counsel for the VA.  The

Amended Protective Order states that deposition transcripts cannot be shared with any third party *if* they are designated as "confidential." (Doc. 181, ¶ 5)[3]  Mr. Ament's deposition was never designated as confidential.[4]  Ergo, it can be shared with third parties just like it can be filed in open court.

The same applies to any production of materials that were in Mr. Schroeder's initial possession and attached to these emails.  These documents were produced by Schroeder to Defendant in discovery (*e.g.,* Medtronic marketing material, catalogs, *etc.*).  Mr. Schroeder collected these from *public* domains.  He bates stamped and produced them.  These are not, and never could be,[5] marked as confidential under the Court's order.  The same applies to the documents Relator obtained under his *Touhy* public disclosure requests to the VA.  Again, these are not, and never could be, marked as confidential under the Court's order.  It is not clear what any of this has to do with the topic before the Court now.  One can guess it is an attempt to sway this Court to order production because of some alleged bad acts on Relator's behalf.  This simply has not occurred.

It is also necessary to address footnote 1 in Medtronic's brief.  As the Court is aware, Relator has a separate Administrative Procedure Act ("APA") action related to this matter where he is seeking documents denied by the VA under his *Touhy* request.  *Schroeder v. The U.S. Department of Veterans Affairs*, case no.: 2:22-cv-2209-DDC-KGG.  Medtronic claims that Relator violated the Amended Protective Order in this case because he filed as an exhibit to a pleading documents labeled "confidential" in this FCA case.  In that APA filing, Schroeder

---

[3] Under the Order, a party has 30 days from the reporter's production of a deposition transcript to make any such designations.

[4] Any deposition exhibits that were marked as confidential have not been shared with anyone.

[5] The Amended Protective Order excludes the ability to mark documents as "confidential" that are otherwise available to the public.

correctly used the CM/ECF *provisionally under seal* filing function.  In other words, this these documents were filed under seal.  This meets the Amended Protective Order's requirement.  In the APA case, the very same Defendant Medtronic—with the same counsel—were *provided notice* under the Court's CM/ECF procedures that this document was filed under seal (*see* Doc. #34).

Under D.Kan. CM/ECF Rule II.J—addressing records under seal in civil cases—Defendant had seven (7) days to move the Court for an order to permanently seal these documents.[6]  Medtronic decided not to do so.  Per this same rule, the Plaintiff then notified chambers that the seven day deadline passed,[7] and the Court unsealed the documents. Defendant Medtronic made the conscious decision to unseal these "confidential" documents.  It apparently regrets this decision now.  Medtronic is inferring that Relator somehow tricked them into this.  It also claims that the documents filed under seal in that case was done for the sole purpose of making them public for the media.[8]  It boggles the mind how Medtronic is accusing Schroeder of violating the Amended Protective Order when their actions alone allowed these documents to be public.[9]  Once again, it is not clear what any of this has to do with the topic before the Court other than create some sort of bad impression of Schroeder before this Court.

---

[6] "Motions to seal or redact the provisionally sealed document must be filed within 7 days of the document that was provisionally filed under seal using the event Motion to Seal or Redact."

[7] "If no Motion to Seal or Redact is filed, the party who filed the provisionally sealed document will notify chambers that the document should be unsealed. The clerk will unseal the document using the event Notice of Removal of Provisional Seal, which will notify all parties in the case that the document is now publicly available."

[8] This is even further stretch.  In the APA case, Schroeder is arguing that the documents he seeks (i.e., medical records) are necessary to support claims in his FCA case.  Schroeder's expert in the APA matter opined that there is a reasonable certainty that these medical records will show medically unnecessary procedures.  Of the numerous factors supporting this opinion, the expert points to a text message string where 17 drug coated balloons are being put into one patient.  He also points to an email where Dole VA admits to using on average 6-8 such balloons per patient.  These documents go directly to his point and were provided for that purpose alone.

[9] Defendant comments, "Indeed, Relator explicitly admitted to a journalist the filing was done as a strategy designed to make the documents public" citing Ex. E.  Relator is not sure what portion of this 103 page exhibit Defendant is referring to.  Defendant seems to imply that it was somehow tricked on this unsealing.  One can only assume that Medtronic's counsel failed to recognize the seven day deadline and are now trying to somehow blame Relator for this shortcoming.

Next, the Defendant complains about statements that Schroeder made to the media in his emails.[10]  First, Medtronic comments on Schroeder's statement that hundreds of veterans have had harm or death inflicted on them.  To date, the VA has reviewed only 219 files so far (and only covering back to 2015) and flagged 59 of these veterans as possible "substandard care issues."  As its counsel stated in a recent filing in the APA matter:

> The VA is conducting an extensive review of patient care at RJDVAMC—
> including the number of devices used on patients—to make sure that Veterans
> were not harmed by any procedures. This is what the VA has informed Congress
> in regard to Relator's allegations: The VA has reviewed 219 interventional
> radiology procedures which took place from 2015-2018 with a plan to take
> appropriate steps based on the outcome of the review. Initial reviews were
> performed by quality management nurses. Of those 219 cases, 59 were flagged as
> presenting possible substandard care issues and thus requiring additional review
> by a vascular surgeon and an interventional radiologist.

(Doc. 51, pg. 4)  Harming patients in these procedures usually leads to amputation.  Studies show a very high rate of death soon after.[11]  Relator's claims go back to 2011 regarding these procedures, all in, the number of veterans treated may well be over 1,000.  Schroeder is arguably making a mathematically accurate statement.  These allegations of harm, amputation, and death are nothing new.  The Fifth Amended Complaint alleges the same in detail.  Next, Medtronic comments that Relator could not identify a single procedure in his August 8, 2022 deposition.  His Fifth Amended Complaint set forth voluminous examples.  Also, at that point in the litigation, documents and data had not been produced by the VA yet.  However, on September 20, 2022; December 20, 2022; and February 14, 2023 the VA provided voluminous *Touhy* data identifying more specific procedures confirming Schroeder's allegations.

---

[10] Relator is addressing these in somewhat detail because Defendant later asserts that these communications are a basis for them to bring a counterclaim for defamation or tortious interference.  This discussion diffuses this threat.
[11] As cited in Schroeder's Fifth Amended Complaint, ¶ 121.  *See* Journal of the American Heart Association, "Adverse Events After Atherectomy: Analyzing Long-Term Outcomes of Endovascular Lower Extremity Revascularization Techniques," Vol. 8, No. 12.

Medtronic next complains that Relator's emails claim its Hawk directional atherectomy devices were being used off-label.  Defendant claims that this is evidence of a "party admission" by Schroeder.  Sure.  This is nothing new.  Large swaths of the Fifth Amended Complaint make the same allegations in detail.  A significant portion of Schroeder's deposition is explaining how these are being used off-label and what constitutes off-label use.  Medtronic's Chief Medical Officer Dr. John Laird admitted in his deposition that using Hawk devices to prepare a vessel prior to using an In.Pact drug coated balloon (a/k/a DAART) was not approved in the Instructions for Use for both Hawks and In.Pact DCBs.  (Laird depo., pgs. 104:5-105:9, 111:15-114:13; attached as **Exhibit A**).  Yet, Medtronic has consistently marketed DAART to customers and claimed it is FDA approved.[12]

Finally, Medtronic addresses Relator's comments regarding 4mm sized In.Pact drug coated balloons being used "off-label."  Regardless of Medtronic making a 4mm sized balloon, In.Pact's label states that they should not be used below the popliteal arteries (a/k/a below the knee).  In almost all patients, only 4mm vessels are located below the knee.  Therefore, the high volume of this sized balloon being used in Dole VA procedures reflects off-label usage below the knee.  Defendants have admitted in their depositions that Medtronic trained its reps to sell this device for below the knee use.  (Winger depo., pgs. 147:7-148:21; attached hereto as **Exhibit B**) (Davisson depo., pgs. 113:20-118:5; attached as **Exhibit C**) Using these balloons below the knee was admitted to being off-label.  (Kirk depo., pgs. 89:13-16, 308:3-12; attached as **Exhibit D**)

**D.    Counsel's Emails to the Media and Legal Counsel for the Senate:**

---

[12] Medtronic routinely claims that the FDA has "approved" this Hawk atherectomy uses it promotes.  This is inaccurate.  The FDA has only provided "clearance" under § 510(k) for certain permitted uses in conformity with a predicated devices.  This is much different claimed FDA approval as Medtronic markets.

Medtronic claims that the privilege log set forth above is deficient. It provides the identity of the author, the recipient, date of the communication and a general description of the contents of the communication. As a reminder, this was provided per the conversation at the April 4 discovery conference. The purpose being to demonstrate whether any of Mr. Donelon's communications identified any new witness or document not provided in discovery—which they did not. Otherwise, the Court appeared to agree on a lack of relevancy of counsel's thoughts to the media about this lawsuit. The contention that these emails *could* contain "trail or litigation" strategy shared with a third party is nonsensical. Counsel of 27+ years of litigation/trial experience is not going to share litigation or trial strategy with anyone outside one's legal team—especially the media.[13] Regardless, if producing them to the Court for an *in camera* review would squash any remaining concerns, Relator is happy to oblige.

Defendant claims the privilege log "identifies unproduced, plainly responsive documents, including those in which Mr. Donelon . . . was 'answering questions regarding what is alleged in the lawsuit' and providing 'comment' on evidence." All documents described in counsel's log are public pleadings, *Touhy* documents produced by the VA and case, and the transcripts for three witnesses. All of these documents have been provided in discovery as identified. None of these documents are "confidential" under the Amended Protective Order. Again, Donelon answering questions or making comments to the media in emails regarding this matter is simply not relevant.

Defendant argues, "The *overall context suggests*, therefore, that Relator and his attorney are sharing their position on this case with non-privileged third parties, including identifying the evidence and facts they believe support their allegations and claims." Regarding Relator, as

---

[13] Doing so is outside the bounds of any rational logic. Why would any trial attorney share their "game plan" with a media source who may then freely discuss the same in publication.

stated above, all emails from Schroeder to the media have been provided.  This is a non-issue.
When it comes to the relevancy of Donelon's emails, it takes more than Medtronic's supposition
that "overall context suggests" they should be produced.[14]

The only emails outside the description above were ones written between Donelon and
Mark Crowley—General Counsel Minority for the U.S. Senate Veterans Affairs Committee.
Relator has asserted that these communications are privileged.  Mr. Donelon effectively
represents the U.S. Government as counsel for a Relator under the FCA.[15]  The Senate
Committee's counsel overseeing the VA represents the U.S. Government.  The communications
between counsel about the same claims, involving the same client, would be privileged.

Defendant argues that counsel has waived his privilege because he shared information
with a third party (*i.e.,* Senate counsel Crawley).  Setting aside that both counsel represent the
same party creating this privilege, even the "common interests" exception to any alleged waiver
of privilege applies.[16]

> Courts in this district and elsewhere treat the common-interest doctrine "not as a
> separate privilege, but as an exception to waiver of the attorney-client privilege"
> which "acts as an exception to the general waiver rule by facilitating cooperative
> efforts among parties who share common interests."[21] To fit within the protection,
> communications must be made in the course of a *joint effort* with respect to a
> *common legal interest* and for the *purpose of furthering that effort*.

---

[14] Defendant points out the service of its contention interrogatories on Relator that were answered on January 31,
2022 where Relator shared the basis for his claims.  Since then, Relator has been deposed along with 30 other
witnesses in this case. It is unclear how this adds to Medtronic's argument that counsel Donelon's emails to the
media should be produced.

[15] *See U.S. ex rel. Borges v. Doctor's Care Med. Ctr., Inc.,* 01-8112-CIV, 2006 WL 8433954, at *2 (S.D. Fla. Aug.
24, 2006) "(Emphasizing the unique nature of qui tam actions, the government points out that under the FCA, the
relator brings a civil action in the name of the United States, *the real party of interest*.") (citation omitted);
*U.S. ex rel. Purcell v. MWI Corp*., 254 F. Supp. 2d 69, 75 (D.D.C. 2003) (same).

[16] The Tenth Circuit recognizes this exception to waiver of privilege.  *See Frontier Ref. Inc. v. Gorman–Rupp
Co.,* 136 F.3d 695, 705 (10th Cir.1998); *see also In re Qwest,* 450 F.3d at 1195 (providing that the common-interest
doctrine "provides an exception to waiver because disclosure advances the representation of the party and the
attorney's preparation of the case").

*Greenfield v. Newman U., Inc.*, 218CV02655DDCTJJ, 2020 WL 6559424, at *3 (D. Kan. Nov. 9, 2020) (emphasis added).

Mr. Crowley contacted Donelon regarding the allegations asserted in this FCA matter regarding veteran treatment at Dole VA's cath lab. Crowley did so on behalf of the U.S. Senate Veterans Administration Committee who is looking into the very same claims alleged in the Relator's lawsuit (*i.e.,* "common legal interest"). The claims are both identical and legal in nature. *See, id.* (""[c]ourts have generally required that the nature of the parties' common interest 'be identical, not similar, and be legal, not solely commercial.' ") (citation omitted). In particular, the Senate Committee's interest—just like Relator's—is to address and seek remedy regarding the veteran care and business dealings in Dole VA's cath lab (*i.e.,* "joint effort"). The communications between counsel for Relator and counsel for the Senate Committee were for the purpose of "furthering this effort." This is not a voluntary disclosure by Donelon to some government entity not meeting the "common interest" exceptions addressed above.[17]

## E.     Baseless Threats:

The above arguments lack merit. So, Defendant Medtronic takes it up a notch. First, it again references Relator violating the Amended Protective Order. "Relator has already *demonstrated a willingness*[18] to violate the Protective Order, and Medtronic is entitled to know if there are additional violations that have occurred." Second, it claims it must have this information because of some plan to countersue. "Relator's communication with various media outlets is also relevant to Defendants' potential claims/counterclaims for defamation and tortious interference."

---

[17] *Compare In re Qwest*, 450 F.3d 1179, 1185 (10th Cir. 2006) (disclosure of materials that are non-opinion work product to a government agency conducting an investigation does not meet this exception to waiver).

[18] Either Relator violated the Amended Protective Order, or he did not. Arguing a "willingness" to do so veils the fact there is no evidence of this occurring.

No violation of the confidentiality requirement has occurred.  Period.  If so, Medtronic

must come forward with evidence.  Until then, it is trying to use this unjustified allegation as

support of looking for other unjustified incidents.  Also, seeking irrelevant discovery under the

guise of "we may want to sue Relator" with "what we may find" in emails cannot be an

acceptable discovery request.  At any given time, any party may be doing or saying something

that—if the other party could just look and find out—may lead to it bringing a counterclaim.

This just doesn't cut mustard.

### IV.    Conclusion

A.    The document requests these emails, etc. are sought under is overly broad and
production of the requested documents which related has objected to produce should be denied.

B.    Relator has turned over all emails he wrote to the media.  In this email chain, only
communications between Relator and his counsel (and nobody else) were redacted.  There is
nothing more to produce here.  All documents attached to his emails have been provided or
identified as documents already produced.  None of these documents were confidential under the
Amended Protective Order.

C.    The "Redacted DOJ Report - Medtronic Athx Fraud" document.  This document
was attached to an email from Relator to the media.  As set forth above, it is not relevant to the
Claims in this case, but if the Court would like, Relator will provide for an *in camera* review.
Again, no confidential documents were included in this document.

D.    Donelon's emails to the media are simply not relevant. Again, Relator will
provide this for an *in camera* review if the Court desires.

E.    Donelon's email communications with attorney Crowley.  These are privileged
communications between counsel representing the same party.  Alternatively, these
communications fall under the "common interest" doctrine.

WHEREFORE, the Relator respectfully requests that this Court deny Defendant's

Motion in its entirety.

Respectfully submitted,

Carrie Mulholland Brous KS #18157
Cristina Olson D. Kan. #79005
**Brous Law LLC**
3965 West 83rd Street, Ste. #115
Prairie Village, KS  66208
(913) 209-8596
cbrous@brouslaw.com



*/s/ Brendan J. Donelon*
Brendan J. Donelon, KS #17420
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel:     (816) 221-7100
Fax:     (816) 709-1044
brendan@donelonpc.com

Daniel W. Craig
6642 Clayton Rd., #320
St. Louis, Missouri 63117
Tel:     (314) 297-8385
Fax:     (816) 709-1044
dan@donelonpc.com

Attorneys for Relator

Certificate of Service

I hereby certify that on <u>May 5, 2023</u> the above and foregoing was sent pursuant to this Court's CM/ECF procedures to the attorneys of record in this matter.

*/s/ Brendan J. Donelon*