IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel*.  THOMAS SCHROEDER, | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| vs. | ) | Case No. 17-2060-DDC-KGG |
| | ) | |
| MEDTRONIC, INC., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM & ORDER GRANTING MOTION TO COMPEL</u>**

Now before the Court is Defendant Medtronic's (hereafter referred to as "Medtronic")

Motion to Compel Relator to produce communications exchanged with various media outlets in

addition to the United States Senate Committee on Veterans' Affairs (Doc. 342.)  Having

reviewed the submissions of the parties, Relator's objections are **overruled,** and Defendant's

motion is **GRANTED**.

**<u>BACKGROUND</u>**

Plaintiff United States of America ("USA"), *ex rel*. Thomas Schroeder ("Relator") brings

action against Defendants Medtronic, Inc. ("Medtronic"), Covidien L.P. ("Covidien"), Hutchison

Regional Medical Center ("HRMC") and Wichita Radiological Group, P.A. ("WRG") under the

False Claims Act, 31 U.S.C. § 3729, alleging that Defendant's Medtronic and Covidien "paid

illegal remuneration to induce purchase of medical devices" in an effort to recover monies for

the Veterans Administration.  (Doc. 318, at 1.)  Relator further alleges that Medtronic employees

were rewarded for marketing or encouraging the "overuse" and "off label" use of Peripheral

Disease devices.  (*Id.*)

1

I.      **Issues**
    A.  Defense moves to compel production of communications between Relator and journalists concerning the claims in the case.  Relator claims the requested information is irrelevant, and that they have already produced the information sought.
    B.  Medtronic moves to compel production of communications between counsel for Relator and counsel for the United States Senate Committee on Veterans' Affairs. Relator claims the communications are directly protected by the attorney-client privilege, or, indirectly, through the common interest doctrine.

II.     **Discussion – The communications between Relator and journalists are relevant.**
    **A.  Standard for relevance**

**Standards for Discovery**

Fed. R. Civ. P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

The requested information must therefore be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.  ***Holick v. Burkhart***, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face.  ***Williams v. Bd. of County Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000).  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978); *see **Rowan v. Sunflower Elec. Power Corp.***, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also **Kennicott v. Sandia Corp.***, 327

F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).

Once this low burden of relevance has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661–62, 666 (D. Kan. 2004). Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Sonnino v. Univ. of Kansas. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

### B. Parties' arguments

The present motion arises from Defendant's request for email, text message, and any additional communication between Thomas Schroeder, Brendan Donelon, and reporters from ProPublica and NBC Universal. (Doc. 342, at 6.) Following the initial production of requested communications, Medtronic became aware of "additional unproduced communications," some of which, but not all, Relator produced with redacted portions while withholding select attachments. (*Id.*) The responsive documents withheld have been identified by Relator as follows:

- o Email, text message, and any additional communication from January 12, 2023, to February 22, 2023, between Thomas Schroeder, Brendan Donelon, and Annie Waldman (Reporter, ProPublica).

- o Email, text message, and any additional communication from January 10, 2023, to February 17, 2023, between Thomas Schroeder, Brendan Donelon, Paige Tororelli (Investigative Producer, NBC Universal), and Scott Zamost (Senior Investigative Reporter, NBC Universal).

(*Id.*, at 2-3) (citation omitted).

The produced documents that were redacted are:

       o   An attachment labelled "Redacted DOJ Report – Medtronic Athx Fraud" to a communication between Relator and Ike Swetlitz (Bloomberg News) on or around December 15, 2022.

       o   Redacted communications between Thomas Schroeder, Brendan Donelon, and various media outlets.

(*Id.*) (citation omitted).

Medtronic contends the requested communications "are highly material to this litigation." (*Id.*, at 4.)  Medtronic alleged Relator disclosed to various media outlets "documents relating to the case, ranging from deposition transcripts, confidential Medtronic data…, marketing brochures, and Robert Dole VA Medical Center records." (*Id.*)  Moreover, Medtronic alleges that Relator shared his own analysis of the data and information in the case, "revealing and detailing the purported claims he is making in the case against Medtronic." (*Id.*)  Medtronic asserts that many of the statements relayed by Relator to various media outlets "were also grossly unfounded, false, or misleading." (*Id.*)  Medtronic contends it is clear that the communication by Relator and his attorney with third party sources provide "meaningful and relevant non-privileged information, including party-opponent statements. (*Id.*, at 5.)

Relator objects that the requests for communications with various media outlets on the grounds of relevance.  (Doc. 349, at 2.)  Regarding the communications with various media outlets, Relator contends that its emails with the media have already been produced.  (*Id.*, at 6.) Initial production of the communications included documents attached to the emails, with the only exception titled "Redacted DOJ Report – Medtronic Athx Fraud." (*Id.*)  Medtronic subsequently identified additional documents attached to the emails "that were not produced," at which time Relator specifically identified those documents and confirmed that they were already in Medtronic's possession." (*Id.*)

Medtronic contends that Relator's communication with various media outlets has
provided relevant evidence. (Doc. 342, at 4.) Medtronic claims that Relator disclosed to the
media various documents relating to the case, ranging from deposition transcripts, confidential
Medtronic data, marketing brochures, and Robert Dole VA Medical Center records. (*Id.*)

As aforementioned, relevance is broadly construed at the discovery stage of the litigation
and a request for discovery should be considered relevant if there is any possibility the
information sought may be relevant to the subject matter of the action." **Smith**, 137 F.R.D. 25,
27. Consequently, in referencing Relator's discovery chart, the topic(s) of the communications
between Relator and various media outlets seem to the Court to be highly relevant to the subject
matter of the action. (Doc. 342, at 6.) When considering the topics of communications along
with the self-described importance of "put[ting] the pieces of this complex puzzle together…," in
broadly construing the issue of relevance, it seems there is a high possibility the communications
are relevant to the subject matter of the action.

### C. Have they already produced everything?

It is uncontested that certain communications were excluded in Relator's production to
Medtronic. Medtronic contends that although Relator produced an inadequate description of
withheld documents, the discovery chart identifies "unproduced, plainly responsive documents"
including Mr. Donelon "answering questions regarding what is alleged in the lawsuit" and
"providing 'comment' on evidence." (Doc. 342, at 5-6.) In support of this contention,
Medtronic states "Relator himself has described the communication he and Mr. Donelon were
providing to the media as essential to 'put[ting] the pieces of this complex puzzle together…'."
(*Id.*, at 6.)

Relator strongly opposes Medtronic's Motion, claiming it "is mostly grievances,
arguments, and proposed conspiracies regarding this case as opposed to arguments addressing

the merits of their document requests." (Doc. 349, at 5.)  Moreover, Relator contends that the

email exchanges with the media have been produced.  (*Id.*, at 6.)  Relator specifies that, with the

exception of the attachment titled "Redacted DOJ Report – Medtronic Athx Fraud," all

communications requested "were already in Medtronic's possession."  (*Id.*)

### D.  Conclusion

Relator is ordered to produce all requested communications between Relator and/or Mr.

Donelon and Annie Waldman (ProPublica), and Sam Woodward and Paige Tortorelli (CNBC),

with attachments, to the extent that such communications were not previously produced to

Medtronic.

### III.   Discussion – The Communications between the attorneys are not privileged.
### A.  Standards for finding attorney client privilege.

The communications between Relator's counsel and general counsel for the Senate

Committee are not privileged, as the Senate committee is a non-party to the case and there was

no showing that the information provided was in confidence, nor is counsel for the *qui tam*

plaintiff representing the Senate committee.

"The attorney-client privilege is the oldest of the privileges for confidential

communications known to the common law." ***Upjohn Co. v. United States***, 449 U.S. 383, 389,

101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).  "Its purpose is to encourage full and frank

communication between attorneys and their clients and thereby promote broader public interests

in the observance of law and administration of justice."  *Id.*

Application of the attorney-client privilege is appropriate where legal advice of any kind

is sought from a professional legal advisor in his capacity as such, with communications relating

to that purpose are made in confidence by the client.  ***KPH Healthcare Servs. v. Mylan***, **N.V.**,

No. 2:20-CV-02065-DDC-TJJ, 2022 WL 3594584, at *2 (D. Kan., Aug. 23, 2022).

"[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." ***Motley v. Marathon Oil Co.***, 71 F.3d 1547, 1550-51 (10th Cir. 1995).  Rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client." ***United States v. Johnston***, 146 F.3d 785, 794 (10th Cir. 1998).

### B.  Parties' arguments

Medtronic seeks information relayed from Mr. Donelon to Mark Crowley.  The information sought consists of communications regarding the allegations of the case, Touhy documents, discovery materials, and deposition testimony along with a copy of the Court's Amended Protective Order.

"Under the common law, a critical component of the privilege 'is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.'" ***In re Qwest***, 450 F.3d 1179, 1185 (quoting ***United States v. Lopez***, 777 F.2d 543, 552 (10th Cir. 1985)).

Relator has neither produced evidence nor cited any authority to establish that the information shared was in confidence. Nor has Relator produced anything to establish that it was seeking legal advice. To the contrary, counsel or the Senate committee requested the information from Relator; as such, counsel for the *qui tam* plaintiff does not represent the United States Senate committee. Accordingly, the Court does not find an existing privilege between Relator and General Counsel for the Senate committee.

### IV.    Discussion – The common interest doctrine does NOT apply.
### A.  Standard for finding common interest doctrine privilege.

7

The common interest doctrine "affords two parties with a common legal interest a safe harbor where they can openly share privileged information" without risking the waiver of the privilege. ***U.S. Fire Ins. Co. v. Bunge N. Am. Inc.***, No. 05-2192-JWL-DJW, 2006 WL 3715927, at *1 (D. Kan. Dec. 12, 2006) (citing ***Sawyer v. Southwest Airlines***, No. 01-2385-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002)).  The common interest doctrine "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party."  ***Frontier Ref. v. Gorman-Rupp Co.***, 136 F.3d 695, 705 (10th Cir. 1998).

A community of interest exists where different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice…The key consideration is that the nature of the interest be identical, not similar (*Id.*) (quoting ***Duplan Corp. v. Deering Milliken, Inc.***, 397 F. Supp 1146, 1172 (D.S.C. 1974)) (internal citation marks omitted).  Further, the Tenth Circuit has applied the "identical" legal interest standard in analyzing whether a shared common interest excuses waiver of a privilege. ***KPH Healthcare Servs. v. Mylan***, N.V., No. 2:20-CV-02065-DDC-TJJ, 2022 WL 3594584, at *7 (D. Kan., Aug. 23, 2022); *see **Frontier Ref.***, 136 F.3d 695.

### B.  Parties' arguments

Medtronic argues that Mr. Donelon has failed to provide a record to establish "(1) the United States Senate Committee of Veteran Affair's [*sic*] attorney has actually joined him in a common interest agreement, (2) whether the communications were made in confidence and with the expectation that it would not be shared, and (3) what the precise legal interest shared was, given that Relator actually seeks to reduce any United States recovery to obtain a private financial gain."  (Doc. 352, at 3-4.) (citing ***Walker v. Newman Univ., Inc.***, No. 2:19-CV-2005-DCC-TJJ, 2020 WL 6708667, at *4 (D. Kan. Nov. 16, 2020)).

Relator argues that it is prosecuting this action on behalf of "themselves and the United States Government."  31 U.S.C. § 3730(b).  The Government will receive any damages awarded, less a percentage received by Relators.  31 U.S.C. § 3730(d).  Under these circumstances, the parties have a clear common interest, and if the documents were created in anticipation of the *qui tam* litigation and provided to the government in furtherance of the litigation, the disclosures do not constitute a waiver of either the attorney-client privilege or of any work product protections under Fed. R. Civ. P. 26.  **Miller v. Holzmann**, 240 F.R.D. 20 (D.D.C. 2007); **Redacted v. Redacted**, 209 F.R.D. 475 (D. Utah 2001); **Burroughs v. DeNardi Corp.**, 167 F.R.D. 680 (S.D. Cali. 1996).  However, disclosures made for purposes other than promoting the litigation may constitute a waiver. **In re Aftermarket Filters Antitrust Litigation**, No. 08-C-4883, 2010 WL 4791502 (N.D. Ill. Nov. 18, 2010).

Although the False Claims Act creates a unique relationship between the *qui tam* plaintiff and the government, **Leader v. United States DOJ**, CV11-540-TUC-DCB, 2012 WL 13027964, at *6 (D. Ariz. Aug. 8, 2012), Medtronic correctly states that there is no identifiable case law supporting Relator's asserted privilege with a committee of the United States Senate.  (Doc. 342, at 9.)

In *Leader*, the district court held that a letter exchanged between a *qui tam* plaintiff and the DOJ constituted an intra-agency communication protected under the common interest doctrine.  The facts in *Leader* are easily distinguishable from the case at bar. In *Leader*, the plaintiff's Freedom of Information Act (FOIA) request asked the DOJ to produce all agency records supporting the allegations of wrongdoing in the qui tam action pertaining to off-label marketing.  **Leader**, at * 1.  Conversely, here, the issue involves communications exchanged between *qui tam* plaintiff's counsel and the General Counsel for the U.S. Senate Committee on

Veterans' Affairs.  As such, the Committee is just that: a legislative committee. Contrarily, as seen in *Leader*, the DOJ is a federal executive department.

Moreover, as Medtronic argues, the Senate Committee on Veterans' Affairs is not a party or participant in the case, and Relator has not identified any common legal purpose that he and the Senate counsel agreed on prior to their communication.  (*Id.*)  Relator contends that the common legal interest shared between Relator and the Senate Committee is "to address and seek remedy regarding the veteran care and business dealings in Dole VA's cath lab."  (Doc. 349, at 14.)  However, the weight of authority holds that a shared desire to prevail in litigation does not constitute a common legal interest justifying application of the common interest doctrine. *Walker*, 2020 WL 6708667, at \*4; *see also* ***Cessna Fin. Corp. v. Jetsuite, Inc.***, No. 18-1095-EFM-KGG, 2020 WL 1862577, at \*2 (D. Kan. Apr. 14, 2020) (entities that have arguably established a common desire for the same outcome in an action do not establish common interest).

### C.  Conclusion

As a shared desire to prevail in litigation and remedy harm does not amount to a common legal interest, it would be an inappropriate application of the common interest doctrine to protect the materials shared with the Senate committee.  Relator fails to provide evidence in regard to whether the information was shared in confidence nor identifying a cognizable legal interest shared between it and the Senate committee.

The Court thus **overrules** Relator's relevance and privilege objections.  Medtronic's Motion to Compel (Doc. 342) is, therefore, **GRANTED**.

**IT IS THEREFORE ORDERED** that Medtronic's Motion to Compel (Doc. 342) is

**GRANTED**[1].

**IT IS SO ORDERED.**

Dated this 31st day of July 2023, at Wichita, Kansas.

 s/ KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE

---

[1]The Court declines to review the requested communications *in camera*.