IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
*ex rel.* THOMAS SCHROEDER, )
)
               Plaintiff, )
)
      v. )        Case No. 17-2060-DDC-KGG
)
MEDTRONIC, INC.; )
COVIDIEN, L.P.; )
HUTCHINSON REGIONAL MEDICAL )
      CENTER; and )
WICHITA RADIOLOGICAL GROUP, P.A., )
)
           Defendants. )
)
_____ )

## MEMORANDUM AND ORDER

In this *qui tam* action, one where the United States declined to intervene, relator Thomas Schroeder asserts claims under the False Claims Act (FCA), 31 U.S.C. § 3729(a). He sues the following defendants: Medtronic, Inc. and its corporate sibling Covidien, L.P. (collectively "Medtronic"); Hutchison Regional Medical Center ("HRMC"); and Wichita Radiological Group, P.A. ("WRG"). The case presently comes before the court on separate motions to dismiss claims asserted in relator's Fifth Amended Complaint, filed by Medtronic (Doc. # 244), HRMC (Doc. # 243), and WRG (Doc. # 246). For the reasons explained below, the court **grants in part and denies in part** each motion. The court dismisses, pursuant to the public disclosure bar, the illegal kickback claim to the extent based on providing marketing services as remuneration, and the motions by Medtronic and

HRMC are granted to that extent.  The court also dismisses as time-barred the claims against WRG to the extent based on violations committed before April 11, 2016, and WRG's motion is granted to that extent.  The motions otherwise are denied.[1]

I.    **Background**

Defendant Medtronic sells medical devices, including peripheral vascular devices used to treat peripheral artery disease (PAD).  Defendant HRMC is a hospital located in Hutchinson, Kansas.  Defendant WRG, located in Wichita, Kansas, provides radiological services.  Relator is a sales manager for a company that sells medical devices that compete with Medtronic's products.

Relator filed this action on behalf of the United States in January 2017.  In April 2020, after numerous extensions of time, the United States filed a notice disclosing that it would not intervene to take over litigating the case's claims.  By the Second Amended Complaint, filed July 8, 2020, relator asserted claims against Medtronic and HRMC under the FCA.  Relator's primary allegation claimed that Medtronic had engaged in a scheme by which it paid bribes to staff at the Robert J. Dole Veterans Administration Medical Center in Wichita, Kansas ("Dole VA") and to staff at HRMC, to induce purchases of Medtronic's PAD devices.  This conduct, relator claimed, violated the federal Anti-

---

[1] In addition, the court denies as moot relator's motion to strike certain exhibits (Doc. # 283).  The court has not considered the challenged exhibits that defendants offered in support of their argument based on the public disclosure bar.  Moreover, in accordance with the governing standard, the court has not considered the other challenged exhibits in determining the Complaint's sufficiency.

Kickback Statute (AKS), 42 U.S.C. § 1320a-7b.  In the case of HRMC, the remuneration allegedly included marketing services for physicians performing PAD procedures.  Relator further alleged that Medtronic engaged in schemes to induce the excessive use (and thus excessive purchase) of Medtronic's devices at Dole VA and the "off-label" use of Medtronic's devices at the Dole VA.  "Off-label" – in this context, anyway – means using devices in ways not approved by the FDA.  Finally, relator asserted civil conspiracy claims based on the alleged schemes involving Dole VA and HRMC.

By Memorandum and Order of September 14, 2021, the court ruled on motions to dismiss filed by Medtronic and HRMC.  *See United States ex rel. Schroeder v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2021 WL 4168140 (D. Kan. Sept. 14, 2021) (Doc. # 67). The court denied the motions to the extent they relied on the illegal kickback claims.  The court first rejected defendants' argument under the AKS's safe harbor provision, ruling that it was not appropriate to decide the kickback claims at the motion to dismiss stage based on that affirmative defense.  *See id.* at *12, 22-23.  The court then concluded that relator had alleged sufficient facts to allege with particularity plausible claims of illegal kickbacks at Dole VA and HRMC.  The claims therefore survived defendants' challenge under Fed. R. Civ. P. 8 and 9(b).  *See id.* at *12-15.  The court similarly rejected arguments based on the sufficiency of the causation and scienter allegations.  *See id.* at *13 n.13, 23-25.  The court also denied defendants' motions to dismiss the civil conspiracy claims.  *See id.* at *18-20, 26.  The court granted Medtronic's motion, however, to dismiss claims based on unnecessary procedures and off-label marketing at Dole VA, although it granted relator

leave to attempt to amend the Complaint to state cognizable claims. *See id.* at *15-18, 20-21.

Since that ruling by the court, relator has amended his Complaint three times; the operative pleading at present is relator's Fifth Amended Complaint, filed on October 24, 2022 (Doc. # 233). It asserts claims against Medtronic (including claims against corporate sibling Covidien), HRMC, and WRG. Relator has reasserted the claims of the Second Amended Complaint, including those dismissed by the court. Relator also has asserted against WRG the claims based on the schemes involving unnecessary procedures and off-label marketing at Dole VA.

## II.    <u>Governing Standards</u>

In its prior opinion, the court discussed at length the standards governing pleading of relator's claims under the FCA and the AKS. *See id.* at *1-2, 9-10. And so, the court does not repeat them here, except as necessary to address specific arguments by the parties based on applicable caselaw.

## III.   <u>Public Disclosure Bar</u>

Medtronic has moved to dismiss certain claims – the medical necessity and off-label claims and the kickback claims to the extent based on the marketing services provided – based on the public disclosure bar. HRMC and WRG have joined Medtronic's motion to the extent that the issue applies to claims against them as well. The relevant provision of the FCA states as follows:

4

The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –

(i)  in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii)  in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii)  from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

*See* 31 U.S.C. § 3730(e)(4)(A).

> A.    *Medical Necessity and Off-Label Claims*

Relator's medical necessity and off-label claims implicate Medtronic and WRG, and those defendants seek dismissal of the claims under the public disclosure bar. Defendants argue that the public disclosure of these allegations resulted from an investigation of Dole VA by the Office of Inspector General (OIG).  In response to these motions, however, the United States filed in this action a statement that the OIG initiated that investigation in response to relator's allegations in this action and that relator therefore qualified as an original source under Section 3730(e)(4).  Based on that statement, relator argues that dismissal is not appropriate under the public disclosure bar both because the Government opposes dismissal on this basis and because he is an original source.  In light of the statement filed by the United States, defendants have withdrawn this argument for dismissal of these claims.

B.     *Claims of Marketing Services as Kickbacks*

Defendants Medtronic and HRMC also seek dismissal of the illegal kickback claims asserted against them to the extent those claims rely on an allegation of remuneration in the form of marketing services provided by Medtronic to physicians performing PAD procedures at HRMC.   Defendants argue that those claims are barred by the public disclosure of allegations made in two FCA class action lawsuits filed in 2014 and 2015 in the federal court for the Northern District of California.   The two suits named Covidien, Inc. and others as defendants, and according to defendants here, the California suits led to a Government investigation of Covidien and, ultimately, to settlement of the lawsuits.

The court first addresses relator's argument that Medtronic and HRMC have waived this argument.   Relator argues that Medtronic waived the argument by not including it in its earlier motion to dismiss the Second Amended Complaint.   Relator relies on Fed. R. Civ. P. 12(g)(2), which provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See id.*

Medtronic responds, arguing that relator's present claim differs from the one asserted in the Second Amended Complaint because the current, operative version of the Complaint focuses on a "per diem" program and an independent contractor named Danielle Hoover.   The court rejects Medtronic's argument.   The present claim does not mention Ms.

Hoover by name; nor does it refer to any "per diem" program.[2]  Relator previously alleged kickbacks in the form of marketing services provided by Medtronic for physicians, and thus Medtronic could have made the same argument under the public disclosure bar, based on the California lawsuits, in its motion to dismiss the Second Amended Complaint.  Thus, Medtronic would ordinarily be precluded from raising the issue in a subsequent Rule 12(b) motion.  That would be so even though relator has amended his Complaint in the interim.  *See* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion.").

That does not mean, however, that Medtronic has waived this defense.  The rule only prohibits a second *Rule 12 motion*.  *See* Fed. R. Civ. P. 12(g)(2).  And so, Medtronic may still raise the defense, for instance, in a summary judgment motion or at trial.  *See* Fed. R. Civ. P. 12(h) (defense of failure to state a claim is not included among defenses waived by omission from a Rule 12 motion; defense may be raised at trial); 5C Wright & Miller § 1392 (omission does not result in complete waiver, party still may raise defense via other

---

[2]  Medtronic has referred to these kickback allegations as the "per diem marketing" allegations, presumably to suggest a closer tie to the prior California lawsuits, which involved a specific Covidien program using "per diem" contractors.  Relator has not alleged the use of any such contractors when asserting his claims here, however.

mechanisms). Relator has cited no authority supporting a complete waiver in these circumstances.[3]

Thus, Medtronic yet may assert this defense of the public disclosure bar. The rule requiring defenses to be raised in a single Rule 12 motion is intended to eliminate unnecessary delay at the pleading stage. *See* 5C Wright & Miller § 1384. The pleading stage in this case has already consumed much time and effort, and relator's amendments after the court's prior ruling allowed for an additional round of pre-answer motions. Thus, the intent of the rule is not furthered by a strict prohibition against Medtronic's raising this omitted defense. Moreover, addressing the issue now – and potentially removing claims that relator legally cannot maintain – serves the interests of judicial efficiency. Accordingly, the court in its discretion will permit Medtronic to raise this defense of the public disclosure bar.

Similarly, relator argues that HRMC waived this defense when it failed to include it in its Answer to an earlier iteration of the Complaint. That Answer is no longer operative, however, as relator subsequently amended the Complaint, and HRMC has not filed an answer to the present Complaint. Relator has not cited any authority supporting waiver in this setting. Moreover, even if HRMC had answered the present Complaint and omitted

---

[3]   *Nichols v. Vilsack*, 183 F. Supp. 3d 39 (D.D.C. 2016), is not apposite, as it involved a defense (lack of venue) specifically included in Rule 12(h)'s waiver provision. *See id.* at 41. Relator also cites *Hild v. Bank of America, N.A.*, No. 14-2026, 2015 WL 1813571 (C.D. Cal. Apr. 21, 2015), but there the court did not deem any defense waived; rather, it merely ruled that the defense could not be asserted in a subsequent pre-answer motion, while noting (and citing Wright & Miller) that an omitted defense may be asserted in other contexts. *See id.* at *3-4.

this defense, the court would allow an amendment at this stage of the case. Accordingly, the court will allow HRMC to assert the defense.

The court thus turns to the merits of the public disclosure bar defense as it applies to the claim of kickbacks in the form of marketing services. As defendants point out, prior suits against Covidien included allegations that marketing services were provided to physicians as a form of kickback for purchasing Covidien's medical devices. Relator argues that, according to an article, Covidien's settlement of those cases was limited to kickbacks in California and Florida, while the present suit involves kickbacks in Kansas. As defendants note, however, the class action complaints included allegations on behalf of nationwide classes, and the court agrees that the scope of the eventual settlement does not limit the public disclosure of facts alleged in those cases.

In applying the public disclosure bar, "the operative question is whether the public disclosures were sufficient to set the government on the trail of the alleged fraud with the relator's assistance." *See United States ex rel. Reed v. KeyPoint Govt. Solutions*, 923 F.3d 729, 745 (10th Cir. 2019) (internal quotations and citation and footnote omitted). The public disclosure need not have identified the defendant by name, especially if the disclosure identified the problem and a probable group of offenders. *See id.* A complete identity of allegations is not required to implicate the public disclosure bar; it is enough if the "essence" of the allegations was derived from the public disclosure. *See id.*

In this case, the particular defendant (Covidien) *was* identified in the earlier disclosures, and just as in the present suit, the plaintiffs alleged that Covidien provided marketing services to physicians as a form of kickback for using the company's medical

devices.  The court concludes as a matter of law that those allegations of that same conduct sufficed to set the Government on the trail of the fraud alleged by relator in this case, and thus also satisfied the requirements of the public disclosure bar.[4]

Relator has not argued that he was an original source of the allegations in the California lawsuits.[5]  Accordingly, the public disclosure bar mandates dismissal of relator's kickback claims based on providing marketing services, and the court grants the motions by Medtronic and HRMC to that extent.

## IV.    Statute of Limitations – FCA Claims Against WRG

WRG seeks dismissal of any FCA claim based on a violation committed before April 11, 2016.  WRG contends that any such claim is barred by the FCA's six-year statute of limitations.  The parties agree that the court should determine the applicable limitations period by counting backwards from April 11, 2022, when relator sought leave to amend the suit to add WRG as a defendant.  Relator argues, however, that he is entitled to an effective 10-year limitations period, which would allow claims based on violations dating back to April 11, 2012.  The court agrees with WRG on this issue.

---

[4]  Relator argues that this issue at least presents a fact issue precluding dismissal at this stage.  But there is no dispute that the earlier California lawsuits included those allegations, and thus there is no fact issue to litigate and resolve.  The court takes judicial notice of those lawsuits, and it need not consider the declaration submitted by defendants in support of this defense; therefore, the court need not convert the present motion to one for summary judgment.

[5]  The statement filed by the United States related only to this defense as based on the OIG investigation at Dole VA, and relator has not argued that the United States opposes the dismissal of these marketing services claims under the public disclosure bar.

The parties recognize that the issue is governed by 31 U.S.C. § 3731(b), which provides that an FCA plaintiff may not bring a civil action under Section 3730

> (1)  more than 6 years after the date on which the violation of Section 3729 is committed, or
>
> (2)  more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

*See id.*  The Supreme Court has confirmed that the 10-year provision in paragraph (b)(2) applies to a suit like the present one, where the Government has declined to intervene.  *See Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1511-13 (2019). Moreover, in such a case, the limitations period is triggered by the knowledge of the Government – "the official of the United States" – not that of the relator.  *See id.* at 1513-14.

Thus, the statute of limitations turns on when the Government knew or should have known the "facts material to the right of action."  In *Cochise*, the Supreme Court described that date as the one when the Government "obtained knowledge of the relevant facts."  *See id.* at 1513; *see also United States ex rel. Tracy v. Emigration Improvement Dist.*, Nos. 21-4059 and 21-4143, 2022 WL 16570934, at *2 (10th Cir. Nov. 1, 2022) (unpub. op.) (limitations period in Section 3731(b) begins to run "when the government knew or should have known about the fraud").

WRG argues that the Government received notice of relator's claims of fraud in 2017 when relator originally filed this suit and served it on the Government.  In that event, relator would have brought his claims against WRG more than three years later, meaning that relator couldn't apply the 10-year statute of repose and a six-year window for violations would apply.

Relator responds that he did not mention WRG's involvement in any fraudulent scheme until he filed the Second Amended Complaint in 2020, and he argues that there is no evidence that the Government knew of that involvement before then.  Relator argues that the issue at least presents a question of fact that the court should not resolve at this stage.  As WRG points out, however, relator's disclosure to the United States in 2017 – which the United States attached as an exhibit to a notice that it filed in the record of this case – identifies the same physicians at WRG whom the present Complaint cites as having performed medically unnecessary procedures.[6]  After that disclosure in 2017, the Government knew or should have known of facts material to relator's FCA claims against WRG.

Because relator did not file the claims against WRG within three years after the 2017 disclosure, relator may not take advantage of Section 3731(b)'s 10-year statute of repose.  Application of the six-year limitations period therefore allows relator to assert only claims against WRG based on violations of the FCA committed on or after April 11, 2016.

---

[6]  The court takes judicial notice of the disclosure, and thus the court may consider that record to rule on WRG's motion under Rule 12(b)(6).  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

The court thus dismisses as time-barred any claims against WRG based on violations of the FCA committed prior to that date, and the court grants WRG's motion to that extent.

## V.    **Sufficiency of the Complaint**

### A.    *Unnecessary Medical Procedures (Medtronic / WRG)*

Medtronic and WRG seek dismissal of relator's FCA claims based on his allegation that unnecessary medical procedures were performed at Dole VA.  In its earlier opinion, the court concluded that relator had failed to state that claim with particularity as required by Rule 9(b).  *See Schroeder*, 2021 WL 4168140, at *15-16.  The court granted relator leave to amend those allegations to attempt to state a claim, however, *see id.* at *20-21, and the present Complaint includes additional allegations to support this claim.  Nevertheless, defendants argue, relator's allegations remain deficient.

In its 2021 opinion, the court noted relator's allegations (in the Second Amended Complaint) that Medtronic had caused fraudulent claims for reimbursement for unnecessary medical procedures; that two Medtronic employees were present during procedures at Dole VA; and that the employees instructed and encouraged the overuse of Medtronic devices.  *See id.* at *15-16.  The court found the allegations insufficient for the following reasons:

> But the Complaint dives no deeper than those details.  The court can't discern from that allegation, for instance, *how* these Medtronic employees influenced medical procedures and the devices that were used.  Likewise, these allegations don't fully answer the *who* question.  Although the Complaint alleges that two Medtronic employees attended some procedures, it doesn't identify any specific physician(s) who performed those procedures.  As for

> the *when* question, the Complaint alleges a time span of more than seven years.

*See id.* at *16 (footnotes omitted) (emphasis in original).   The court noted that the allegations were not as particular as those deemed sufficient by the Tenth Circuit in a case containing similar allegations, *United States ex rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730 (10th Cir. 2018).   *See Schroeder*, 2021 WL 4168140, at *16.   And the court concluded that although it had reviewed the Complaint in a holistic sense, and although some details may reside in defendants' exclusive control, the allegations didn't contain enough particularity to overcome the noted deficiencies and provide fair notice to defendants.   *See id.*

In the present Complaint (the Fifth Amended Complaint), however, relator not only has addressed the particular deficiencies identified by the court; he also has included additional particulars about the alleged scheme involving false claims based on billing for unnecessary medical procedures involving use of Medtronic devices by WRG's physicians.   The court concludes that those allegations (which it must assume as true, considering all inferences in relator's favor) provide defendants the necessary fair notice of the factual and legal bases for relator's claim, and it therefore denies defendants' motions to dismiss the claim.

To address the *how* question that the court raised, relator now has included much more detail (particularly in paragraphs 106 and 107 of the operative Complaint) about the manner in which Medtronic allegedly encouraged, instructed, influenced, and persuaded WRG's physicians – during the procedures themselves and at other times – to use the

devices unnecessarily. For instance, relator alleges that Medtronic employees would conduct seminars and provide informational materials to the physicians. In these settings, Medtronic would explain to the physicians not only why and when they could use Medtronic's devices, but also how WRG would benefit financially if more devices were used. And, relator alleges, the procedures therefore took longer to perform (because WRG could bill Dole VA based on time instead of charging a set fee). Relator alleges the presence of Medtronic employees even while physicians performed the procedures, and that the employees would instruct and persuade the physicians to use more and more of the devices – even going so far as to open packaging before a physician even had called for a device. Relator further alleges (while giving specific examples) that particular healthcare professionals often were present during procedures and witnessed such conduct by Medtronic employees. Relator alleges that by this conduct Medtronic trained and essentially groomed WRG's physicians to use its devices in all PAD procedures, in the maximum amount, regardless of medical necessity. These allegations suffice. They provide notice about how (as claimed by relator) Medtronic caused false claims based on use of devices not medically necessary.

Relator also has beefed up his *who* and *when* allegations. Relator previously identified particular employees of Medtronic involved in the alleged scheme; now he also has identified particular WRG physicians who performed the unnecessary procedures involving use of Medtronic's devices. In addition, relator now has identified particular healthcare professionals who allegedly witnessed the scheme play out during the procedures themselves. Relator also has alleged that the conduct occurred during more

specific date ranges for each of the identified WRG physicians and healthcare professionals.

In addition to addressing the particular deficiencies that the court cited in its earlier Order, relator also has included more particularity in his allegations about the scheme generally. He has identified the particular devices used in these procedures to treat PAD: artherectomy devices (ADs), stents, and drug-coated balloons (DCBs). For instance, relator alleges that although physicians use ADs in approximately 17 percent of procedures elsewhere, physicians used ADs in practically all procedures at Dole VA; that studies do not support a higher incidence of use, which increases risks to patients; that Medtronic misrepresented to physicians the results of medical studies about the devices; and that Medtronic convinced physicians to adopt use of the devices as the standard of care for the treatment of PAD. Similarly, relator alleges that Medtronic encouraged physicians to use multiple stents per leg and use multiple DCBs or shorter DCBs (thus increasing the number of devices), regardless whether such use was medically necessary or a less risky alternative existed.

Relator also has provided additional particularity in his allegations comparing the use of Medtronic devices at Dole VA with the use of similar devices in similar procedures at other facilities. Relator alleges that other facilities purchased far fewer such devices in relation to the number of procedures performed, including other facilities where WRG physicians worked and where those physicians billed a set rate for the entire treatment (and not by time spent). Relator also alleges that, according to a healthcare professional, WRG physicians used fewer Medtronic devices when the Medtronic employees were not present

16

during the procedures, an allegation that further supports the claim that Medtronic's conduct caused unnecessary use of the devices.

Relator also supports this claim by alleging that particular healthcare professionals can confirm that treating physicians always (or nearly always) used Medtronic's devices in PAD procedures as a matter of routine. Relator provides details and examples of the number of devices purchased by Dole VA, in excess of the number of devices expected in the procedures performed there. Defendants argue that the purchase of a device does not necessarily mean that a treating physician used that device on a patient. Relator has tied certain purchases to the number of procedures performed at that time, however. Moreover, the court must make inferences in relator's favor at this stage, and the purchase of so many devices creates a reasonable inference that physicians actually used the devices at an excessive rate (even allowing for expiration of some inventory, as relator has alleged).

Defendants' primary argument is that relator hasn't identified a single reimbursement claim that fraudulently included unnecessary medical use of a Medtronic device; and that relator cannot show that any particular use was unnecessary without considering the particular condition of a specific patient, which relator has not done in his operative Complaint. In that regard, defendants also challenge relator's reliance on the cited healthcare professionals, as relator hasn't established the expertise of those individuals.

The court rejects these arguments for dismissal. This court did not require such specificity concerning any one claim or patient in finding relator's previous allegations deficient. *See Schroeder*, 2021 WL 4168140, at * 15-16. Nor did the Tenth Circuit require

such allegations in *Polukoff*, where the FCA plaintiff similarly relied on a general practice of performing a particular procedure at an excessive rate. *See Polukoff*, 895 F.3d at 743. Here, relator has claimed that physicians used the devices as a matter of routine, without regard to medical necessity, and that such use exceeded the use that one could expect for those procedures, with the inevitable result that unnecessary use occurred; and relator has supported that claim with sufficiently particular allegations. Relator is not required to prove his case at the pleading stage; rather, he is required to plead facts and provide sufficient notice concerning the scheme that he has alleged. By his latest Complaint, relator has alleged facts – including the fact that physicians used Medtronic's devices in nearly all procedures, as a matter of routine – that give rise to a plausible inference that physicians used the devices when not medically necessary. Thus, relator has satisfied his pleading burden.

Finally, WRG takes issue with relator's allegations that WRG provided substandard care and engaged in self-dealing. Relator has not made those allegations as separate claims, however; rather, they are included as a part of and to support his FCA claim based on unnecessary medical procedures.

For these reasons, the court denies defendants' motions to dismiss relator's FCA claims based on medically unnecessary use of Medtronic's devices.

B.      *Off-Label Use (Medtronic / WRG)*

As noted above, the court in its previous opinion concluded that relator's allegations were not sufficiently particular to support his claim under the FCA that false claims were

submitted because Medtronic's stents and DCBs[7] were used in an off-label manner (*i.e.*, beyond the uses approved by the FDA), although the court granted relator leave to amend those allegations. *See Schroeder*, 2021 WL 4168140, at *17-18, 20-21. By their present motions, defendants Medtronic and WRG seek dismissal of that claim, which, they argue, remains deficiently-pleaded. The court disagrees, however, and concludes that relator has stated this claim – like the medically-unnecessary use claim – with sufficient particularity.

As an initial matter, the court notes the parties' agreement that the off-label use of a device is not inherently illegal. *See id.* at *17 (noting that "[a]lthough device manufacturers can't market their devices for an off-label purpose, health care providers can still use them in accordance with their medical judgment"). The parties thus agree that for relator to prove his FCA claim based on off-label use, he must show that WRG made false claims for reimbursement because off-label use was medically unnecessary. The court rejects defendants' argument that relator has made no such allegation, as relator specifically has alleged (for instance, in paragraphs 143 and 154 of the Complaint) off-label use in medically unnecessary procedures. Relator also has alleged that off-label use increased risk to patients without any evidence of providing a benefit, and such allegations support the reasonable inference that off-label use as a pure matter of routine inevitably led to medically unnecessary use.

---

[7] In his response briefs, relator includes ADs among the devices used in an off-label manner, but he has not alleged such use of those devices in the operative Complaint, which discusses only stents and DCBs in the section addressing this claim. The court considers the claim as relator actually has alleged it in the Complaint.

Accordingly, relator's off-label use claim essentially becomes a part of his overall medically-unnecessary use claim. The court concludes that the narrower claim survives for the same reasons as the broader claim, based on the following allegations by relator: Medtronic personnel promoted off-label use as a matter of routine in training and marketing to WRG physicians, including during the actual procedures; specific healthcare professionals were present during procedures and witnessed Medtronic's employees persuading the physician to a specific course of action involving off-label use; and WRG had the same incentive to use more devices in any way possible to increase the duration of the procedure and thus the amount of money that WRG received.

Defendants again argue that relator has failed to allege the condition of any specific patient and that relator therefore has failed to establish a specific instance of a medically-unnecessary off-label use, but such detail is not necessarily required to state a claim, as discussed above. Relator has alleged that Medtronic groomed WRG physicians to use the devices in an off-label manner as a matter of routine and that such use provides no benefit over cheaper, standard alternatives. In fact, relator has alleged that Medtronic misrepresented the benefits of off-label use. Relator has provided one example at Dole VA when a device was used off-label instead of the alternative device simply because the off-label device was nearer at hand in the room. In addition, the excessive number of devices purchased by Dole VA supports an inference that the devices were used excessively, including in an off-label manner.

In fairly cursory fashion, Medtronic argues that truthful, off-label promotional speech is not prohibited by law and, indeed, the First Amendment protects it. Relator has

alleged, however, that Medtronic personnel encouraged and caused off-label use in medically-unnecessary procedures, resulting in false claims, and Medtronic has not shown that such activity is constitutionally protected.  Relator has also alleged that Medtronic misrepresented the benefits of off-label use.  Accordingly, there is no basis to dismiss the claim at this stage on the basis of this affirmative defense.

Finally, WRG notes that relator has relied on certain examples of conduct occurring before the limitations period beginning April 11, 2016 (as determined above).  Relator has alleged off-label use continuing until 2018, however.  Therefore, relator has alleged facts to support a plausible claim of violations occurring within the limitations period.

For these reasons, the court denies defendants' motions to dismiss this claim by relator.

### C.    *Kickbacks Involving Coronary Devices (HRMC)*

In its previous opinion, the court concluded that relator had alleged sufficiently particular facts, including regarding causation and scienter, to state an FCA claim against HRMC based on kickbacks to induce purchases of Medtronic's PAD devices.  *See Schroeder*, 2021 WL 4168140, at *13-15, 22-25.  Since that opinion, the court has granted leave and relator has amended his Complaint to include coronary devices among the products that HRMC allegedly purchased from Medtronic because of illegal kickbacks.  By the present motion, HRMC challenges the sufficiency of relator's kickback allegations as they apply specifically to coronary devices.  In support of that argument, HRMC notes that some detailed allegations in the Complaint relate only to PAD devices, not coronary devices.

The court rejects this challenge to the sufficiency of the Fifth Amended Complaint. Indeed, as conceded by HRMC, the court already has addressed and rejected this same argument, when refusing to deny relator leave to make this amendment on the ground of futility. *See United States ex rel. Schroeder v. Medtronic, Inc.*, No. 17-2060-DDC-KGG, 2022 WL 1658865, at *6 (D. Kan. May 25, 2022). There is no present basis to alter that conclusion.

In its previous opinion addressing the sufficiency of the Second Amended Complaint, the court concluded that relator had alleged sufficient particular facts about the who, what, when, and how of the kickback scheme involving HRMC. *See Schroeder*, 2021 WL 4168140, at *14. Relator's present Complaint alleges remuneration in furtherance of that scheme to induce purchases of devices from Medtronic, including both PAD and coronary devices, and the particular facts previously found sufficient by the court do not turn on the particular devices purchased.

HRMC challenges this claim as applied to coronary devices specifically on the element of causation. In its previous opinion about the sufficiency of the kickback claim allegations, the court concluded that relator adequately had alleged causation, as the suspicious arrangement between Medtronic and HRMC involving kickbacks gave rise to a reasonable inference that submission of false claims to the Government was an inevitable byproduct. *See id.* at *24. That same inference remains available to support relator's present kickback claim involving additional devices.

HRMC also challenges the newly-broadened claim on the element of scienter. As the court already noted, a party may plead scienter generally, with Rule 9(b) satisfied

"either by alleging facts showing a motive for committing fraud and an opportunity for doing so or by identification of circumstances indicating defendants' conscious behavior." *See id.* at *13 n.13 (internal quotations and citations omitted).  The court further concluded that relator sufficiently had pleaded HRMC's scienter, based on allegations creating a reasonable inference that HRMC had violated the AKS and that HRMC had acted with actual knowledge, willful ignorance, or reckless disregard for the truth.  *See id.* at * 25. The present allegations create the same reasonable inference for all the devices involved.

Naturally, relator eventually must prove his allegations of kickbacks for purchase of not just PAD devices but also coronary devices.  At this stage, however, the court does not parse this claim along the lines of the particular device involved in the scheme.  The court thus denies HRMC's motion to dismiss this claim as it relates specifically to coronary devices.

> D. *Scienter (WRG)*

WRG has challenged sufficiency of the allegations about scienter.  As noted, the court previously rejected similar arguments made by Medtronic and HRMC because one may plead scienter generally.  *See id.* at *13 n.13, 25.  In the Complaint, relator alleges explicitly that WRG knowingly participated in submitting false claims.

WRG argues that relator has not alleged facts to show that its physicians knowingly performed medically unnecessary procedures.  The court concludes, however, that the factfinder could reasonably infer the necessary scienter here.  Relator has alleged a scheme where the method of billing (by time, not by set price) provided WRG with a motive to use more Medtronic devices than necessary, and alleging such a motive satisfies the pleading

standard.  *See id.* at *13 n.13.  The factfinder also could reasonably infer that a WRG physician, in providing treatments to a patient, would know whether use of a particular device was medically necessary for that patient.

For the same reasons, the court also rejects this argument as applied to relator's conspiracy claim against WRG.  Relator has alleged an agreement between WRG and others to violate the FCA by using devices when not medically necessary; relator has alleged motives for those parties to do so; and one may reasonably infer from the Complaint as a whole that the physicians would have known whether they were performing medically unnecessary procedures, with the result that fraudulent claims for reimbursement were submitted.

### E.    Civil Conspiracy (Medtronic / HRMC)

Finally, Medtronic and HRMC move to dismiss relator's conspiracy claims.  In its earlier opinion, the court deemed relator's conspiracy allegations sufficient to state a claim, based on the conclusion that a reasonable factfinder could find the existence of an agreement, given the relationships involved.  *See id.* at *18-20, 26.  Defendants have not shown that adding new claims has altered that analysis.  Defendants primarily argue that a conspiracy claim cannot survive if the underlying claims are dismissed; but because the court has rejected defendants' arguments about the sufficiency of the pleading of the underlying claims, it rejects this argument as well.  The court therefore denies the motions to dismiss the conspiracy claims.

IT IS THEREFORE ORDERED BY THE COURT THAT the partial motions to dismiss filed by defendants Medtronic, Inc. and Covidien, L.P. (Doc. # 244) and by defendant Hutchinson Regional Medical Center (Doc. # 243) are hereby **granted in part and denied in part**. The motions are granted with respect to relator's illegal kickback claim to the extent based on providing marketing services as remuneration, which claim is dismissed pursuant to the public disclosure bar. The motions otherwise are denied.

IT IS FURTHER ORDERED BY THE COURT THAT the motion to dismiss filed by defendant Wichita Radiological Group, P.A. (Doc. # 246) is hereby **granted in part and denied in part**. The motion is granted as it applies to any claim against defendant based on a violation committed before April 11, 2016, and any such claim is hereby dismissed as time-barred. The motion otherwise is denied.

IT IS FURTHER ORDERED BY THE COURT THAT relator's motion to strike (Doc. # 283) is hereby **denied as moot**.

IT IS SO ORDERED.

Dated this 10th day of August, 2023, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge