## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
**ex rel. THOMAS SCHROEDER,**

                           **Plaintiff**,

**v.**

**MEDTRONIC, INC., COVIDIEN, L.P.,**
**HUTCHINSON REGIONAL**
**MEDICAL CENTER, and WICHITA**
**RADIOLOGICAL GROUP, P.A.,**

                           **Defendants**.

**Case No. 17-2060-DDC-BGS**

## MEMORANDUM AND ORDER

Before the court is defendants Medtronic, Inc., and Covidien, L.P.'s (collectively, Medtronic) Motion to Strike False Allegations Under Rule 12(f) and for Other Miscellaneous Relief (Doc. 366). Medtronic filed the present motion in response to what Medtronic deems Relator's "extrajudicial media campaign." Doc. 367 at 1. Medtronic contends that Relator knowingly has spread false allegations in the media in abuse of the litigation process. *Id.* And as a result, Medtronic asserts, Relator "undermine[s] the ability of the Defendants to obtain a fair jury trial." *Id.* at 2. Medtronic puts at issue allegations including: specific forms of remuneration Medtronic allegedly provided as kickbacks for device purchases; annual Medtronic device purchase totals; allegedly unnecessary or excessive Medtronic device purchases; Medtronic's alleged provision of free devices; and whether one employee's termination flowed from the unauthorized transfer of Medtronic devices from one facility to another. Medtronic moves the court to: (i) strike false allegations in Relator's Fifth Amended Complaint (Doc. 233),

(ii) amend the Amended Protective Order (Doc. 181), (iii) award costs and fees associated with this motion to Medtronic, (iv) permit limited additional fact discovery about Relator's expert witness's media interaction, (v) hold a scheduling conference to resolve outstanding discovery issues, and (vi) conduct a public hearing on this motion. The court considers each form of requested relief, in turn.

The court denies Medtronic's Motion to Strike under Rule 12(f). Medtronic provided two reasons why the court should strike the designated allegations: it contends those allegations are false and scandalous. But a motion to strike is an inappropriate means to address false allegations. And the allegations at issue don't satisfy the legal definition of scandalous. Also, Medtronic hasn't pleaded prejudice sufficient to justify striking the allegations. So, relief under Rule 12(f) isn't warranted and the court denies the motion.

The court also denies Medtronic's Motion to Amend the Amended Protective Order (Doc. 181). The court concludes the Order already in place provides Medtronic sufficient protection. The court also concludes it needn't enforce that Amended Protective Order through sanctions. Relator filed text messages designated as confidential in a related legal proceeding. But the Amended Protective Order contemplates such use. And Relator filed the text messages under seal and thus didn't divulge any confidential information. So, Relator didn't violate the Amended Protective Order and sanctions aren't justified. Costs and fees associated with such a violation also don't follow, and the court denies that award as well.

And the court also denies Medtronic's request for limited additional discovery into Relator's expert witness's media contacts. The court finds no basis to grant the requested relief, nor does Medtronic provide any. Finally, the court denies Medtronic's motion for a scheduling conference—it's moot—and the motion seeking a public hearing. A hearing is unnecessary.

The court explains its reasons for these decisions below, starting with a brief background. Next, the court takes up the Motion to Strike, followed by the Motion to Amend and the Motion to Enforce the Amended Protective Order. Then, the court addresses the question of expert witness discovery. Finally, the court evaluates Medtronic's remaining requests to conduct a scheduling conference and a public hearing.

## I.      Background

This case has been pending for more than seven years. The court has recited the background facts on several occasions. So, the court assumes familiarity with the case and overviews the claims here but briefly. Then, the court recounts the two factual situations that prompted this omnibus motion: media coverage of the case and Relator's filing of confidential material in a related legal proceeding.

### *Overview of Relator's Claims*

Relator, in his Fifth Amended Complaint, alleges that defendants Medtronic, Inc., Covidien L.P. (collectively, "Medtronic"), and Hutchinson Regional Medical Center (HRMC) provided illegal remuneration to induce medical device sales, violating the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). Doc. 233 at 15–16 (Fifth Am. Compl. ¶¶ 41–44). And this kickback scheme resulted in Medtronic and HRMC presenting—or causing another to present—claims for reimbursement that were false or fraudulent, thus violating the False Claims Act (FCA), 31 U.S.C. §§ 3729–33. *Id.* at 60–61 (Fifth Am. Compl. ¶¶ 161–65). Relator also alleges that defendants Medtronic and Wichita Radiological Group ("WRG") submitted—or caused another to submit—claims for medically unnecessary services and supplies provided by the peripheral vascular catheterization lab at the Robert J. Dole Veterans Medical Center (Dole VA), also violating the FCA. *Id.*

3

### Media Coverage

Relevant here, the media has published two stories about the present case. Doc. 367 at 4–6; Doc. 381 at 3. In early February 2023, an article by Annie Waldmen attracted two publishing platforms: one national and one local. Doc. 367 at 4–5; Doc. 381 at 5. ProPublica.com published Ms. Waldmen's article online on February 16, 2023, and *The Wichita Eagle* published it in the local newspaper on February 19, 2023. Doc. 367 at 4–5; Doc. 381 at 5. Relator and his counsel didn't provide any comment or statement for this story. Doc. 381 at 5 n.4. They had agreed already not to make on the record comments to other media sources at the request of the second media outlet: CNBC. *Id.*

A second media story broke on July 12, 2023, when CNBC ran a television segment and published an accompanying online article. Doc. 367 at 5; Doc. 381 at 9–10. For this second story, Relator and his counsel both sat for interviews, as did one of Relator's expert witnesses. Doc. 367 at 5–6; Doc. 381 at 9–10. Relator also exchanged multiple emails and shared information with an investigative producer and others at NBC Universal in early 2023. Doc. 348-21 at 10–43. One of those emails alerted CNBC about public access to documents designated confidential in the present action. Doc. 367 at 32–33; Doc. 381 at 8 n.9; Doc. 348-21 at 12. The court had unsealed these documents in a separate action when Medtronic made no motion to maintain them under seal, as explained below. Doc. 367 at 32–33; Doc. 381 at 8 n.9; Doc. 348-21 at 12.

### Related Legal Proceeding

On June 7, 2022, Relator filed a separate action under the Administrative Procedures Act (APA). *Schroeder v. U.S. Dep't of Veterans Affs.*, No. 22-2209 (D. Kan. filed June 7, 2022) [the rest of this Order refers to this case simply as the *APA Action*]. The *APA Action* sought to compel the VA to produce veteran medical records necessary to support Relator's claims in the

present case.  First Amended Complaint at 1, *APA Action*, Doc. 9.  Relator had requested the records under the federal *Touhy* regulations, and the VA had denied his request.  *Id.*  Medtronic intervened in the case, filing its Complaint in Intervention on November 7, 2022.  Complaint in Intervention, *APA Action*, Doc. 19.  Relevant here, Relator filed an opening brief in the *APA Action* to establish his need for the VA's medical records.  Opening Brief, *APA Action*, Doc. 32. The opening brief included two supporting exhibits filed provisionally under seal because Medtronic had designated the documents as confidential under the Amended Protective Order (Doc. 181) in this case.  Opening Brief Exhibits, *APA Action*, Doc. 33-1; Doc. 33-2.  Relator then filed a notice to alert Medtronic of the provisional sealing.  Notice of Proposed Sealed Record, *APA Action*, Doc. 34.  Medtronic never moved to maintain the documents under seal.  Relator, suspecting Medtronic wouldn't file such a motion, notified an investigative producer at NBC Universal by email about the potential for public access to these documents.  Doc. 348-21 at 12. The court unsealed the documents under D. Kan. Rule 5.4.2(d) on January 23, 2023.  Order, *APA Action*, Doc. 36.

With this background in mind, the court turns to the first of Medtronic's many requests for relief:  striking Relator's false and scandalous allegations.

## II.      Motion to Strike

Medtronic asks the court to strike specified paragraphs from the Fifth Amended Complaint.  It argues that depositions had revealed—before Relator pleaded his Fifth Amended Complaint—that the offending allegations "were false and unsupported[.]"  Doc. 366 at 1.  And so, "Relator knew he had no good-faith basis to allege" them.  Doc. 367 at 11.  And Medtronic also contends that the designated allegations are scandalous.  Doc. 366 at 1.

Relator responds that the motion simply "confirms again that the paragraphs at issue are simply controverted[,]" Doc. 381 at 2, and argues there "is just no basis to strike these

allegations[,]" *Id.* at 23.[1]  He notes that the parties hadn't completed all the relevant depositions as of the October 24, 2022, filing of the Fifth Amended Complaint.  *Id.* at 16.  And so—even though some of his allegations have proved unsupported since—at the time of filing "Relator had a good faith basis" for these allegations.  *Id.* at 17.  He also argues that Medtronic's characterization of his allegations as "inaccurate and grossly exaggerated" is itself false, explaining that, on the contrary, the deposition testimony supported many of the allegations.  *Id.* at 18–23.  The court evaluates Medtronic's Motion to Strike (Doc. 366), first, by reciting the legal standard for a Rule 12(f) motion.

### A.    Legal Standard for Motion to Strike

Federal Rule of Civil Procedure 12(f) empowers the court to "strike from a pleading" "any redundant, immaterial, impertinent, or scandalous matter" by acting, either sua sponte or on a party's motion.  Rule 12(f) endeavors to "minimize delay, prejudice and confusion by narrowing the issues for discovery and trial."  *Geer v. Cox*, 242 F. Supp. 2d 1009, 1025 (D. Kan. 2003) (citation and internal quotation marks omitted).  But courts view striking allegations a "drastic remedy."  *Kirby v. Broken Skull Trucking Inc.*, No. 21-1238, 2022 WL 392298, at *3 (D. Kan. Feb. 9, 2022).  And so, motions to strike are "disfavored," and the moving party faces a "demanding burden."  *John Michael Assocs., Inc. v. BlueStem Mgmt. Advisors LLC*, No. 22-

---

[1]        Relator also argues that "Medtronic is barred under Rule 12(g)(2) from filing its Motion to Strike."  Doc. 381 at 2.  Rule 12(g)(2) requires consolidation of all Rule 12 defenses and objections in a single pre-answer motion, thus prohibiting "another motion" when a party "omitted from its earlier motion" an available "defense or objection[.]"  Fed. R. Civ. P. 12(g)(2).  Medtronic filed a Partial Motion to Dismiss Relator's Fifth Amended Complaint (Doc. 244) under Rule 12(b)(6) on November 21, 2022—months before the present motion under Rule 12(f).  But, while Rule 12(g)(2) generally precludes such a second motion, the "authority given the court by the rule to strike an insufficient defense 'on its own' has been interpreted to allow the district court to consider untimely motions to strike and to grant them if doing so seems proper."  5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (3d ed. 2024) (quoting Fed. R. Civ. P. 12(f)); *see also Nkemakolam v. St. John's Mil. Sch.*, 876 F. Supp. 2d 1240, 1246 (D. Kan. 2012) (refusing to deny a motion to strike as untimely because "the Court may strike matters from a pleading on its own motion at any rate" and citing Wright & Miller, *supra*, § 1380).  The court thus determines that it may consider Medtronic's motion, even though untimely.

2055, 2022 WL 1184447, at *2 (D. Kan. Apr. 21, 2022) (internal quotation marks and citation omitted). Indeed, courts "generally decline to strike material from a pleading unless that material has no possible relation to the controversy and may prejudice the opposing party." *Id.* (internal quotation marks and citation omitted). And, when the court is in doubt "whether under any circumstance an allegation may raise an issue, the motion to strike should be denied." *Geer*, 242 F. Supp. 2d at 1026 (citation omitted).

Medtronic asks the court to impose this "drastic remedy" here for two reasons. *Kirby*, 2022 WL 392298, at *3. It contends Relator's specified allegations are both false and scandalous. The court addresses each reason, in turn, below, and then completes its motion-to-strike analysis by taking up the question of prejudice.

### B.   Falsity

Medtronic argues that Relator knew—when he filed his Fifth Amended Complaint—that the designated allegations were false and unsupported. Doc. 367 at 1. Medtronic grounds this argument in the deposition testimony of Relator and his eyewitnesses. *Id.* at 19. Medtronic asserts that the "depositions revealed that none of Relator's alleged witnesses had any firsthand knowledge to support many of these allegations[,]" which, "it turned out, were predicated on nothing more than rumor, gossip, and speculation" that Relator had "heard through the grapevine." *Id.* at 20 (internal quotation marks and citation omitted). Medtronic has identified the following allegations as ones the court should strike:

- specific forms of remuneration Medtronic allegedly provided as kickbacks, Doc. 233 at 19, 29 (Fifth Am. Compl. ¶¶ 56, 88);

- totals of the Dole VA's annual Medtronic device purchases, *id.* at 18, 26 (Fifth Am. Compl. ¶¶ 54, 76);

- alleged purchase of excessive or unnecessary devices, *id.* at 26–27 (Fifth Am. Compl. ¶¶ 76–78);

- alleged provision of free devices, *id.* at 30–31 (Fifth Am. Compl. ¶¶ 93–94); and

- release of an employee allegedly transferring Medtronic devices from Dole VA to HRMC as remuneration for device purchases, *id.* at 33, 50 (Fifth Am. Compl. ¶¶ 99, 140).

Medtronic contends Relator included these designated allegations—which he knew were false at filing—"in a purposeful effort to abuse the litigation process" and to fuel his "extrajudicial media campaign."  Doc. 367 at 1.

Relator, for his part, contests how Medtronic interprets much of the deposition testimony. Relator argues that, in many cases, the depositions supported—instead of undermined—a good-faith basis for Relator's allegations.  *See, e.g.*, Doc. 381 at 20 (discussing how Clinckscales's deposition supports Relator's allegation that Dole VA cath lab staff disposed of excessive Medtronic devices).  Relator also asserts that the parties hadn't completed all the relevant depositions needed to assess the allegation's factual support at the time of filing.  *See, e.g.*, *id.* at 16 ("Because Relator had not deposed HRMC cath lab employees as of the October 24, 2022 5AC filing, he continued to make allegations regarding the other forms of remuneration.")  And, finally, Relator notes that—after filing the Fifth Amended Complaint—"twenty-four (24) additional depositions occurred, and 84,214 additional bates-stamped documents were produced by Medtronic."  *Id.* at 14.  This discovery, Relator contends, "continues to validate the [Fifth Amended Complaint's] factual allegations."  *Id.*

In the end, all of this who-said-what-when is needless.  The court concludes below that a motion to strike is an inappropriate procedural tool to challenge a pleaded allegation's factual support.

As noted already, a motion to strike seeks to dispense with "redundant, immaterial, impertinent, or scandalous" allegations.  Fed. R. Civ. P. 12(f).  False allegations isn't anywhere on the rule's list.  Neither is sham.  To be sure, district courts elsewhere have struck false or sham allegations; Medtronic notes four such cases.  *See* Doc. 367 at 18.  But our district has held that "a rule 12(f) motion is not the appropriate method to challenge the factual support for an allegation."  *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1216 (D. Kan. 1998).  So when a "defendant requests that the court test the sufficiency of factual support for plaintiff's allegations on a motion to strike[,]" the court should decline.  *Id.*  That is, Rule 12(f) "does not authorize a court to judge the factual sufficiency of plaintiff's allegations."  *Id.*; *see also Dolezal v. Starr Homes, LLC*, No. 18-02524, 2019 WL 587959, at *2 (D. Kan. Feb. 13, 2019) ("Plaintiffs assert that these statements are untrue, as well as irrelevant hearsay.  Plaintiffs' conclusory assertion that these statements are untrue does not justify a motion to strike."); *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008) ("[T]he Court will not resolve factual disputes on the motion to strike.").  It's easy to understand why this is so.

When there's no dispute about an allegation's falsity, the federal rules already furnish a procedure for ejecting them from the case:  summary judgment.  The court sees no good reason to add words to Rule 12(f) when Rule 56 already provides a procedure for cleaning them out of the case.  And when there is a dispute about an allegation's status as true or false, judges have no business using Rule 12(f) to appoint themselves as factfinders.  This is especially true when the fact dispute arises in a case where the Seventh Amendment guarantees to the litigants the

constitutional right of trial by jury.  *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2314 (4th ed. 2023) (explaining that although there "is no constitutional jury trial right in an action against the United States[,]" actions, such as this one, "brought by or on behalf of the United States are not affected by sovereign immunity and are civil actions that carry the same jury trial right as any other civil action").

Our district's approach seems clear—a court shouldn't strike allegations for falsity.  But, out of an abundance of caution, the court reviews Medtronic's cited cases to confirm the propriety of that approach under Rule 12(f).[2]  Medtronic identifies four district court decisions where courts struck allegations as false.  Doc. 367 at 18.  None of these cases come from the Tenth Circuit.  More importantly, these cases—when read together—demonstrate that courts have struck allegations for falsity either because the allegations were inconsistent with other pleadings by the same party or because no one disputed their falsity.  But this case law does little to persuade the court to strike allegations here, for three principal reasons:  most of the designated allegations don't fall into the inconsistent or the undisputedly false categories.  And

---

[2]      The court has reviewed all four cases Medtronic cites as support for striking false allegations and summarizes its conclusions as follows:  Courts have granted a motion to strike when there is a manifest inconsistency between two filed pleadings.  *See Jones v. Bayer Healthcare LLC*, No. 08-2219, 2009 WL 1186891, at *3–4 (N.D. Cal. May 4, 2009) (striking plaintiff's amended complaint because it didn't match the factual assertions of plaintiff's previous complaint and concluding this "inconsistency warrants striking").  And courts have granted a motion to strike when the parties agreed about the inaccuracy of the allegations' factual support.  *See Marvel Enters., Inc. v. NC Soft Corp.*, No. 04-9253, 2005 WL 878090, at *2 (C.D. Cal. Mar. 9, 2005) (striking allegations when plaintiffs didn't dispute their inaccuracy and plaintiffs themselves proposed removing the exhibits to which those allegations referred).  Similarly, one court struck allegations when it could ascertain "undeniably" and "beyond peradventure" that the allegations sat "devoid of factual basis."  *Salzmann v. Prudential Sec. Inc.*, No. 91-4253, 1994 WL 191855, at *13 (S.D.N.Y. May 16, 1994) (citation and internal quotation marks omitted).  But courts have denied a motion to strike when the parties disputed the allegations' factual support, and the court couldn't ascertain "beyond doubt" that the allegations "lack[ed] any factual basis."  *Rampersad v. Deutsche Bank Sec., Inc.*, No. 02-7311, 2004 WL 616132, at *3 (S.D.N.Y. Mar. 30, 2004).  The court harmonizes these last three cases, concluding that courts have struck allegations that no one disputes are false.

the court remains unpersuaded that striking is a proper use, even when all the parties agree the allegations are false.

*First*, Medtronic doesn't assert that Relator's Fifth Amended Complaint allegations are inconsistent with other pleadings Relator has filed, eliminating the first category. *Second*, Relator fervently disputes the falsity of most allegations Medtronic has put on the chopping block. And so, most of the designated allegations don't fall in the second category, either. Relator disputes the allegation's falsity in two ways, and both of them demonstrate why a court shouldn't resolve factual disputes on a motion to strike. Either Relator disagrees with Medtronic's characterization of the allegation's inaccuracy. *See, e.g.*, Doc. 381 at 18 (disputing Medtronic's characterization of the discrepancy in total sales purchases as a "gross exaggeration"). Or Relator challenges Medtronic's interpretation of deposition testimony. *See, e.g.*, *id.* at 20 (disputing Medtronic's contention that Liebelt's deposition testimony didn't support the disposal of excess devices by pointing to the support for such disposal in Clinkscales's deposition). These two disputes—and their accompanying specific examples—demonstrate why a court should refuse to engage with factual disputes on a motion to strike. To resolve these specific disputes, the court would have to determine, first, whether the discrepancy between $10 million in sales and $7.3 million in sales qualifies as a gross exaggeration. And, assuming it does, the court would have to decide whether a gross exaggeration qualifies as false. Next, the court would have to go mucking around in reems of deposition testimony to uncover who said what—and when—about disposal of excess devices. Both these tasks are at odds with a court's appropriate, limited role when deciding a Rule 12(f) motion to strike and, instead, correspond with a summary judgment motion. *See* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (3d ed. 2024) ("If matters outside the pleadings were

freely presented and considered by the district judge, motions under Rule 12(f) . . . might be transformed into motions testing the factual or evidentiary, as well as the legal, basis for the challenged pleading and would serve much the same function as a motion for summary judgment."). Even the authority Medtronic has cited to justify striking false allegations doesn't embrace striking allegations of disputed or doubtful falsity. And so, the court won't strike disputedly false allegations here.

Third, the court also isn't convinced it should strike any undisputedly false allegations, either, though Medtronic's cited cases might permit it. Relator concedes that the Fifth Amended Complaint contains two undisputedly false allegations. He acknowledges that subsequent discovery and depositions—after he filed his Fifth Amended Complaint—proved two of his allegations unsupported: (i) the other forms of remuneration besides meals and free devices Medtronic allegedly provided and (ii) the reason for an HRMC employee's termination. Doc. 381 at 16–17. But, Relator plausibly asserted that he maintained a good-faith basis for these two allegations when he made them on filing the Fifth Amended Complaint. See id. at 16 (noting that deposition testimony had confirmed remuneration in the form of lunches, leaving open the possibility that as-yet un-deposed employees might confirm other forms of remuneration, as well); see also id. at 17 (identifying the post-filing discovery that revealed an alternative reason for the employee's termination). More importantly, striking these allegations would require the court to expand Rule 12(f)'s scope beyond the text of the rule itself. As written, Rule 12(f) bestows authority to strike "redundant, immaterial, impertinent, or scandalous" pleadings—not false ones. Fed. R. Civ. P. 12(f). The court is unwilling to expand this authority to include false allegations. A myriad of pleaded allegations—across all of litigation's sweeping landscape— prove unsupported after subsequent discovery. The court can't police pleadings post-discovery,

retroactively setting them aright.  Such an endeavor would require an enormous expenditure of judicial resources, with little effect.  And it would distract from the court's mandate "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

So, Medtronic hasn't met its "demanding burden" to succeed on a motion to strike.  It hasn't identified any inconsistencies with Relator's other pleadings.  It hasn't provided any authority to suggest that a court should strike allegations as false when the parties hotly dispute their falsity.  And—even when the parties don't dispute the allegation's falsity—our court has held that a Rule 12(f) motion isn't the proper tool to challenge an allegation's factual sufficiency. *Nwakpuda*, 14 F. Supp. 2d at 1216.  The court concludes the reasoning for this limitation on Rule 12(f) authority is sound.  And thus the court denies Medtronic's Motion to Strike Relator's allegations as false.

### C.    Scandalous Allegations

Medtronic also contends that the court may strike Relator's allegations as scandalous. "Courts have described scandalous material to be that which is irrelevant and degrades defendants' moral character, contains repulsive language, or detracts from the dignity of the court." *Kirby*, 2022 WL 392298, at *3 (internal brackets, quotation marks, and citation omitted). "Relevant allegations will be stricken as scandalous only if they satisfy this criteria as well and go into unnecessary detail." *Dean v. Gillette*, No. 04-2100, 2004 WL 3202867, at *1 (D. Kan. June 8, 2004) (citation omitted).  Courts distinguish scandalous material from information that is "unflattering," *Id.*, or "information that may shed a negative light on" a party, *Kirby*, 2022 WL 392298, at *5.  When unflattering or negative information doesn't "rise to the level of degrading any Defendant's moral character," it isn't scandalous. *Id.*  And, when the material doesn't

"degrade any defendant's moral character any more than do the allegations themselves[,]" it isn't scandalous. *Nkemakolam v. St. John's Mil. Sch.*, 876 F. Supp. 2d 1240, 1246 (D. Kan. 2012).

An example of material held scandalous is instructive. In *Jenkins v. City of Las Vegas*, plaintiff alleged employment discrimination and retaliation because of whistleblowing or, alternatively, because of race. 333 F.R.D. 544, 547 (D.N.M. 2019). Plaintiff asserted his claims against the Mayor of Las Vegas, New Mexico, among others, and included in his pleadings allegations about two unrelated investigations of the mayor. *Id.* at 549. These allegations didn't concern his claims for discrimination, retaliation, or interference with an employment contract: plaintiff's theories of liability. Instead, the allegations accused the mayor of "bid-rigging, bribery, [and] kickbacks" as well as "voter fraud and elections tampering." *Id.* at 547. The court concluded these allegations were scandalous and merited striking because they went beyond plaintiff's theories of liability.

Here, the allegedly scandalous material doesn't go beyond Relator's theories of liability. Instead, the challenged material aligns with those theories. Relator alleges that Medtronic engaged in an illegal kickback scheme, incentivizing unnecessary and excessive device purchases to increase its device sales "and create a near monopoly of its product at hospitals[.]" Doc. 233 at 3 (Fifth Am. Compl. ¶ 1). The allegations designated for striking go directly to Relator's kickback scheme theory of liability. To review, the material in Relator's Fifth Amended Complaint that Medtronic wishes to strike involves:

- remuneration provided to cath lab employees for purchasing medical devices, *Id.* at 19, 29 (Fifth Am. Compl. ¶¶ 56, 88);

- annual device purchase totals, *id.* at 18, 26 (Fifth Am. Compl. ¶¶ 54, 76);

- excessive or unnecessary device purchases, *id.* at 26–27 (Fifth Am. Compl. ¶¶ 77–78);

- acquisition and use of free devices, *id.* at 30–31 (Fifth Am. Compl. ¶¶ 93–94); and

- termination of an employee allegedly taking devices from Dole VA to use as remuneration for purchases by HRMC, *id.* at 33, 50 (Fifth Am. Compl. ¶ 99, 140).

All this material, though unflattering and negative, connects directly to Relator's claim about illegal kickbacks. Indeed, bringing an illegal kickback claim would prove nearly impossible without pleading remuneration types and device purchase totals, for example. These specific paragraphs of Relator's Fifth Amended Complaint don't degrade Medtronic's moral character any more than does the larger allegation of involvement in a kickback scheme. *See Nkemakolam*, 876 F. Supp. 2d at 1246. Nor does the material "contain[] repulsive language" or "detract[] from the dignity of the court." *Kirby*, 2022 WL 392298, at *3 (citation and internal quotation marks omitted). And this relevant material doesn't "go into unnecessary detail." *Dean*, 2004 WL 3202867, at *1 (citation omitted). The court simply has no grounds to conclude the material at issue here is scandalous. And so, the court has no grounds to strike these paragraphs.

### D.    Showing of Prejudice

Even assuming the court did find the material scandalous, a party also must show prejudice—resulting from the strike-worthy allegations—to succeed on a motion to strike.[3] *Palmer v. Shawnee Mission Med. Ctr., Inc.*, No. 16-2750, 2017 WL 5629624, at *2 (D. Kan.

---

[3]    Not all courts in the Tenth Circuit require a showing of prejudice on a motion to strike. *See Jenkins*, 333 F.R.D. at 548 ("The Court will not require a showing of prejudice under Rule 12(f) . . . . Because the Rule makes no mention of prejudice and permits a court to strike material *sua sponte*, the Court will not require a showing of prejudice."). However, the District of Kansas has repeatedly held a successful motion to strike requires a showing of prejudice. *See, e.g.*, *John Michael Assocs.*, 2022 WL 1184447, at *5 ("This District and most others require the moving party to show that the allegations are prejudicial in addition to the grounds set out in Rule 12(f)."); *Dolezal*, 2019 WL 587959, at *1 ("Further, Plaintiffs have not shown prejudice from these paragraphs, an explicit consideration in a motion to strike.").

Nov. 22, 2017) ("Courts usually deny motions to strike absent a showing of prejudice against the moving party."). Our court has defined prejudice in the motion to strike context as occurring "when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *John Michael Assocs.*, 2022 WL 1184447, at *5 (internal quotation marks and citation omitted).

Here, Medtronic's motion characterizes Relator's allegations as "prejudicial." Doc. 367 at 11, 24. But Medtronic never identifies with any specificity the exact nature of the prejudice. The court gleans from the thrust of Medtronic's motion that the prejudice falls into two categories: adverse publicity and prejudice to the jury pool. Medtronic contends, *first*, Relator "used the media to convert the falsehoods into prejudicial media statements[.]" *Id.* at 11. *Second*, Medtronic contends that Relator's conduct will "deprive Medtronic of the opportunity for a fair hearing before this tribunal[,]" *Id.* at 17, and "improperly sway the jury *venire*[,]" *Id.* at 1.

Unfortunately for Medtronic, neither adverse publicity nor concern about the jury pool align with prejudice's definition in the case law—confusing the issues or placing an undue burden on the responding party. *John Michael Assocs.*, 2022 WL 1184447, at *5. And other courts in our Circuit have held specifically that adverse publicity and jury pool prejudice don't justify striking allegations:

> The . . . defendants suggest that these allegations are extremely prejudicial because they are likely to create adverse publicity for them. That can be said of many lawsuits and is not, in itself, a reason to strike uncomfortable allegations. The . . . defendants take this argument one step further and suggest that publicity arising from these allegations could prejudice the jury pool . . . . That is pure speculation, at best. Even if the local media chooses to publish something about this case, and even if it casts [defendants] in a bad light, I have no reason to suspect that we cannot find seven jurors whose impartiality has not been tainted by media coverage. Frankly, this argument, essentially grasping at straws, tends to diminish the credibility of the . . . defendants' arguments as a whole.

*McGill v. Corr. Healthcare Cos.*, No. 13-01080, 2014 WL 2922635, at *6 (D. Colo. June 27, 2014) (internal quotation marks and citation omitted).

Uncomfortable allegations that create adverse publicity are part of many lawsuits and they provide no reason to strike allegations. *See Skilling v. United States*, 561 U.S. 358, 379, 381 (2010) (noting that "most cases of consequence garner at least some pretrial publicity," but such media "[p]rominence does not necessarily produce prejudice"). And concerns about the jury pool, which are speculative and likely unwarranted, also don't justify a strike. *See id.* at 384 (explaining that ""pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial'" (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976))). Medtronic's Motion to Strike thus fails to show prejudice of a type this court can credit. And on this requirement, too, Medtronic's motion fails.

In sum, Medtronic falls far short of meeting the "demanding burden" required to succeed on a motion to strike. *John Michael Assocs.*, 2022 WL 1184447, at *2 (citation and internal quotation marks omitted). The court cannot strike the allegations as false or scandalous. Nor does Medtronic show the requisite prejudice. Motions to strike are "disfavored," *id.*, and a "drastic remedy," *Kirby*, 2022 WL 392298, at *3, with any doubt resolved in favor of not striking, *Geer*, 242 F. Supp. 2d at 1026. And so, the court denies Medtronic's Motion to Strike (Doc. 366) for a number of independent reasons. The court turns next to Medtronic's second request for relief: an amendment of the current Protective Order.

## III.       Amended Protective Order

Medtronic moves the court to modify the Amended Protective Order (Doc. 181). Contained within this motion, the court identifies two discrete requests, one which aspires to enlarge and the other which seeks to enforce the controlling Protective Order. *First*, Medtronic

asks the court to expand the scope of confidential material to include "all deposition videos and transcripts, expert reports, other witness 'statements,' and all documents[.]"  Doc. 366 at 2.  And Medtronic asks the court to require transparency about Relator's future media interactions, imposing on Relator a duty to produce simultaneously—without additional motion practice—all shared correspondence and materials.  *Id.  Second*, and though not fashioned as a motion for sanctions, Medtronic asserts Relator violated the parties' current controlling Amended Protective Order (Doc. 181) and asks the court to enforce it with sanctions.  Doc. 367 at 32–33.  The court evaluates each request below.

### A.     Motion to Amend Amended Protective Order

Federal Rule of Civil Procedure 26(c) provides that a court, "for good cause," may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  And that good cause standard accommodates and allows modifications as interests in need of protection arise later.  *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008).  "The modification of a protective order, like its original entry, is left to the sound discretion of the district court."  *Id.*  But, the Tenth Circuit has warned that "courts should be wary of retroactive attempts to modify" protective orders.  *SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010).  When seeking such a modification or amendment, the moving party "bears the burden of showing good cause for the modification, which, as interpreted by the Tenth Circuit, requires the showing of a reasonable need."  *Mod. Font Applications v. Alaska Airlines*, No. 2:19-CV-00561, 2021 WL 364189, at *5 (D. Utah Feb. 3, 2021) (citation and internal quotation marks omitted).

Here, Medtronic has failed its burden of good cause or reasonable need to modify the existing Protective Order.  Medtronic contends that the court should amend the Protective Order because Relator has "continued to feed litigation documents to the press, resulting in snippets

from lengthy deposition videos and other Relator-selected documents featuring in local and national press." Doc. 367 at 33. The Amended Protective Order, as it currently stands, provides a means which Medtronic can use to mark any document Confidential or Confidential—Attorneys' Eyes Only. Doc. 181 at 4–5. It also allows a party to deem deposition testimony as confidential at the taking of the deposition or "within 30 days after receipt of the deposition transcript." *Id.* at 5. And, once designated confidential, the Amended Protective Order provides that the "information must be used or disclosed solely for the purposes of prosecuting or defending this lawsuit[.]" *Id.* at 6.

The existing Protective Order thus provides a method to ensure designated information won't leak outside the confines of this litigation. And, as Relator points out, Medtronic had the option to mark depositions as confidential under the current Order—including those from which Relator took snippets—but failed to do so. Doc. 381 at 31. Given our Circuit's reticence to modify protective orders retroactively, an amendment now likely wouldn't allow Medtronic to reset the clock and designate as confidential material it could have designated as such already. Medtronic has failed to show good cause or reasonable need for the court to amend the controlling Protective Order. The court, in its discretion, thus denies Medtronic's request to amend. The court turns next to the other prong of Medtronic's Motion to Amend: its request that the court enforce the current Protective Order with sanctions.

### B.    Motion to Enforce Amended Protective Order

Medtronic argues that Relator and his counsel violated the parties' Amended Protective Order by filing text messages designated as confidential in the separate *APA Action*. Doc. 367 at 32–33. Medtronic contends that Relator filed those text messages "in hopes that they would get

unsealed," as evidenced by Relator's communications with NBC.[4]  *Id.*  And, Medtronic asserts,

this "sequence of events" proves Relator's "bad faith."  *Id.* at 33.  Medtronic concludes that

"Relator's violation of that Order can and should be subject to sanctions."  *Id.* at 32.

Relator doesn't deny communicating with the media about the unsealed text messages in

the *APA Action*.  Doc. 381 at 8 n.9.  But, he argues, he included the text messages in the *APA*

*Action* to establish "a good faith basis for the production of obviously sensitive medical records,"

not simply to make them available to the media.  *Id.* at 7.  The text messages allegedly proved

that doctors inserted an unnecessarily excessive number of medical devices in one patient, and so

demonstrated the need for the medical records production.  *Id.*; *see also* Opening Brief Exhibit at

4, *APA Action*, Doc. 32-2.  And he contends the *APA Action* is a related case, so the controlling

Protective Order permitted him to use those confidential messages, anyway.  Doc. 381 at 7.

Finally, he notes that he filed the text messages provisionally under seal and issued Medtronic a

notice of their filing.  *Id.* at 7–8; *see also* Notice of Proposed Sealed Record at 1, *APA Action*,

Doc. 34.  The messages only unsealed once Medtronic had waived its right to keep them

confidential.  Doc. 381 at 8.

"The starting point for interpretation of a protective order lies in its plain language."

*Merrill Scott*, 600 F.3d at 1271.  The court's analysis of any alleged violation thus begins with

---

[4]      An email between Relator and an investigative producer at NBC Universal, Paige Tortorelli, on
January 23, 2023, reads as follows:

> Hi guys, potentially some really good news pending.  In our recent APA filing . . . we
> included the damning text messages between employees of Medtronic and the use of a
> horrendous amount of product on a veteran.  By law, any party of the filing must
> immediately designate, exhibits/docs of a filing they wish to be made confidential.  If they
> do not, the court unseals the filing and releases it publicly.  Medtronic has never filed for
> confidentiality, and we do not anticipate them to do so here either.  Especially, given they
> are twined in a Consuming trial on another case at the moment.  As soon as I get
> confirmation that it was unsealed by the court, I will forward to you all.

Doc. 348-21 at 12.

the Amended Protective Order (Doc. 181) itself. Medtronic argues that the plain language of the Amended Protective Order contemplates disclosure of confidential material only when a subpoena or court order so compels a party. Doc. 367 at 31. And, because a subpoena or court order didn't compel Relator to include the text messages in the separate *APA Action*, he violated, Medtronic argues, the Protective Order. *Id.* at 31–32. To be sure, the Protective Order does include such a compulsion provision. Doc. 181 at 13. But its plain language also permits confidential information to "be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals *or any other related legal proceeding brought by one of the parties to this litigation*." *Id.* at 6 (emphasis added). Relator, who brought the *APA Action*, is a party to this litigation. So, to the extent the *APA Action* is a "related legal proceeding," the plain language of the Amended Protective Order makes his use of confidential information fair game.

The Amended Protective Order itself doesn't define "related legal proceeding." *See generally id.* So, the court must look elsewhere. Black's Law Dictionary defines "related" as "[c]onnected in some way; having relationship to or with something else[.]" *Related*, *Black's Law Dictionary* (11th ed. 2019). And the same work's definition for "proceeding" includes the following: "An act or step that is part of a larger action." *Proceeding*, *Black's Law Dictionary* (11th ed. 2019). So—to qualify as a "related legal proceeding"—the *APA Action* and the present case must connect in some way, and the *APA Action* must constitute a step that is part of the larger present case. A survey of the *APA Action* filings reveals that this connected step characterization is accurate here.

In the *APA Action*, Relator's First Amended Complaint requests an order compelling the United States Department of Veterans Affairs to provide responses to discovery requests made in the present case. First Amended Complaint at 1, *APA Action*, Doc. 9. The First Amended

Complaint also describes the present case and refers to this case as its "underlying" lawsuit and "the underlying legal proceeding[.]" *Id.* at 2–3, 4, 5, 7.  Medtronic also characterizes the present case as the "underlying litigation" of the *APA Action*, Memorandum in Support at 2, 4, *APA Action*, Doc. 17, and describes the present action as the reason Medtronic "has been forced to also seek fact discovery from the VA," Complaint in Intervention at 3, *APA Action*, Doc. 19.  Both parties to this action—in their *APA Action* filings—thus acknowledge the connection between this case and the *APA Action*.  They also understand the *APA Action* as servicing the present case; that is, the *APA Action* is a step that is a part of this larger case.  The court thus concludes the *APA Action* qualifies as a "related legal proceeding" under the Amended Protective Order.  And Relator's use of the confidential text messages in that related proceeding doesn't violate the express terms of the Protective Order.

But even assuming the *APA Action* didn't qualify as a related case, Relator still may use the text messages without violating the Protective Order.  Other courts—in our Circuit and elsewhere—have concluded that a party bringing a second, separate lawsuit may use supporting information derived from a first lawsuit, even when that supporting information bears a confidential designation under a protective order.  *See Crocs, Inc. v. Joybees, Inc.*, No. 21-02859, 2023 WL 8851997, at *8 (D. Colo. Dec. 8, 2023) (collecting cases and concluding the "weight of authority" allows the filing of a second, separate lawsuit informed by confidential supporting information from a first lawsuit).  And the Tenth Circuit has embraced a procedural mechanism which likewise allows access to discovery produced under a protective order in a collateral case. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427–28 (10th Cir. 1990) (explaining that collateral litigants may intervene permissively and move to modify a protective order, a mechanism which exists expressly to benefit collateral litigation and "avoid[] duplicative

discovery"). Although permissive intervention followed by modification isn't the issue here, such a procedure demonstrates the Circuit's willingness to accommodate collateral litigation, a confidential designation under a protective order notwithstanding.

The situation in *Crocs* proves instructive for the present situation. In *Crocs*, plaintiff's complaint in a second, separate action relied on confidential documents produced by defendants in the first action. 2023 WL 8851997, at *5. Defendants accused plaintiff of a "sinister strategic rationale" for initiating the second action: "an alleged media campaign purportedly designed to cast [defendants] in a negative light." *Id.* (internal quotation marks omitted). And, defendants argued, the use of information derived from highly confidential documents violated the first action's protective order, which limited such documents' usage to that "*in connection with this case only* for prosecuting, defending, or attempting to settle this litigation." *Id.* at *6 (emphasis in original) (internal quotation marks and citation omitted).

The court in *Crocs* held that plaintiff "did not violate the protective order in filing the complaint in the Second Action." *Id.* at *8. The court concluded no one disputed "that the complaint in the Second Action . . . [was] based on information that [plaintiff] learned from documents [defendants] produced and designated as 'Highly Confidential' under the protective order in the First Action." *Id.* at 6. But the complaint itself "expose[d] no details or facts" and so it didn't "divulge highly confidential information." *Id.* at *8. The court also noted defendants' failure to restrict public access to the complaint—which remained on the public docket when the court wrote the opinion—suggesting defendants' inaction to restrict access played a role in any injury they suffered. *Id.* at *6.

So too here. Even were the *APA Action* a separate case, and even were Relator's motives to fuel a media campaign, his filing of the text messages *under seal* in the *APA Action* didn't

divulge highly confidential information.  Instead, Medtronic's inaction—failing to move to maintain the document under seal—made the information publicly available.  And Relator provided Medtronic with the requisite notice, which should have prompted Medtronic to act.  Indeed, Relator's notice explicitly identifies that the provisionally sealed document contains text messages.  Notice of Proposed Sealed Record at 1, *APA Action*, Doc. 34.  And the provisionally sealed document itself consists solely of the text message thread.  Exhibit in Support of Opening Brief at 1–7, *APA Action*, Doc. 33-1.  So, Medtronic's inaction—not Relator's filing—allowed public access to the text messages.  The court agrees with Medtronic that Relator took advantage of the document's unsealing, lying in wait and then pouncing on Medtronic's lack of diligence.  And the court sees such pouncing as unseemly gamesmanship.  But it doesn't violate the Amended Protective Order.  Relator used the text messages in a second action without himself divulging the confidential information.  Courts have held such use permissible.  *Crocs*, 2023 WL 8851997, at *8.  And so, the court denies Medtronic's request for sanctions.

Relatedly, the court also denies Medtronic an award of costs and fees "incurred as a direct result of [Relator's] violation of the Protective Order[.]"  Doc. 367 at 34.  "Courts typically must award reasonable attorneys' fees and expenses for the violation of a protective order[.]"  *Doe v. Taos Mun. Schs.*, No. 20-01041, 2023 WL 6314647, at *12 (D.N.M. Sept. 28, 2023).  But Relator didn't violate the Amended Protective Order, and so the court denies Medtronic's corresponding request for costs and fees.  On to Medtronic's next request:  expert witness limited fact discovery.

## IV.        Limited Fact Discovery of the Expert Witness's Media Contact

Medtronic also requests limited additional fact discovery into an expert witness's media statements and whether Relator controlled or directed these statements.  Doc. 366 at 2.  At bottom, Medtronic seeks this relief because it alleges "Relator is engaged in, and has accelerated,

an extrajudicial media campaign" that is an "effort to abuse the litigation process."  Doc. 367 at

1.  And Medtronic invokes the Kansas Rules of Professional Conduct to encourage the court to

act.  *Id.* at 16.

Our court has adopted the Kansas Rules of Professional Conduct (KRPC) to govern the

conduct of attorneys.  D. Kan. Rule 83.6.1; *see also Aiken v. Bus. & Indus. Health Grp., Inc.*, 885

F. Supp. 1474, 1476 (D. Kan. 1995) ("This court has adopted, as the standards of professional

conduct governing attorney practice in this district, The Code of Professional Responsibility and

the Model Rules of Professional Conduct as adopted by the Supreme Court of Kansas[.]"

(citation and internal quotation marks omitted)).  And, to be sure, those rules speak to any

"extrajudicial statement" made by a "*lawyer* who is participating or has participated in the

investigation or litigation of a matter[.]"  KRPC 3.6 (emphasis added).  They also proscribe an

attorney from "knowingly assist[ing] or induc[ing] another" to violate the KRPC.  KRPC 8.4(a).

But these rules regulate the conduct of lawyers.  Medtronic provides no authority to suggest that

these rules extend to Relator or to an expert witness.  And—if Medtronic suspects Relator's

attorney has violated the KRPC in interacting with Relator's expert witness or the media—this

kind of request isn't the way to address it, anyway.  Our local Rules provide the proper

procedure:  "A complaint against an attorney practicing in this court for any cause or conduct

that may justify disciplinary action must be . . . filed in the record office of the clerk at Kansas

City.  The clerk must refer all complaints so-filed to the Disciplinary Panel."  D. Kan. Rule

83.6.3(b)(1); *see also Balfour v. Medicalodges, Inc.*, No. 05-2086, 2005 WL 8160328, at *2 (D.

Kan. July 22, 2005) (explaining that, while counsel is subject to the KRPC, this court doesn't

discipline attorneys and instead referring parties to the disciplinary procedure in D. Kan. Rule

83.6.3).  Medtronic hasn't engaged in that procedure.

Nor has Medtronic offered any other relevant authority, beyond the KRPC, to support the relief it requests:  discovery into the media contacts of Relator's expert witness.  And the court has found none.  For support, Medtronic only proffers that "[a]n expert witness should never become one party's expert advocate."  Doc. 367 at 6 n.1 (quoting *Selvidge v. United States*, 160 F.R.D. 153, 156 (D. Kan. 1995)).  But the court, in offering that admonition in *Selvidge*, was speaking in the context of expert testimony to a jury—not an expert communicating with the media.  160 F.R.D. at 155–56.  And, while Medtronic suggests that Relator may have made an "effort" "to control or direct" the expert witness's statements to the media, Doc. 366 at 2, it offers nothing to confirm that suggestion, *see generally* Doc. 367.  In sum, Medtronic has fallen far short of providing sufficient justification for relief here.  And so, the court denies Medtronic's request for an order permitting limited additional fact discovery of Relator's expert witness.  Finally, the court addresses Medtronic's two remaining requests for relief:  a scheduling conference and a public hearing.

## V.        Other Relief:  Scheduling Conference & Public Hearing

Last, Medtronic asks the court to conduct a "scheduling conference under Rule 16 . . . to resolve outstanding discovery issues and clarify its position with respect to VA's involvement and its positions with respect to parties' ongoing *Touhy* requests and litigation under the Administrative Procedure Act."  Doc. 366 at 2.  The court denies this request as moot.  Since Medtronic filed this motion, both parties have filed subsequent motions to address scheduling issues precipitated by the delay in receiving VA medical records.  Doc. 442; Doc. 443.  On February 6, 2024, Magistrate Judge Brooks G. Severson conducted a motion hearing to address the scheduling issues.  Doc. 456.  And Magistrate Judge Severson stayed "discovery, expert disclosure deadlines, and dispositive motion deadlines" for Relator's medically unnecessary FCA claim while a second APA action is pending.  Doc. 461 at 4; *see also Medtronic v. U.S.*

*Dep't of Veterans Affs.*, No. 23-2497 (D. Kan. filed Nov. 8, 2023).  The court concludes this motion hearing and subsequent ruling addressed any lingering scheduling concerns sufficiently.  The court thus denies Medtronic's request for a scheduling conference as moot.

Medtronic also asks the court for a public hearing on this motion.  Doc. 366 at 1.  The court has discretion whether to hold a hearing on any motion filed in this court.  *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); *see also* D. Kan. Rule 7.2 ("The court *may* set any motion for oral argument or hearing at the request of a party or on its own initiative.") (emphasis added); *Abrams v. Se. Mun. Bonds Inc.*, 138 F. App'x 88, 96 (10th Cir. 2005) ("A district court's decision whether to conduct hearings in order to resolve motions—even those which are vigorously disputed and may directly determine the outcome of the litigation—is reviewed for abuse of discretion.").  The court has concluded the briefs on this motion are sufficient to reach its decision.  The court thus denies Medtronic's request for a hearing.

## VI.     Conclusion

The court denies Medtronic's Motion to Strike (Doc. 366).  It concludes that a Motion to Strike isn't the appropriate procedural tool to address allegedly false allegations.  And it concludes that striking the allegations as scandalous isn't justified either.  Nor has Medtronic pleaded sufficient prejudice to warrant striking.

The court also denies Medtronic's Motion to Amend the Amended Protective Order.  The controlling Amended Protective Order provides sufficient means for Medtronic to secure its confidential information.  And the court denies Medtronic's Motion to Enforce the Amended Protective Order.  The plain language of the Amended Protective Order allowed Relator to use documents designated confidential in a related legal proceeding.  And Relator filed those

documents under seal without himself divulging the confidential information.  Medtronic failed to move to maintain the documents under seal, resulting in public access.

The court denies Medtronic's request for an order permitting limited fact discovery into the media contacts of Relator's expert witness.  Medtronic failed to provide any authority for the court to grant such relief.

Finally, the court also denies Medtronic's request for a scheduling conference as moot. And the court denies Medtronic's request for a public hearing, having decided already the motion on the briefs.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Medtronic's Motion to Strike False Allegations Under Rule 12(f) and for Other Miscellaneous Relief (Doc. 366) is denied.

**IT IS SO ORDERED.**

**Dated this 13th day of March, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**