UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. THOMAS SCHROEDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-02060-DDC-BGS |
| | ) | |
| MEDTRONIC, INC., COVIDIEN, L.P. | ) | |
| HUTCHINSON REGIONAL | ) | |
| MEDICAL CENTER, and WICHITA | ) | |
| RADIOLOGICAL GROUP, P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEDTRONIC, INC. AND COVIDIEN L.P.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

As set forth in Medtronic's Motion for Partial Summary Judgment, the undisputed facts require the dismissal of Relator's kickback allegations, a fact which Relator concedes in part. Despite predicating his lawsuit on rumors of salacious kickbacks, only two of Relator's kickback allegations remain: (1) bundle sales to HRMC (*i.e.*, buy 50 get 5 free type discounts) and (2) modest and occasional meals provided to lab employees at the Dole VA.

Neither of these activities is illegal under the Anti-Kickback Statute (AKS). Discounts and modest in-service meals are industry standard activities, and they occur day-in and day-out around the country throughout the medical industry. And, the record shows that Medtronic took the actions at issue with the honest belief that they were permitted and lawful. This lack of *mens rea* evidence is alone fatal to Relator's claims. There is also no evidence that the actions amounted to unlawful remuneration, nor that they in fact caused the United States to pay for items or services it would not have otherwise. These guardrails on the AKS are important. Contrary to Relator's intimations, courts should not read "causation too loosely or remuneration too broadly" because "[m]uch of the workaday practice of medicine might fall within an expansive interpretation of the Anti-Kickback Statute." *United States ex rel. Martin v. Hathaway,* 63 F.4th 1043, 1053–54 (6th Cir. 2023). Relator's opportunistic lawsuit has only deteriorated with age and Medtronic asks the Court to grant summary judgment.

## FACTUAL ALLEGATIONS

### I.     Response to Relator's "Additional Material Facts."

**Rel. 1.**  Paragraph 1 is not disputed.

**Rel. 2.**  As to Paragraph 2, it is not disputed that Provider Statistical & Reimbursement (PS&R) reports capture certain claims data.  The remainder of the paragraph is disputed, as the reporting of the device purchase data at issue does not occur in claims data.[1]

**Rel. 3.**  Paragraph 3 is disputed.  The form actually states:

> to the best of my knowledge and belief, this report and statement are true, correct, completed and prepared from the books and records of the provider in accordance with applicable instructions, except as noted.  I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

(Doc. 527-4, at Ex. 63, pp. 16–38).

**Rel. 5.**  Paragraph 5 is disputed.  The agreement cited represents an agreement between the purchaser and vendor that "it is their intent to establish a business relationship" that will "comply with the exceptions to the Medicare and Medicare Anti-Kickback statute set forth at 42 U.S.C. § 1320a-7b(b)(3)(A) and (C), the 'safe harbor' regulations regarding discounts set forth in 42 C.F.R. § 1001.952(h) . . . ."  (Doc. 527-4, at Ex. 63).

**Rel. 6 to 8.**  Paragraphs 6 to 8 are disputed, not material, and not admissible.  None of the individuals mentioned—Brown, Clinkscales, and Schroeder—have relevant knowledge as they did not (1) work for Medtronic or (2) sell as representatives to the Dole VA during the relevant time period.  Def.'s Mem. in Supp. of Partial S.J. (Doc. 516) (hereafter "Def.'s Second S.J. Memo.") at ¶ 62; Clinkscales Dep. (Doc. 381-17) at 44:13–16 ("Q:  When you worked for Bard and then TD, were you ever successful in – making any sales of medical devices to Dole VA?  A:  "No, we never tried."); Schroeder Dep. (Doc. 381-9) at 47:4-9 (admitting he was never present for

---

[1] *See* Expert Report of Gregory Russo (Doc. 435-12) at 17–18 (explaining device purchase data in cost report that is not derived from the PS&R); Declaration of Alethea Huyser, Ex. 3, Schmor Dep. I at 108:4–25 (admitting that at-issue purchase data is tracked through hospital revenue codes and that individual charges are not "included in the cost report").

any procedures at the Dole VA).  Their internal training, of which no independent verification has been provided, is not evidence of a legal standard.

**Rel. 9.**  Paragraph 9 is disputed.  It is not disputed that the Dole VA's total purchases for all peripheral vascular *and* cardiovascular devices between 2011 and 2018 were $7,361,145.

**Rel. 10.**  Paragraph 10 is disputed.  Medtronic did not give "bribes."  In addition, Relator's belated attempt to add a new alleged bundle sale in 2014, *see* footnote to Rel. 11, is foreclosed as it was not timely disclosed.

**Rel. 11.**  Paragraph 11 is disputed because Medtronic did not give "bribes" and because Relator's attempt to add claims prior to April 2015 was not timely raised.[2]  The remainder of the paragraph is disputed because Relator has identified no factual basis for his allegation of taint. Indeed, by Relator's own admission, the "no charge" devices included in bundles represent just 3% of HRMC's total purchases.

**Rel. 12.**  Paragraph 12 is disputed.  Relator's expert admits she was not able to trace HRMC's utilization of specific devices.  Schmor Expert Report (Doc. 451) at 11.

## II.     Reply to Relator's "Controverting of Medtronic's Factual Allegations."

Relator's alleged controverting statements set forth significant misstatements across 80 different paragraphs and thus cannot each be addressed within this reply.  Medtronic instead refers back to its prior Memorandum and addresses a few below.

**Paras. 6 to 8.**  Relator's attempts to controvert the fact that device preference at HRMC was driven by physician preference, not discounts, does not create a genuine issue of material fact. For example, Relator cites testimony from John Tebbe that after Wilson started at HRMC, Tebbe

---

[2]  Relator disclosed his alleged damages through the Report of Jessica Schmor dated May 26, 2023. Schmor Expert Report (Doc. 451).  At that time, Relator did not allege or disclose any damages associated with discounts prior to April 14, 2015.  *Id.* at 52, 55.

failed to successfully complete a "bulk order" on balloons "again."  Rel.'s Resp. Mem. (Doc. 527)

at 8, ¶ 5.  Wilson started at HRMC in 2011, however, *four years before* any of the bulk or bundle

purchases at issue occurred.  It is undisputed that HRMC physicians preferred Medtronic devices

during the time period in question:

> Q: When you [Mark Wilson] worked at Hutchinson Regional, did you have any
> influence on the devices that physicians actually decided to use during a procedure
> in the cath lab?
> A: No.

Wilson Dep. (Doc. 435-2) at 193:2–6

> Q: Okay. In your role–in procuring devices for Hutchinson Regional Medical
> Center, did physician preferences play any sort of role in the decision to purchase
> one product over another?
> . . .
> A: Pretty much played in all decisions when it came to what I call physician
> preference items.

*Id.* at 172:24–173:7.

> Q: Okay.  What about the DCBs, did they fall in that category of preference items?
> A: Very much so.

*Id.* at 175:4–6.

> Q: I mean, is it – is it fair to say that the devices that Doug was providing you quotes
> on were going to be – were likely to be purchased by Hutchinson regardless of any
> sort of bulk arrangement that was made? Because of their preferred provider . . .
> designation?
> A: That's very fair to say.

*Id.* at 176:9–17.

**Paras. 19 to 23.**  Relator pleads facts that do not give rise to genuine issues of fact.  For

example, non-Medtronic sales representatives like Larry Valdivia testified to frequently being

physically present in the Dole VA cath lab.  Valdivia Dep. (Doc. 381-15) at 16:21-17:9 (testifying

to attending procedures at Dole VA "maybe two or three times a week.")  Likewise, Relator's

complaints about Brinkley are nonsensical.  Government purchasing is, de facto, a public process.

*E.g.,* Rel.'s Resp. Mem. (Doc. 527) at 10.  Likewise, Relator attempts to blame Brinkley for "large

orders" that "should have been put on consignment."  *Id.*  Relator ignores the fact that (1) new and

4

expensive devices were not always available for consignment, and (2) Brinkley testified to putting the devices on consignment. Brinkley Dep. (Doc. 516-5) (154:23-157:13).

**Para. 24.**  Relator's allegations of "excessive ordering" rely on unreliable and inadmissible testimony.  Relator cites testimony from Kittrell about a 2017 review into VA purchasing and a count of devices purchased versus used, but Kittrell did a basic data search, that did not compare the total of all similar devices purchased at all facilities (regardless of manufacturer) or compare procedure volumes at the different peripheral vascular cath labs.  Kittrell Dep. (Doc. 527-16) at 19:15-19; *id.,* Huyser Decl. Ex. 1, at 151:5-153:13.    As to other documents, Kittrell did not perform that analysis, did not know for sure how it was done or which devices the count contained, and thus could not lay foundation for it.  *E.g.,* 179:6-180:13 (referring to Susan Hastings who collected much of the data).  Relator also avoids telling the Court that the data used to develop these documents is unidentified and likely incomplete. *E.g.,* Huyser Decl. at Ex. 2, Hastings Dep. at 97:16-25 ("So we didn't feel that this was a – we didn't feel that this data in its form was – able to be used as a – as an analytical tool.")

**Para. 67.**  To the contrary, Valdivia testified he had no information on payment.

## ANALYSIS

In his response, Relator limits the defense of his legal claims to just two of his allegations: (1) discounts at HRMC and (2) meals at Dole VA.  As to those claims, Relator's response brief avoids the substantive legal analysis of the evidence and fails to identify *material* factual disputes on the essential legal elements.

Relator expressly concedes that he is no longer pursuing his claim that "Swap-Outs" that occurred from 2011 to 2014 were unlawful.  Rel.'s Resp. Mem. (Doc. 527) at 8, ¶ 10.  Those

allegations should, therefore, be dismissed with prejudice.  Relator also abandons his allegations

of kickbacks based on in-service meals at HRMC.  *Infra* at II.

I.      **RELATOR CANNOT IDENTIFY EVIDENCE THAT DISCOUNTS WERE UNLAWFUL KICKBACKS, PROVIDED IN BAD FAITH, THAT CAUSED FALSE CLAIMS TO BE SUBMITTED.**

Sales discounts are not "bribes."[3]  Indeed, they are not wrongful, bad faith, or criminal acts

*unless* they unfairly take advantage of federal payor plans.  *See* Expert Report of Tony Maida

(Doc. 430-14) at 12–13; Clarification of Initial OIG Safe Harbor Provisions and Establishment of

Additional Safe Harbor Provisions under the Anti-Kickback Statute, 64 Fed. Reg. 63518, 63530

(Nov. 19, 1999) (explaining that primary HHS-OIG concern was discounts that would shift costs

for non-covered items to items reimbursed by Medicare).   Discounts that lower overall medical

costs are generally encouraged and are commonly provided.  *United States v. Shaw*, 106 F. Supp.

2d 103, 115 (D. Mass. 2000).  The discounts at issue in this case are each good faith, lawful, and

proper discounts.  *See* Def.'s First S.J. Memo. (Doc. 430) at 40–55.

A.  **Relator Has Not Presented Any Facts From Which Any Reasonable Inference of Willful and Knowing Intent Can Be Drawn.**

Relator cannot survive summary judgment by arguing mere non-compliance with the

discount safe harbors.  The False Claims Act is not a strict liability statute.  Rather, a relator must

show that the nine bundled discounts at issue were provided with a willful and knowing intent to

violate the law.  *United States v. Teva Pharms. USA, Inc.*, 560 F. Supp. 3d 412, 421 (D. Mass.

2021).   Mistakes, accidents, or misunderstandings simply do not involve the requisite "bad

---

[3] Whether the discounts qualified for safe harbor discounts was addressed in separate briefing. *See* Medtronic's Mem. in Supp of Part. S.J. (Doc. 430) (hereinafter "Def.'s First S.J. Memo"). This briefing addresses the remaining elements.

purpose" required, as a matter of law, to prove illegal kickbacks. *United States ex rel. Hart v. McKesson Corp.*, 96 F. 4th 145, 154–57 (2d Cir. 2024).

Federal regulations indisputably allow bundled discounts—i.e., the provision of an item for free along with the purchase of a different item—provided they are documented. Def.'s First S.J. Memo. (Doc. 430); Def.'s Reply in Supp. of First S.J. (Doc. 464) at 14–16. Because Relator was forced to acknowledge that the discounts he was challenging were in fact documented in paper, his argument that they fall outside the safe harbor was based on a technicality. Essentially, Relator argued that the Medtronic employees used the wrong piece of paper and thus didn't "substantially comply" with safe harbors for discounts. Rel.'s Resp. to Def.'s Mot. for Partial S.J. (Doc. 446) at 4. Relator has acknowledged that the documents created by Medtronic employees attempted compliance. *Id.* This is both obviously true, and a fact indisputably supported in the record. Davisson Dep. (Doc. 381-8) 268:10–17, Winger Dep. (Doc. 381-10) 207:1–12; 322:9–324:7.[4] The fact that Medtronic employees "attempt[ed] compliance" alone precludes, as a matter of law, a finding of a knowing and willful violation of the AKS.

Nonetheless, Relator offers the Court three arguments to attempt to save his claim. Each fails. First, he argues that scienter is not amenable to decision at summary judgment. This is not correct. *See, e.g., Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010) (affirming summary judgment in a case that "turns on" whether an action was "willful or intentional" because "there is no indication that the conduct in this case rises to [that] level"); *Grimes v. SSP 720 Chapman, LLC*, 2022 WL 17976758, at *5 (D. Colo. Oct. 12, 2022) (granting summary judgment because "at the summary judgment stage, [Plaintiff] must 'designate specific facts showing there exists a genuine

---

[4] It is also undisputed that HRMC employees, who kept and filed the discount paperwork at HRMC with their regular purchase data, reported the lowered costs to federal payers. Def.'s First S.J. Memo. (Doc. 430) at 50 (citing SOF ¶¶ 46–47; Rel. UMF ¶¶ 24–37; Atkins-Ray Dep. 82:11–17).

issue of malice and/or willful intent'" and mere errors did not suffice).  Where there is no evidence that supports a reasonable inference of willful, bad purpose intent, and instead just a complaint that attempts at compliance did not strictly comply, summary judgment should issue.

Second, Relator attempts to conjure a fact issue by speculating that because the discounts involved "paper" documents and "in person delivery," the Court should infer bad purpose.  The inference Relator seeks is both unreasonable and legally unsupported.  Even when viewed in the light most favorable to Relator, in person, paper transactions are commonplace and not evidence of unlawful intent.

Third, Relator also relies on uncited testimony from other sales representatives who he contends "knew what Wilson was asking for was illegal."  Rel.'s Resp. Mem. (Doc. 527) at 36.  As has been set forth previously, these representatives had *no actual knowledge* about the details of HRMC's purchase of Medtronic devices.  Def.'s Reply in Supp. of First S.J. Memo. (Doc. 464) at I, MDT SUFF 22.  Moreover, the record indisputably shows representatives (including Relator's own employees) did, in fact, offer discounts of the same type as were offered by Medtronic.  Dep. of J. Tebbe (Doc. 445-9) at 60:13–22, 61:4–62:8, 77:21–23; HRMC Mem. in Supp. of S.J. (Doc. 435-13), Ex. M (Aug. 7, 2019 Email from Miller to Wilson).

**B.  Relator Still Does Not (and Cannot) Provide Any Factual Evidence of Causation.**

Relator must also establish causation under both the AKS and the False Claims Act (FCA), because his claims are premised on alleged kickback violations.  By statute, in order to bring a claim for false claims based on kickbacks, Relator must prove that the claim includes "items or services *resulting from* a violation."  42 U.S.C. § 1320a-7b(g) (emphasis added).

i.  Relator Must Show But-For Causation For All Kickback-Based Claims.

Axiomatically, when Congress enacts a statute, the courts' job is to apply it. Yet Relator asks this Court to ignore direct Congressional direction and to allow him to pursue AKS-based false claims without meeting the causation requirement in 42 U.S.C. § 1320a-7b(g). In service of that end, Relator miscites *Hathaway*, 63 F.4th at 1053. But *Hathaway* expressly rejected the position Relator now urges.

Relator relies on a portion of the *Hathaway* decision that discusses AKS cases *prior* to 2010. As *Hathaway* explains, before 2010, Congress had not enacted any statutory tie between the AKS and FCA. As such, during that time, AKS claims typically were charged as "false certification" cases, which is a more generalized FCA theory relating to whether a Defendant falsely certified the quality or quantity of the "goods or services" being sold. The use of "false certification" for AKS cases changed in 2010, however, when Congress enacted an explicit FCA standard into 42 U.S.C. § 1320a-7b(g). As *Hathaway* itself explains, Congress (1) created a standard for AKS-based FCA cases that must be met, and (2) enacted an "unambiguously causal" requirement that items or service must "result from" the kickback—language long understood to mean but-for causation. *Id.* at 1053.[5]

Relator attempts to convince the Court to ignore the plain language, but-for causation requirement in 42 U.S.C. § 1320a-7b(g) because he cannot meet it. The Court should reject the invitation. It is telling that Relator's false certification argument does not cite a single case that

---

[5] Relator also echoes an argument made by the United States in *Hathaway*. *Compare* Rel.'s Resp. Mem. (Doc. 527) at 30 (questioning imposition of but-for causation as a causal requirement for civil liability, when it isn't a requirement for criminal liability) *with Hathaway*, 63 F.4th at 1054 (arguing that because "Congress did not require but-for causation in the [AKS] there's no reason why it would have done the same for a corresponding claim under the [FCA]"). As the Sixth Circuit explained, the statutory use of "the 'resulting from' language applies to all kinds of fraud claims without regard to whether the underlying claim has a causation component." Indeed, the United States deems many actions to be criminal which are not also civil violations. *Id.*

applied a false certification theory to *AKS violations* that occurred after 2010.  *See* Rel.'s Resp. Mem. (Doc. 527) at 24–26 (only recent cases cited are *United States v. Stevens-Henager Coll.*, 2:15-cv-00119-JNP-DAO (D. Utah June 6, 2024) (no allegations of kickbacks) and *Hathaway*, 63 F.4th 1043 (but-for causation applied)).

> ## ii.  Relator Offers No Evidence That Meets But For Causation.

Relator tries to avoid but-for causation because there is no evidence that HRMC submitted claims for items or bills that it would not have otherwise (*i.e.*, he cannot prove that the claims would not have been submitted "but for" the no-charge devices).  It is not enough to assert—as Relator does in his response—that the bulk discounts occurred between 2015 and 2020 and that claims to Medicare were submitted during that same time period.  *See* 42 U.S.C. § 1320a-7b(g); *United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 831 (8th Cir. 2022); *Hathaway*, 63 F.4th 1043.  The mere occurrence of these facts is not evidence of a causal connection at all, and certainly not evidence of "but for" causation.  Rather, the evidence shows that HRMC purchased the at-issue Medtronic devices because they were physician preferred, regardless of discount. *Supra* at 5; Def.'s First S.J. Memo. (Doc. 430); Def.'s Second S.J. Memo. (Doc. 516) at 5–6. HRMC's purchase data also verifies that, by Relator's own admission, 97% of the devices HRMC used were purchased, often at full price.  *See* Rel.'s Resp. Mem. (Doc. 527) at 6–7, ¶¶ 10–11.

Relator also urges this Court to reject but-for causation based on *Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019), which relies on a now-often-rejected *Greenfield* "taint theory" standard.  *But see United States v. Regeneron Pharms., Inc.*, 2023 WL 6296393, at *8–10 (D. Mass. Sept. 27, 2023).  Relator fails to inform the Court that the First Circuit currently has pending before it an interlocutory appeal raising the question of whether to overrule *Guilfoile* and adopt and apply the but-for causation standards adopted in *Cairns* and *Hathaway*.  *United States v. Teva*

*Pharmaceuticals USA, Inc.*, No. 23-8028 (1st Cir. Nov. 17, 2023).   Nonetheless, even under Relator's own taint theory, his claim fails because even *Greenfield* held that mere temporal proximity is not sufficient to prove taint.  *Greenfield*, 880 F.3d at 98.  Seven years in, Relator offers no evidence other than temporal proximity.

### iii.   Relator's Theory of False Certification Fails As A Matter of Law.

As discussed above, Relator's attempt to avoid the causation requirements in the AKS by shifting to false certification is legally erroneous.  Even if the law were as malleable as Relator claims, Relator has not created a record sufficient at summary judgment to support a false certification theory.  First, Relator does not even identified a theory of false certification.  *See, e.g.*, *United States ex rel. Polukoff v. St. Mark's Hosp.,* 895 F.3d 730, 741 (10th Cir. 2018) (Relator must distinguish between factually and legally false claims).  Relator also provides no evidence that HRMC submitted false claims or false certifications at all.  *Supra* at 3.  Nor does he cite evidence that Medtronic knowingly caused HRMC to do so, because both parties understood the transactions to be lawful.  *Supra* at I.A.  Finally, Relator provides no evidence of materiality—*i.e.*, that the United States has denied or would deny payment of the claims at issue because a product used was obtained in a bundled sale—and that too is fatal to his claim.  *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 190–96 (2016).

### C.  Relator Provides No Viable Connection Between His Allegation and the Damages Alleged.

Relator makes no real attempt to claim that the United States actually suffered damages.  Instead, Relator relies solely on the generic proposition that the government does not pay for claims tainted by "bribes," and from that concludes *all* claims with a Medtronic device are damages.  *See* Rel.'s Resp. Mem. (Doc. 527) at 39.  This is not a principled or legally defensible damages theory,

especially when it is undisputed that the United States received the goods it paid for and *does* pay for claims involving devices paid at a discount.  *Supra* at 7.

Moreover, Relator also makes no attempt to limit his scope of damages in a way that correlates (let alone causally connects) to his allegations.  As discussed *supra,* the no-charge devices he alleges are "bribes" comprise just 3% of all Medtronic devices used by HRMC between 2015 and 2020.[6]  He provides no evidence the United States was damaged by HRMC's use of the 97% of Medtronic devices Relator admits HRMC purchased lawfully, for which Relator now seeks to recover more than $47 million.

## II.   RELATOR'S ALLEGED IN-SERVICE KICKBACK CLAIMS AGAINST HRMC AND DOLE VA ALSO FAIL AS A MATTER OF LAW.

The following facts are undisputed.  Modest meals as part of in-service presentations are commonplace in healthcare settings, including at HRMC. Indeed, although Relator does not expressly concede his allegations as to HRMC in-service meals, Relator offers no legal defense to Defendants' arguments that the allegations fail as a matter of law.  Rel.'s Resp. Mem. (Doc. 527) at 20–24.  His failure to present an argument constitutes a waiver and, thus, also requires dismissal as a matter of law.  *Valdez v. Macdonald*, 66 F.4th 796, 819 (10th Cir. 2023) (affirming that where party "did not make this argument in its summary judgment motion," the argument was "forfeited . . . in district court").

Relator's abandonment of the HRMC in-service meal claim is also quite telling, given the similarity in purpose, frequency, and value of the in-service meals to those provided at Dole VA.  Indeed, it is undisputed that like HRMC, employees from the Dole VA accepted meals from

---

[6] Relator also does not bother to determine the scope of claims even potentially associated with the 3% of devices alleged to have been "free."  Medtronic's expert was able to reach a statistically valid estimate however and explains that—at most—those devices would have been involved in approximately $600,000 in claims.  *See* Bates Expert Report (Doc. 516-3) at 18–20.

company representatives, and they are not the only VA in the country to do so.  At the Dole VA, modest meals were accepted in various departments around the hospital. The representatives providing meals worked for numerous companies—including Boston Scientific, Abbott, and others.   Just as with HRMC, it is also undisputed that the meals provided by Medtronic representatives were modest in price and within industry standards.   Relator's parade of unconnected and unproven horribles, all of which he speculates relate to occasional $10 meals, do not save his claim.

**A.  The AKS Is the Same Standard Regardless of Recipient and Modest Meals Are Permitted.**

In his opposition, Relator continues to try to rest his Dole VA claim on the Executive Branch Ethics Standards.  But Relator identifies no legal basis to enforce the standards through the AKS or the FCA.  *Escobar*, 579 U.S. at 194 (the FCA is not "'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations" (internal citation omitted)).  He also does not, and cannot, dispute that the ethics regulations do not apply to non-VA persons or entities.  Relator cannot dispute that the meals of $10 to $12 per person fall within the regulatory advice on what is permissible within the industry for medical professionals. This is a relevant and material fact, and it is undisputed.  For these reasons, Relator's claim fails.

**B.  Relator Offers No Evidence of a Knowing or Willful Violation at Dole VA.**

In an effort to create a fact issue on scienter, Relator implies that Medtronic employees servicing Dole VA—Winger, Davisson, and Kirk—knew or should have known the Dole VA did not permit meals.  Relator's assertions are carefully couched, however, because he does not and cannot offer a single record citation to support the assertion.  To the contrary, the undisputed evidence shows Medtronic's employees had every reason to believe their actions were permitted and lawful.  *See* Def.'s Second S.J. Memo. (Doc. 516) at 19–24.  Relator also tries to create a fact

issue by citing after-the-fact opinions held by himself and his employee-collaborator, Todd Brown. This also does not create a material issue of fact, as it has no bearing on *Defendants' mens rea.*

**C. Relator's Theory of Causation Relies on Hyperbole to Hide Significant Evidentiary Gaps.**

Unlike his HRMC claim, Relator does not try to identify any certification or claim made by Medtronic to the VA that was false. Even by Relator's own admission, therefore, he must establish causation under 42 U.S.C. § 1320a-7b(g), and this requires him to provide record evidence that Medtronic submitted claims for items and services it would not have *but for* the at-issue meals. Relator cannot do so. As set forth in Defendants' prior memorandum, it was WRG physicians who made all decisions about use of products for patients and those physicians are not alleged to have received kickbacks.

To avoid this fact, Relator argues (without citation) that Brinkley "decided what devices were purchased and in what quantity," or "[a]t the very least, she 'recommended' these devices." Rel.'s Resp. Mem. (Doc. 527) at 42. The record, however, says otherwise: witnesses in the lab—including those whose testimony Relator himself relies on—provide unrebutted testimony that device use *was* driven by WRG physicians, not Brinkley. Def.'s Second S.J. Memo. (Doc. 516) at 10–13. As such Relator does not, in fact, provide any record evidence that Brinkley controlled all device selection, for four different physicians, from 2011 to 2018. His causation and damages arguments fail as a result.

**III.   CONSPIRACY REQUIRES MORE THAN AN ALLEGATION A KICKBACK OCCURRED.**

Relator appears to presume that a claim of conspiracy can be maintained in any case in which a kickback is alleged. This is not true. Conspiracy requires proof of an actual *agreement* between two parties to commit fraud. *See, e.g.*, *U.S. ex rel. Connor v. Salina Regional Health*

*Center, Inc.*, 459 F. Supp. 2d 1081, 1091 (D. Kan. 2006); *U.S. ex rel. Graves v. ITT Educational*

*Svcs, Inc.*, 284 F. Supp. 2d 487, 509–10 (S.D. Tex. 2003) (dismissing conspiracy claim as a matter

of law because the "essence of a conspiracy under the [FCA] is an agreement between two or more

persons to commit a fraud" (internal citations omitted)).  Relator has provided no evidence of any

agreement between Medtronic and any other party to act in an unlawful manner.  In fact, the only

agreements Relator has identified in the record are agreements to sell products, and those

agreements expressly disclaim any such intent.  *Graves*, 284 F. Supp. 2d at 509 (quoting *United*

*States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, No. 94-cv-7316, 2000 WL 1207162, at

*12 (E.D. Pa. Aug. 24, 2000) ("[A]n 'agreement to act lawfully' is 'not an actionable claim for an

FCA conspiracy.'")); *supra* at Rel. 3 (showing agreement that product discounts *comply* with

federal law).  Relator's conspiracy claims—like his prior overexaggerated allegations—have no

basis in fact.

## CONCLUSION

After more than seven years of pending litigation, Relator has failed to identify evidence

to support his allegations that Defendants violated the Anti-Kickback Statute or the False Claims

Act.  As such, Defendants Medtronic, Inc. and Covidien, L.P. ask the Court to dismiss Relator's

kickback-based claims.


Dated:  July 22, 2024                              Respectfully submitted,

                                                  *s/ Robert J. McCully*
                                                  Robert J. McCully (KS #12433)
                                                  Rebecca M. Gosch *(admitted pro hac vice)*
                                                  **SHOOK, HARDY & BACON L.L.P.**
                                                  2555 Grand Blvd.
                                                  Kansas City, MO 64108
                                                  Phone:  (816) 474-6550
                                                  Fax : (816) 421-5547

Email: rmccully@shb.com
Email: rgosch@shb.com

*s/ Alethea M. Huyser*

Joseph T. Dixon, III *(admitted pro hac vice)*
Alethea M. Huyser *(admitted pro hac vice)*
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN  55402-4400
T 612.492.7000
jdixon@fredlaw.com
ahuyser@fredlaw.com

***Attorneys for Defendants***
***Medtronic, Inc. and Covidien, L.P.***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF attorneys of record.

SHOOK, HARDY & BACON L.L.P.

*s/ Robert J. McCully*
Robert J. McCully (KS #12433)

17