IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* THOMAS SCHROEDER,<br><br>          *Plaintiff,*<br><br>    v.<br><br>MEDTRONIC, INC., COVIDIEN, L.P.<br>HUTCHINSON REGIONAL<br>MEDICAL CENTER, and WICHITA<br>RADIOLOGICAL GROUP, P.A.,<br><br>        *Defendants.* | Civil Action File No.:<br><br>2:17-cv-02060-DDC-BGS |

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

The United States of America (the "Government" or "United States") respectfully submits this statement of interest in connection with the pending motion for partial summary judgment filed by Medtronic, Inc. and Covidien, L.P. ("Defendants"). Dkt. 516.[1]  Defendants have misstated the applicable law of the False Claims Act (FCA), 31 U.S.C. §§ 3729-33, and the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b in at least four ways.  First, contrary to Defendants' attempt to decouple the AKS's legal requirements from those of the FCA, *see* Dkt. 516 at 55-56, this Court

---

[1] The FCA permits private "Relators" to bring suit to redress fraud against the United States and to seek a recovery on behalf of the United States. Although the United States declined to intervene in this action and take over the prosecution of the case, the United States retains an interest in its outcome, as it will be the principal beneficiary should Relator prevail. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). Moreover, because the FCA is the Government's principal tool to combat fraud and recover losses involving federal funds, and because the majority of successful actions under the FCA are prosecuted by the Department of Justice, the United States has a substantial interest in the proper interpretation and application of the FCA. In addition, the United States also has a strong interest in the proper interpretation of other federal laws governing healthcare providers, including the AKS.

has previously ruled that a violation of the AKS is a false or fraudulent claim that " generally speaking . . . triggers FCA liability." *See United States v. Medtronic, Inc.*, 2021 WL 4168140, at *4 (D. Kan. Sept. 14, 2021) (citing 42 U.S.C. § 1320a-7b(g), as amended by the Patient Protection and Affordable Care Act, Pub. L. No. 1110148, 124 Stat. 119 (2010), and *Guilfoile v. Shields*, 913 F.3d 178, 189 ((1st Cir. 2019)).[2] Second, the Tenth Circuit adheres to the "one purpose" test for AKS violations, *i.e.,* a violation may be shown so long as any one purpose of the remuneration is to induce referral(s) to a provider. The AKS does not require remuneration to be the sole or primary purpose of a referral. *See United States v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000). Third, this Court has previously determined that the AKS requires a sufficient causal link between the alleged kickback scheme and the submission of false or fraudulent claims, but that the AKS does not require but-for causation. *See Medtronic,* 2021 WL 4168140, at *23-24 (defendants ask "the court to require a causal link [but-for causation] that's not found in the pertinent statutes) (citing *United States ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 100 (3d Cir. 2018) and 42 U.S.C. § 1320a-7b(g)). Fourth, it is well settled that, for FCA claims based on violations of the AKS, single damages equal the full amount paid for the claims and are not determined by a benefit-of-the-bargain test. That is because kickbacks corrupt provider decision-making and, as a result, Medicare and Medicaid condition payment on claims for reimbursement not being tainted by kickbacks. The United States defers to this Court as to whether Relator has adduced sufficient evidence to satisfy the correct AKS and FCA standards.

---

[2] In *Guilfoile*, the First Circuit made clear that "in light of § 1320a-7b(g), '[a]n AKS violation that results in a federal health care payment is a *per se* false claim.'" 913 F.3d at 190 (quoting *United States ex rel. Lutz v. United States*, 853 F.3d 131, 135 (4th Cir. 2017)).

I.   **A violation of the Anti-Kickback Statute is a violation of the False Claims Act.**

Defendants argue that in addition to having to prove each element of the AKS, the Relator

must prove that any violation of the AKS violated the FCA, including the elements, of *scienter*,

materiality, and falsity.  *See* Dkt. 516 at 55-56.  That is incorrect.  As this Court has explained,

AKS violations are *per se* false or fraudulent claims.  *See Medtronic, Inc.*, 2021 WL 4168140, at

\*4.  AKS violations are also material by their very nature because Medicare and Medicaid

condition payment on claims untainted by kickbacks, which inherently corrupt medical decision-

making, and FCA claims based on the AKS do not require but-for causation.  *See* Section III *infra*.

The AKS provision relevant here prohibits kickbacks meant "to induce" a provider "to

purchase, lease, order … or recommend purchasing, leasing, or ordering any … item"

reimbursable by "a Federal health care program."  42 U.S.C. § 1320a- 7b(b)(2).  The AKS

further prohibits kickbacks meant "to induce" referrals "for the furnishing of any item or

service" reimbursable by "a Federal health care program," *id.*, and the solicitation or receipt of

kickbacks "in return for" referrals or the provision of federally reimbursable items and services.

*See* § 1320a-7b(b)(1).

Based on the AKS's plain language, Congress chose to forbid not only kickbacks

themselves, but even the offer or solicitation of kickbacks, recognizing that financial conflicts

inherently corrupt medical decision-making.  *See, e.g., United States ex rel. Wilkins v. United*

*Health Group, Inc.*, 659 F.3d 295, 314 (3d Cir. 2011) ("the Government does not get what it

bargained for when" it pays a claim for items or services "tainted by a kickback"), *abrogated*

*on other grounds, Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176

(2016); *McNutt ex rel. United States v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256,

3

1259-60 (11th Cir. 2005) (same).  "'[T]he medical needs of a particular patient can be highly judgmental,'" *Greenfield*, 880 F.3d at 96, and doctors and other providers themselves may not know whether they would have treated a particular patient differently had they not been operating under a financial conflict of interest.  When a kickback is received, it is impossible to trust that the provider is making *any* medical decision with the patient's best interests in mind rather than the provider's own financial interests.  That is the main reason why Congress chose to forbid *any* remuneration inducing patient referrals.  *See id.* (discussing H.R. Rep. No. 95-393 (1977)).

As the statutory text and context make clear, the AKS does not require that a kickback be successful—*i.e.*, that it actually causes a provider to take the actions that the payor sought "to induce"—for the kickback to be illegal.   *See, e.g.*, *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 665 (S.D. Tex. 2013) ("The AKS's plain language … makes it unlawful for a defendant to pay a kickback with the intent to induce a referral, whether or not a particular referral results."), *aff'd sub nom. United States ex rel. Parikh v. Brown*, 587 F. App'x 123 (5th Cir. 2014); *United States ex rel. Witkin v. Medtronic, Inc.*, 2024 WL 1892405, at *20 (D. Mass. Mar. 31, 2024) (similar).  Nor did Congress create an exception for *de minimis* kickbacks—the driving factor instead was prohibiting inducements for referrals.  *See* 42 U.S.C. § 1320a-7b (no *de minimis* exception in AKS); *see also United States ex rel. Gohil v. Sanofi U.S. Servs., Inc.*, 500 F. Supp .3d 345, 359 (E.D. Pa. 2020) ("Courts generally interpret the term remuneration expansively to include anything of value in any form whatsoever.") (quotation and citations omitted).

4

Due to its importance in protecting patients, compliance with the AKS "is a precondition" of reimbursement from federal healthcare programs like Medicare and Medicaid. *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 393 (1st Cir. 2011); *see also United States ex rel. Westmoreland v. Amgen, Inc.*, 812 F. Supp. 2d 39, 54 (D. Mass. 2011) (collecting cases for the proposition that "courts, without exception, agree that compliance with the [AKS] is a precondition of Medicare payment"). For that reason, courts recognized prior to enactment of the 2010 FCA amendments that a violation of the AKS could give rise to FCA liability. Those decisions rested on the understanding that a claim is fraudulent when it falsely certifies compliance with a material condition of payment. *See Hutcheson*, 647 F.3d at 392-394; *Wilkins*, 659 F.3d at 313-314; *McNutt*, 423 F.3d at 1259-1260.

To establish FCA falsity based on AKS violations under a false-certification theory, a relator need not show that the claimed items or services would not have been provided. It is sufficient to show that a claim expressly or impliedly represented compliance with the AKS, that the representation was material, and that it was false because the claimed items or services were among those that the kickback was given to induce.

In *Hutcheson*, for example, the Relator alleged that a manufacturer had "engaged in a nationwide kickback scheme to induce physicians to use its medical devices in spinal surgeries and that [the manufacturer] knew this scheme would cause physicians and hospitals (unwittingly) to present federal healthcare programs with payment claims that contained material misrepresentations" of compliance with the AKS. *Hutcheson*, 647 F.3d at 378 (parenthetical in original). The district court held that the complaint "state[d] a claim under the FCA that the hospital and physician claims for payment … were materially false or

5

fraudulent" because they misrepresented compliance with the AKS. *Id.* at 379.   From that conclusion, the court further held, "[i]t follows that [the Relator had] stated a claim that [the manufacturer] knowingly caused the submission of materially false or fraudulent claims." *Id.* at 379-380.  The court reached that holding without any discussion of whether the physicians targeted by the kickback scheme might have used the manufacturer's devices absent the kickbacks.  Even without an express false certification, a provider is liable under the FCA's implied-false-certification theory where it "makes specific representations about the goods or services provided" but "fail[s] to disclose noncompliance with material statutory, regulatory, or contractual requirements" in a way that "makes those representations misleading half-truths." *Escobar*, 579 U.S. at 190.

In 2010, Congress amended the AKS to add an additional way of establishing FCA liability for AKS violations besides express and implied false certifications.  The amendment, codified at 42 U.S.C. § 1320a-7b(g), states that "[i]n addition to" the AKS's criminal penalties and related civil remedies, *see* 42 U.S.C. § 1320a-7a, any "claim that includes items or services resulting from a violation of this section *constitutes a* false or fraudulent claim for purposes of" the FCA. *Id.* (emphasis added).  A sponsor of the amendment explained that it was meant to "strengthen[] whistle-blower actions based on medical care kickbacks."  155 Cong. Rec. S10,853 (daily ed. Oct. 28, 2009) (Sen. Kaufman).  The amendment would make clear, the sponsor explained, "that all claims *resulting from* illegal kickbacks are 'false or fraudulent,' even when the claims are not submitted directly by the wrongdoers themselves." *Id.* (emphasis added); *see also id.* at S10,854 (Sen. Leahy making the same point); *United States ex rel. Kester v. Novartis Pharm. Corp.*, 41 F. Supp. 3d 323, 333-335 (S.D.N.Y. 2014) (discussing this legislative history).

6

In enacting § 1320a-7b(g) in 2010, against the backdrop of cases recognizing the FCA false-certification theories, Congress offered another pathway to establish FCA liability for AKS violations. But § 1320a-7b(g) did not eliminate the long-standing false certification liability. Defendants attempt to make that incorrect inference by claiming, with careful wordsmithing, "[i]t is telling that Relator's false certification argument does not cite a single case that applied a false certification theory to AKS violations that occurred after 2010." Dkt. 534 at 9-10 (focusing on relator's citations rather than on whether or not FCA cases relied on false certifications to establish FCA liability for AKS violations taking place after the 2010 amendments). Regardless of the authorities cited by Relator, there is no question that courts have repeatedly affirmed the validity of the  false certification theory for AKS violations occurring after 2010. *See, e.g.*, *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc*., 2024 WL 489708 ** 9-10 (D. Minn. Feb. 8, 2024) (sufficient evidence supported jury's finding that false certifications of AKS compliance by ophthalmologists between 2006 and 2015 were material misstatements violating the FCA)[3]; *U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 41 F. Supp. 3d 323, 328-35 (S.D.N.Y. 2014) (including discussion entitled "The 2010 AKS Amendment Did Not Supersede the FCA False Certification Theory of Claim 'Falsity'" in affirming validity of false certification theory for alleged AKS violations occurring before and after 2010)

The § 1320a-7b(g) amendment eliminates the need to prove the materiality of a false representation of AKS compliance, as is required under a false-certification theory. *See*

---

[3] The 2006-15 kickback timeframe is set forth in *U.S. ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc*., 2018 WL 11451362 *1 (D. Minn. Oct. 22, 2018).

*Escobar*, 579 U.S. at 181.  Instead, the amendment creates a *per se* rule of falsity or fraud "obviating the need for a plaintiff to plead materiality."  *See Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019) (§ 1320a-7b(g)'s "use of the term 'constitutes' would be meaningless if courts had to engage in a materiality analysis").  And it makes clear that an AKS violation renders false or fraudulent any claim for the items or services that the kickback was given to induce, regardless of who submits the claim.  The amendment thus abrogated a then-recent decision, *United States ex rel. Thomas v. Bailey*, 2008 WL 4853630 (E.D. Ark. Nov. 6, 2008), that had concluded a hospital's reimbursement claims for surgeries were not false, even though a manufacturer had violated the AKS by paying a surgeon to use its products in those surgeries, because the hospital had not itself violated the AKS or been aware of the violation.  *See* 155 Cong. Rec. S10,853; *United States ex rel. Kester v. Novartis Pharm. Corp.*, 41 F. Supp. 3d 323, 333-335 (S.D.N.Y. 2014).

Nothing in the text or context of § 1320a-7b(g) suggests that a claim can be considered to "include[] items or services resulting from a violation of [the AKS]" only if those items or services would not have been provided but for the violation, when such a showing is irrelevant under the false-certification caselaw predating § 1320a-7b(g).  If kickbacks are given with the purpose required by the AKS—as relevant here, if they are given to induce the purchase of particular medical items or services—and if the intended purchases come to pass, then it is clear from the text and context of § 1320a-7b(g) that claims seeking reimbursement from a federal healthcare program for those purchases "include[] items or services resulting from a violation of [the AKS]." 42 U.S.C. § 1320a-7b(g).  *See also* Section III infra for additional analysis of but-for causation.

In sum, this Court correctly stated in its decision denying, in part, the Defendants motion to dismiss the Relator's allegations: "generally speaking—look first to the AKS for an alleged violation, which in turn triggers FCA liability." *Medtronic*, 2021 WL 4168140, at *4. If the Defendants violated the AKS, then they violated the FCA. The Relator need only prove FCA elements.

## II.   Defendants violated the AKS if *any one* purpose of the remuneration is to induce referrals.

Defendants contend that the inducement of referrals must be the *primary* or *substantial* purpose of any remuneration. *See* Dkt. 516 at 53. However, the Tenth Circuit has rejected the "primary purpose" standard and instead adopted the "one purpose" test. *McClatchey*, 217 F.3d at 853 ("[A] person who offers or pays remuneration to another person violates the [AKS] so long as *one purpose* of the offer or payment is to induce Medicare or Medicaid patient referrals.") (emphasis added)); *see also United States v. LaHue*, 261 F.3d 993, 1003-04 (10th Cir. 2001) (reaffirming *McClatchey*'s one-purpose test). A party thus violates the AKS if *any one purpose* of the renumeration sought is to induce referrals from a federal healthcare program.

The "only three Circuits to have decided this issue have all adopted the 'one purpose' test." *McClatchey*, 217 F.3d at 835 (citing *U.S. v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998)); *U.S. v. Kats*, 871 F.2d 105, 108 (9th Cir. 1989); *U.S. v. Greber*, 760 F.2d 68, 71–72 (3d Cir. 1985)). This includes the Tenth Circuit. The "one purpose" test is consistent with Congress's intent to "deter the growing problem of fraud and abuse in the system" when it amended the AKS in 1977. *McClatchey*, 217 F.3d at 835 (citing *Greber*, 760 F.2d at 70-71) (quotations omitted); *see also*

9

*United States ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1271 (N.D. Ga. 2021) ("[A]n AKS violation exists if one purpose of the remuneration was to induce Medicare purchases, even if other legitimate purposes for the remuneration existed." (citation omitted)); *U.S. v. Medtronic, Inc.*, 2017 WL 2653568, at *5 (E.D. Pa. June 19, 2017) (holding that a Relator must allege a purpose to induce referrals, rather than relying on the scheme's effect).

Defendants argue that "acts taken to generate mere goodwill or hope" without any specific expectation to induce do not violate the AKS. Dkt. 516 at 53-54 (citing *U.S. ex rel. Everest Principals, LLC v. Abbott Lab'ys, Inc.*, 622 F. Supp. 3d 920, 932 (S.D. Cal. 2022)). While that may sometimes be true depending on the facts, Defendants ignore that court's complete reasoning. The defendant in *Everest Principals* argued that it is routine industry practice to provide meals to doctors as part of a business meeting and that it would not be anything more than a "token gesture" of goodwill. *Everest Principals*, 622 F. Supp. 3d at 932 (citation omitted). In response, the court denied the defendants' motion to dismiss that relator's FCA claims, holding that it was "equally plausible" that the defendant hosted meals for the doctors to "help grow [their] practice area; not simply as a token of goodwill or to educate certain doctors." *Everest Principals*, 622 F. Supp. 3d at 932, 935. If meals are offered to providers both as a token of goodwill *and* to induce patient referrals, then those meals constitute a prohibited inducement under the AKS. *See id.*, at 932-33. Any other inducements offered for referrals similarly violate the AKS regardless of whether a legitimate purpose also exists.

## III. The AKS does not require but-for causation.

Defendants claim that the Relator must "show that the violation of the AKS was the 'but-for' cause of a false claim." Dkt. 516 at 56. However, this Court has already rejected

defendants' arguments concerning "but-for" causation. *Medtronic*, 2021 WL 4168140 at **23-24. This Court explained that the phrase "resulting from" in the AKS "suggest[s] a connection between violating the AKS and submitting a false claim . . . . [but it] does not expressly summon a but-for causation standard," and that the defendant's argument for "but-for" causation "require[s] a causal link that's not found in the pertinent statutes." *Id.* (citing *Greenfield*, 880 F.3d at 97-98 and 42 U.S.C. § 1320a-7b(g)).

In *Greenfield*, the Third Circuit ruled that the AKS requires a sufficient causal link between the alleged kickback scheme and submission of false claims. *See* 880 F.3d at 97-98. The AKS, however, does not require a plaintiff "to show that a kickback directly influenced a patient's decision to use a particular medical provider." *Id.* While mere "temporal proximity between [the] alleged kickback plot and the submission of claims for reimbursement" is not enough for the claims to be considered false, the Third Circuit rejected the defendants' argument that an FCA plaintiff had to show that the claimed items or services would not have been provided but for the AKS violation. *Id.* at 95-98. Rather, the Third Circuit adopted the Government's position that "'if a medical service provider pays kickbacks to a doctor to induce referrals and then submits claims to Medicare for services it provided to patients who were referred by that doctor, the claims are false.'" *Id.* at 98 (citation omitted). That is true "'regardless of whether the doctor would have referred the patients absent the kickbacks … and regardless of whether the patients would have chosen the service provider absent the referral.'" *Id.* (citations omitted).

Numerous other courts have similarly adopted this interpretation of § 1320a-7b(g). *See Guilfoile*, 913 F.3d at 190; *U.S. ex rel. Witkin v. Medtronic, Inc.,* 2024 WL 1892405, at *14, *18-

19 (D. Mass. Mar. 31, 2024); *U.S. ex rel. Fitzer v. Allergan, Inc.*, 2022 WL 3599139, at *9 (D.

Md. Aug. 23, 2022); *Kuzma v. Northern Ariz. Healthcare Corp.*, 607 F. Supp. 3d 942, 956-57

(D. Ariz. 2022); *U.S. v. Teva Pharm. USA, Inc.*, 2019 WL 1245656, at *24, *27 (S.D.N.Y. Feb.

27, 2019); *U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 41 F. Supp. 3d 323, 331-35

(S.D.N.Y. 2014).

Defendants' but-for causation argument rests on the premise that 42 U.S.C. § 1320a-

7b(g) makes it more difficult to prove FCA claims based on AKS violations than the preexisting

false-certification cases that found AKS violations gave rise to FCA liability.  In other words, in

Defendants' view, items or services can be considered to "result[] from" an AKS violation, such

that a claim for them is false under § 1320a-7b(g), only if they would not have been purchased

or provided but for the AKS violation.  Splitting from *Greenfield* and *Guilfoile*, the Sixth and

Eighth Circuits adopted that conclusion.  *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043

(6th Cir. 2023), *cert. denied*, 144 S. Ct. 224 (2023); *United States ex rel. Cairns v. D.S. Med.

LLC*, 42 F.4th 828 (8th Cir. 2022).  The Seventh Circuit a few months ago declined to take a

side in the circuit split. *See Stop Illinois Health Care Fraud, LLC v. Sayeed*, 100 F.4th 899, 909

(7th Cir. May 2, 2024).

The Sixth and Eighth Circuits based their reasoning on the Supreme Court's holding in

*Burrage v. United States*, 571 U.S. 204 (2014),[4] that the phrase "'[r]esults from' imposes … a

requirement of actual causality" (*i.e.*, causation in fact) and that, "[i]n the usual course,"

causation in fact means that a given outcome "would not have occurred in the absence of—that

---

[4] *Burrage* has nothing to do with the civil FCA statute, but instead addresses the criminal
Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. 841(a)(1), (b)(1)(C).

is, but for"—a given event.  *Id.* at 211 (quotation marks omitted); *see Martin*, 63 F.4th at 1052-1053; *Cairns*, 42 F.4th at 834-835.  *But see Fesenmaier*, 2024 WL 489708 *3 (ruling *Cairns* but-for causation holding inapplicable to FCA claims of falsely certifying AKS compliance).

Crucially, however, the Supreme Court recognized—during the same Term that it decided *Burrage*—that the "but-for test" is nothing more than a "default" standard of causation in fact.  *Paroline v. United States*, 572 U.S. 434, 458 (2014).  Other options exist, and "the availability of alternative causal standards where circumstances warrant is, no less than the but-for test itself as a default, part of the background legal tradition against which Congress has legislated."  *Id.  Burrage* itself explained that courts properly "read phrases like 'results from' to require but-for causality" only if "there is no textual or contextual indication to the contrary." 571 U.S. at 212.  Otherwise, "circumstances" may "warrant" an "alternative causal standard[]." *Paroline*, 572 U.S. at 458.

The Sixth and Eighth Circuits engaged in no meaningful analysis of whether there is a "textual or contextual indication," *Burrage*, 571 U.S. at 212, that but-for causation is not the appropriate standard under 42 U.S.C. § 1320a-7b(g).  Both courts treated the phrase "resulting from" as virtually dispositive, even though—as *Burrage* and *Paroline* explain— that phrase connotes only a potential requirement of causation under the appropriate textual and contextual circumstances.  *See also Fitzer*, 2022 WL 3599139, at *10 (noting the Eighth Circuit's failure to address the "contextual indications" that a standard other than but-for causation applies under § 1320a-7b(g)).  The Sixth and Eighth Circuits' reasoning flouts not only *Burrage* and *Paroline* but the broader principle that "statutory provisions must be interpreted by reference to the structure and context of the broader statutory scheme in which

they reside." *United States v. Saemisch*, 70 F.4th 1, 7 (1st Cir. 2023); *see also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 753-754 (2023) (applying this principle to the FCA).

Had the Sixth and Eighth Circuits more rigorously engaged with the analysis prescribed by *Burrage* and *Paroline*, they could not properly have concluded that § 1320a-7b(g)'s "resulting from" language requires a showing of but-for causation. It is far more consistent with § 1320a-7b's text and context to read the "resulting from" language as prescribing the same type of nexus requirement adopted by *Greenfield* that has been embraced by numerous district courts including this one. *See supra* at 2.

Starting with statutory text and structure, as discussed above, the AKS identifies what Congress regards as a problematic nexus between a kickback and a medical decision. The AKS specifies, as relevant here, that kickbacks are unlawful when given "to induce" the purchase of particular items or services. 42 U.S.C. § 1320a-7b(b)(2). As its "plain language" makes clear, the AKS does not limit liability to situations where the desired outcome of the kickbacks actually materializes, much less to situations where the kickback is the but-for cause of the outcome. *Parikh*, 977 F. Supp. 2d at 665. Such a limitation would be inconsistent with the AKS's animating principle that financial conflicts of interest in themselves corrupt medical decision-making.

When Congress enacted § 1320a-7b(g) as an amendment to the AKS, it thus built on a statutory scheme under which the propriety of particular payments turns on the presence or absence of a specified nexus between those payments and the provision of federally reimbursable items or services—namely, on whether the payments were given to induce the

provision of the items or services.   Section 1320a-7b(g)'s presence within a statute that requires a specified link between a kickback and a given outcome but does *not* require a showing of but-for causation, strongly suggests that the provision's "resulting from" language likewise does not require a showing of but-for causation.  Rather, the natural inference from the text and structure of § 1320a-7b is that the nexus requirement of the AKS's substantive prohibition—the prohibition of kickbacks meant "to induce" a given outcome, § 1320a-7b(b)(2)—carries over into the amended provision, § 1320a-7b(g), making clear the FCA falsity of claims tainted by kickbacks.  If the claimed items or services are those that the kickback was given to induce, then the statutory text and context make clear that the claim "includes items or services resulting from" the kickback within the meaning of § 1320-7b(g).

Other "contextual" factors, *Burrage*, 571 U.S. at 212, bolster the inference from statutory text and structure that the "resulting from" language should not be read to require a showing of but-for causation.  First, there is no basis to believe that Congress—having imposed *criminal* liability for kickbacks without requiring a showing that the kickbacks actually changed medical decision-making—meant to require that heightened showing to impose civil liability under the FCA for claims rendered false by AKS violations.  *See Greenfield*, 880 F.3d at 96; *Witkin*, 2024 WL 1892405, at *18; *Fitzer*, 2022 WL 3599139, at *10.

Second, the legislative history of § 1320a-7b(g) is devastating to the interpretation adopted in *Cairns* and *Martin*.  As the First Circuit recognized in *Guilfoile*, Congress meant to make it *easier* to prove "whistleblower actions based on medical care kickbacks," including by simplifying the proof required under the "long-standing" false-certification case law.  913 F.3d

at 190-191 (quotation omitted).  It is flatly inconsistent with that objective to require plaintiffs to establish that claimed items or services would not have been purchased but for a kickback.  *See Witkin*, 2024 WL 1892405, at *18 & n.32; *Fitzer*, 2022 WL 3599139, at *10; *Kester*, 41 F. Supp. 3d at 332-333.  As discussed above, a showing of but-for causation is not required to prove false-certification liability because it has nothing to do with whether a claimant's representation of compliance with the AKS is false.  *See supra* at 4-5.  Congress would not have added an onerous element of proof, like but-for causation, in legislation meant to expand FCA liability based on AKS violations.  Courts "should not lightly conclude that Congress enacted a self-defeating statute."  *Pugin v. Garland*, 599 U.S. 600, 607 (2023) (quotation omitted).

The Sixth Circuit indicated that it would be improper to "consider legislative history in construing a statute with criminal applications."  *Martin*, 63 F.4th at 1054.  But the Sixth Circuit was incorrect to characterize § 1320a-7b(g) as "a statute with criminal applications."  The AKS's substantive prohibition against kickbacks, 42 U.S.C. § 1320a- 7b(b), imposes criminal liability—but § 1320a-7b(g) simply specifies that certain claims are "false or fraudulent … for purposes of" the FCA, which imposes solely civil liability. The interpretation of  § 1320a-7b(g)'s "resulting from" language has no criminal-law consequences whatsoever.

In any event, although courts do not generally look to legislative history where statutory text is clear—whether in the criminal-law context or in any other—this is not a case where legislative history and other contextual indicators of statutory meaning stand in tension with the statutory text. As discussed above, § 1320a-7b(g) is one of those provisions for which "circumstances warrant" an "alternative" to the "default" but-for standard of causation.  *Paroline*, 572 U.S. at 458.  The standard adopted by *Greenfield* is a far more natural

interpretation of "resulting from."   Under that standard, when kickbacks are given "to induce" the purchase of items or services, 42 U.S.C. § 1320a-7b(b)(2), a claim for reimbursement "includes items or services resulting from" the kickback, § 1320a-7b(g).  By contrast, under a but-for standard, "a physician could accept cash bribes from a company" meant to induce prescriptions of the company's product "but could avoid fault under the FCA if the physician claimed that he or she would have prescribed the company's product for other reasons too." *Witkin*, 2024 WL 1892405, at *18 n.32.  There is no basis to believe that Congress intended such a result.

## IV.     Damages include all claims tainted by the kickback scheme.

Defendant argues that relator has failed to adduce evidence of damages because "[d]amages are 'the difference in the market value of the [goods] received and retained and the market value that the [goods] would have had if they had been of the specified quality[,].'"  Dkt. 516 at 64-65.  However, the benefit-of-the-bargain measure cited by Defendants typically applies in defective goods and services cases.  That measure of damages is inapplicable in AKS cases brought under the FCA because Medicare and Medicaid bargain and condition payment for claims untainted by kickbacks.  *See* cases cited *infra* at 18-19.

Unsurprisingly, the cases cited by Defendant are almost all defective goods and services cases.  *See, e.g.*, *United States v. Bornstein*, 423 U.S. 303 (1976) (substandard radio kit parts); *United States ex rel. Concilio De Salud Integral De Loiza, Inc. v. J.C. Remodeling, Inc.*, 962 F. 3d 34 (1st Cir. 2020) (defective roof waterproofing); *United States ex rel. Davis v. District of Columbia*, 679 F. 3d 832 (D.C. Cir. 2012) (defective cost reports); *United States v. Coop. Grain & Supply Co.*, 476 F. 2d 47 (8th Cir. 1973) (false claims for purchased rather than produced

grain); *United States ex rel. Wall v. Circle C Constr., LLC*, 813 F. 3d 616 (6th Cir. 2016)

(underpayments to workers under Davis-Bacon Act); *United States ex rel. Hendrix v. J-M Mfg.*

*Co., Inc.*, 76 F. 4th 1164 (9th Cir. 2023) (defective sewer pipes).

The sole AKS case cited by Defendants, *United States ex rel. Stop Illinois Healthcare*

*Fraud, LLC v. Sayeed*, 100 F. 4th 899, 909 (7th Cir. 2024), involved referrals from a non-

governmental organization that received kickbacks from a home health provider for a subset of

those referrals, with some other referrals untainted by kickbacks.  *See id*. at 909.  Contrary to

Defendant's contention, the Seventh Circuit *did not hold* that the subset of claims involving

kickbacks are subject to setoffs for value provided.  Rather, the Seventh Circuit remanded the

case because it was "not able to determine with any confidence" the part of the plaintiff's

damages included claims for lawfully referred patients, which claims, of course, would not be

tainted by kickbacks and not subject to damages.  *Id.*

In FCA cases based on AKS violations, it is well settled that damages are the dollar

amount of all claims tainted by kickbacks.  When the Government agrees to reimburse a medical

provider, it is bargaining for care untainted by conflicts of interest such as the inherent corrupting

influence of remuneration for referrals that make it impossible to sort out if a provider is acting

in the best interests of the pocketbook or the patient.  Thus, "'when a defendant is paid by

[Medicare or Medicaid] for services tainted by a kickback,'" the government "'does not get what

it bargained for.'"  *Wilkins*, 659 F.3d at 314.

In *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008)—an FCA case involving

reimbursement claims rendered false or fraudulent by violations of the AKS, among other

statutes—the Seventh Circuit explained that it was irrelevant whether patients had received

"all the care reflected in the claim forms." *Id*. at 453.  The Medicare and Medicaid programs "offer[] a subsidy … with conditions."  *Id*.  at  449, 453 (7th Cir. 2008), one of which is AKS compliance.  "When the conditions are not satisfied, nothing is due." *Id*. at 453.  The provider in *Rogan* thus could not "keep money obtained from the Treasury by false pretenses," even if the government might have paid something for the patients' care had they used a conflict-free provider.  *Id*.

And other courts of appeals have recognized more generally that where a defendant falsely claims eligibility to participate in a program, the government can recover the full payment amount it has provided through the program.  *See United States ex rel. Longhi v. United States*, 575 F.3d 458, 472-473 (5th Cir. 2009); *United States v. Mackby*, 339 F.3d 1013, 1019 (9th Cir. 2003).  It is therefore irrelevant whether the government paid more for the items or services at issue than it would have but for the alleged kickbacks.  The relevant question is whether the government would have paid anything had it known the claims reflected AKS violations, and the answer is no.

## V.   Conclusion.

Except as to the legal positions noted above, the United States does not take a position on the parties' summary judgment briefing at this time.  The United States respectfully requests that the Court, in deciding the pending motions, consider the United States' views and render decision accordingly.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

       Kate E. Brubacher
       United States Attorney
       District of Kansas

By:   /s/ Jon P. Fleenor
       JON P. FLEENOR #14002
       Assistant United States Attorney
       District of Kansas
       500 State Ave., Suite 360
       Kansas City, Kansas 66101
       PH: 913.551.6730
       FX: 913.551.6599
       EM: Jon.Fleenor@usdoj.gov

       A. Thomas Morris
       Senior Trial Counsel
       Commercial Litigation Branch
       Civil Division
       United States Department of Justice
       Civil Division, Fraud Section
       P.O. Box 261
       Ben Franklin Station
       Washington DC 20004 P
       H: 202.514.6314
       EM: A.Thomas.Morris@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 6, 2024, that the above and forgoing United States' Statement of Interest of the United States of America was electronically filed with the clerk of the court using the CM/ECF system which will send a notice of electronic filing to all registered users in this case.

<u>/s/ Jon P. Fleenor</u>
Jon P. Fleenor
Assistant United States Attorney